1  DAVIS WRIGHT TREMAINE LLP
   ALONZO WICKERS IV (State Bar No. 169454)
2   alonzowickers@dwt.com
   865 South Figueroa Street, 24th Floor
3  Los Angeles, California 90017-2566
   Telephone: (213) 633-6800/Fax: (213) 633-6899
4
   DAVIS WRIGHT TREMAINE LLP
5  ELIZABETH A. McNAMARA (*Of Counsel*)
    elizabethmcnamara@dwt.com
6  KEVAN CHOSET (*Of Counsel*)
    kevanchoset@dwt.com
7  1633 Broadway, 27th Floor
   New York, New York 10019
8  Telephone: (212) 489-8230/Fax: (212) 489-8340
9  Attorneys for Defendants
   BAUER PUBLISHING COMPANY, L.P., BAUER
10 MAGAZINE L.P., BAUER MEDIA GROUP, INC.,
   BAUER, INC., HEINRICH BAUER NORTH AMERICA,
11 INC. and MICHELLE LEE
12
13              UNITED STATES DISTRICT COURT

       CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION
14
   DAVID V. BECKHAM, an individual,    )  Case No. **CV10-7980-R (SSx)**
15                                      )
                  Plaintiff,            )
16                                      )  **DEFENDANT BAUER PUBLISHING
          vs.                          )  COMPANY, L.P., BAUER
                                        )  MAGAZINE L.P., BAUER MEDIA
17 BAUER PUBLISHING COMPANY,            )  GROUP, INC., BAUER INC.,
   L.P., a Delaware limited partnership;)  HEINRICH BAUER NORTH
18 BAUER MAGAZINE L.P., a Delaware      )  AMERICA, INC. AND MICHELLE
   limited partnership; BAUER MEDIA     )  LEE'S SPECIAL MOTION TO
19 GROUP, INC., a Delaware corporation; )  STRIKE PLAINTIFF'S
   BAUER, INC., a Delaware corporation; )  COMPLAINT; MEMORANDUM OF
20 BAUER NORTH AMERICA, INC., a         )  POINTS AND AUTHORITIES
   Delaware corporation; MICHELLE       )
21 LEE, an individual; IRMA NICI, an    )
   individual; and DOES 1 through 50,   )  Date:   March 7, 2011
22 inclusive,                           )  Time:   9:00 a.m.
                                        )
             Defendants.                )
23 ─────────────────────────────────── )  Assigned to the Hon. Manuel L. Real
   IRMA NICI, an individual,            )  Courtroom: 8
24                                      )
              Cross-Complainant,        )
25                                      )  [Declarations of Deborah Baer, Michelle
          v.                           )  Lee, Annette Deinzer, and Alonzo
26 DAVID V. BECKHAM, an individual,     )  Wickers IV with Exhibits A through P
                                        )  filed concurrently]
27           Cross-Defendant.           )  Action Filed: September 24, 2010
                                        )
28 ─────────────────────────────────── )

──────────────────────────
MOTION TO STRIKE

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on March 7, 2011, at 9:00 a.m. or as soon thereafter as the matter may be heard, in Department 8 of the United States District Court for the Central District of California, located at 312 N. Spring Street, Los Angeles, California 90012, defendants Bauer Publishing Company, L.P., Bauer Magazine L.P., Bauer Media Group, Inc., Bauer Inc., Heinrich Bauer North America, Inc. and Michelle Lee (collectively "Bauer") will and hereby do move this Court, pursuant to California Code of Civil Procedure § 425.16, for an order striking plaintiff David Beckham's September 24, 2010 Complaint ("Complaint") in its entirety as against Bauer.[1]

Because Beckham's causes of action for libel and intentional infliction of emotional distress arise from an article published in *In Touch Weekly* and target Bauer's exercise of its free-speech rights about an issue of public interest, those causes of action are subject to a special motion to strike under California Code of Civil Procedure § 425.16. The burden thus shifts to Beckham to establish a probability that he will prevail on his claim. C.C.P. § 425.16(b)(1). He cannot meet that burden for each of the following reasons:

Even assuming that Beckham could show that the article describing his affair with Irma Nici was false and defamatory, he could not establish a probability of prevailing on his libel claim because he cannot show that Bauer published the story with constitutional actual malice, *i.e.*, that Bauer knew the article to be false, or had serious doubts about its accuracy. *See* Section IV.A.

Beckham's claim for intentional infliction of emotional distress is preempted by his libel claim under the U.S. Constitution and California statute, and must be

---

[1] Lee is the Editor-in-Chief of *In Touch Weekly*, the magazine published by Bauer that is at issue in this lawsuit.

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

dismissed for the same reasons that his libel claim must be dismissed. Even if not preempted, he could not establish sufficient "outrageousness" or knowledge by Bauer that "severe emotional distress" would follow from the article, as required by the tort. *See* Section IV.B.

This Motion is based on this Notice; on the attached Memorandum of Points and Authorities; on the Declarations of Deborah Baer, Michelle Lee, Annette Deinzer, and Alonzo Wickers IV with Exhibits A through P; on all matters of which this Court may take judicial notice; on all pleadings, files and records in this action; and on such other argument as may be received by this Court at the hearing on this Motion.

For these reasons, Bauer respectfully requests that the Court grant this Motion, enter judgment in favor of Bauer and against Beckham, and award Bauer its attorneys' fees and costs incurred in defending this action pursuant to C.C.P. § 425.16(c).[2]

DATED: November 18, 2010

DAVIS WRIGHT TREMAINE LLP
ALONZO WICKERS IV
ELIZABETH A. McNAMARA (*Of Counsel*)
KEVAN CHOSET (*Of Counsel*)


By: /s/ Alonzo Wickers IV
Alonzo Wickers IV

Attorneys for Defendants
BAUER PUBLISHING COMPANY, L.P., BAUER MAGAZINE L.P., BAUER MEDIA GROUP, INC., BAUER, INC., HEINRICH BAUER NORTH AMERICA, INC. and MICHELLE LEE

---

[2] Section 425.16(c) mandates that a prevailing defendant "shall" recover its attorneys' fees and costs incurred in defending claims that fall within the statute. If the Court grants this Motion, Bauer will file a noticed motion to recover its attorneys' fees and costs.

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

**Page**

I.    SUMMARY OF ARGUMENT .................................................. 1

II.   SUMMARY OF FACTS ...................................................... 3

III.  BECKHAM'S LAWSUIT IS SUBJECT TO A SPECIAL
      MOTION TO STRIKE ...................................................... 6

      A.    The Anti-SLAPP Statute Broadly Protects Media
            Defendants Against Libel Claims. ............................ 6

      B.    Beckham's Libel Claim Is Subject To A Special
            Motion To Strike Under Subsections (e)(3) and
            (e)(4) ................................................................... 8

IV.   BECKHAM CANNOT SHOW A PROBABILITY OF
      PREVAILING ................................................................ 11

      A.    Beckham's Libel Claim Will Fail Because He
            Cannot Meet the Fault Standard of Libel ................. 11

            1.    Beckham is a Public Figure. ......................... 11

            2.    Beckham Cannot Establish That the Article was
                  Published with Actual Malice ......................... 12

                  a.    A Wealth of Evidence and Research Gave
                        Bauer Strong Reason to Believe Its Story
                        Was True, and It Did in Fact Believe Its
                        Story Was True ................................... 17

                  b.    Beckham's Conclusory Denial Did Not
                        Create Any Doubts. ............................ 20

      B.    Plaintiff's Duplicative Emotional Distress Claims
            Should Be Dismissed. ..................................... 22

            1.    Plaintiff's Remaining Claim Is Based On The Same
                  Facts As His Defamation Claim and Is Barred By
                  The Same Defenses and The Uniform Single
                  Publication Act. .......................................... 22

            2.    Plaintiffs Cannot Show The Requisite Extreme And
                  Outrageous Conduct Necessary For An Intentional
                  Infliction Of Emotional Distress Claim. ............ 23

V.    CONCLUSION ........................................................... 24

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Ampex Corp. v. Cargle,*
  128 Cal. App. 4th 1569, 27 Cal. Rptr. 3d 863 (2005) ....................................... 14

*Anderson v. Liberty Lobby,*
  477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed. 2d 202 (1986)..................................... 13

*Annette F. v. Sharon S.,*
  119 Cal. App. 4th 1146, 15 Cal. Rptr. 3d 100 (2004) ................................ 10, 11

*Baugh v. CBS, Inc.,*
  828 F. Supp. 745 (N.D. Cal. 1993) ................................................................... 23

*Beilenson v. Superior Court,*
  44 Cal. App. 4th 944, 52 Cal. Rptr. 2d 357 (1996)............................... 13, 14, 18

*Blatty v. New York Times,*
  42 Cal. 3d 1033, 232 Cal. Rptr. 542 (1986)...................................................... 22

*Bose Corp. v. Consumer Union,*
  466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).................................... 13

*Bradbury v. Superior Court,*
  49 Cal. App. 4th 1108, 57 Cal. Rptr. 2d 207 (1996) ........................ 1, 11, 13, 14

*Braun v. Chronicle Publ.,*
  52 Cal. App. 4th 1036, 61 Cal. Rptr. 2d 58 (1997) ............................................ 6

*Briggs v. Eden Council,*
  19 Cal. 4th 1106, 81 Cal. Rptr. 2d 471 (1999) ................................................... 7

*Carafano v. Metrosplash.com,*
  207 F. Supp. 2d 1055 (C.D. Cal. 2002) ............................................................ 12

*Carlisle v. Fawcett Publs.,*
  201 Cal. App. 2d 733, 20 Cal. Rptr. 405 (1962)............................................... 10

*Cepeda v. Cowles Magazines & Broadcasting, Inc.,*
  392 F.2d 417 (9th Cir. 1968) ............................................................................ 12

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Christian Research Institute v. Alnor*,
  148 Cal. App. 4th 71, 55 Cal. Rptr. 3d 600 (2007)......................................14, 16

*Cochran v. Cochran*,
  65 Cal. App. 4th 488, 76 Cal. Rptr. 2d 540 (1998)............................................23

*Contrast Antonovich v. Superior Court*,
  234 Cal. App. 3d 1041, 285 Cal. Rptr. 863 (1991)...........................................19

*Damon v. Ocean Hills Journalism Club*,
  85 Cal. App. 4th 468, 102 Cal. Rptr. 2d 205 (2000) ..............................8, 10, 11

*Dora v. Frontline Video*,
  15 Cal. App. 4th 536, 18 Cal. Rptr. 2d 790 (1993)...........................................10

*DuPont Merck Pharm. v. Superior Court*,
  78 Cal. App. 4th 562, 92 Cal. Rptr. 2d 755 (2000)...........................................11

*Edwards v. Nat'l Audubon Society*,
  556 F.2d 113 (2d Cir. 1977)...............................................................................21

*Fletcher v. San Jose Mercury News*,
  216 Cal. App. 3d 172, 264 Cal. Rptr. 699 (1989).............................................15

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974).......................................11

*Ghufar v. Bernstein*,
  131 Cal. App. 4th 1230, 32 Cal. Rptr. 3d 626 (2005) ......................................14

*Gilbert v. Sykes*,
  147 Cal. App. 4th 13 (2007) ..............................................................................14

*Harte-Hanks Communications v. Connaughton*,
  491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed. 2d 562 (1989)................13, 18, 20, 22

*Herbert v. Lando*,
  781 F.2d 298 (2d Cir. 1986).............................................................................22

*Hilton v. Hallmark Cards*,
  599 F.3d 894 (9th Cir. 2010) ...............................................................................9

*Hoffman v. Capital Cities/ABC*,
  255 F.3d 1180 (9th Cir. 2001) .............................................................................8

iii

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46, 108 S. Ct. 876, 99 L.Ed.2d 41 (1988)........................................... 22

*Jackson v. Paramount Pictures Corp.*,
  68 Cal. App. 4th 10, 80 Cal. Rptr. 2d 1 (1998)................................ 14, 15, 18, 19

*Katsaris v. Cook*,
  180 Cal. App. 3d 256, 225 Cal. Rptr. 531 (1986)............................................... 23

*Ludwig v. Superior Court*,
  37 Cal. App. 4th 8, 43 Cal. Rptr. 2d 350 (1995).................................................. 1

*Masson v. The New Yorker*,
  501 U.S. 496, 111 S.Ct. 2419, 115 L.Ed.2d 447 (1991).............................. 12, 13

*McCoy v. Hearst Corp.*,
  42 Cal. 3d 835, 231 Cal. Rptr. 518 (1986)........................................... 14, 15, 19

*McFarlane v. Esquire Magazine*,
  74 F.3d 1296 (D.C. Cir. 1996) ......................................................................... 12

*Navellier v. Sletten*,
  29 Cal. 4th 82, 124 Cal. Rptr. 2d 530 (2002) ...................................................... 7

*New York Times v. Sullivan*,
  376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).............................. 12, 20, 22

*Newton v. NBC*,
  930 F.2d 662 (9th Cir. 1990) ...................................................................... 13, 19

*Nicosia v. DeRooy*,
  72 F. Supp. 2d 1093 (C.D. Cal. 1999) ................................................................ 9

*Nygard v. Uusi-Kerttula*,
  159 Cal. App. 4th 1027, 72 Cal. Rptr. 3d 210 (2008) ......................................... 9

*Potter v. Firestone Tire & Rubber Co.*
  6 Cal. 4th 965, 25 Cal. Rptr. 2d 550 (1993) ..................................................... 23

*Price v. Stossel*,
  590 F. Supp. 2d 1262 (C.D. Cal. 2008), *aff'd*, 620 F.3d 992 (9th Cir.
  August 24, 2010).............................................................................................. 8

*Reader's Digest Ass'n v. Superior Court of Marin County*,
  37 Cal. 3d 244, 208 Cal. Rptr. 137 (1984)....................................................... 16

iv

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Robertson v. Rodriguez*,
   36 Cal. App. 4th 347, 42 Cal. Rptr. 2d 464 (1995)............................ 2, 11, 14, 21

*Rosenaur v. Scherer*,
   88 Cal. App. 4th 260, 105 Cal. Rptr. 2d 674 (2001) ................................... 13, 14

*Secord v. Cockburn*,
   747 F. Supp. 779 (D.D.C. 1990) ......................................................................... 17

*Seelig v. Infinity Broadcasting Corp.*,
   97 Cal. App. 4th 798, 119 Cal. Rptr. 2d 108, 115 (2002) ..................... 9, 10, 11

*Shulman v. Group W Prods.*,
   18 Cal. 4th 200, 74 Cal. Rptr. 2d 843 (1998) ...................................................... 8

*Sipple v. Foundation for Nat'l Progress*,
   71 Cal. App. 4th 226, 83 Cal. Rptr. 2d 677 (1999)................................... 9, 13, 14

*Solano v. Playgirl*,
   292 F.3d 1078 (9th Cir. 2002) .............................................................................. 12

*St. Amant v. Thompson*,
   390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968)............................ 13, 15, 16

*Tavoularas v. Piro*,
   817 F.2d 762 (D.C. Cir. 1987) .............................................................................. 12

*Thomas v. Fry's Electronics, Inc.*,
   400 F.3d 1206 (9th Cir. 2005) ................................................................................ 7

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*,
   190 F.3d 963 (9th Cir. 1999) .................................................................................. 7

*Woods v. Evansville Press*,
   791 F.2d 480 (7th Cir. 1986) ......................................................................... 13, 17

*Yurick v. Superior Court*,
   209 Cal. App. 3d 1116, 257 Cal. Rptr. 665 (1989)............................................. 23

STATUTES

Cal. Civ. Code § 3344 ................................................................................................ 10

Cal. Civ. Proc. Code § 425.16.............................................................................. *passim*

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Cal. Civ. Proc. Code § 425.16(b) ............................................................... 1

Cal. Civ. Proc. Code § 425.16(b)(1) ..................................................... 7, 11

Cal. Civ. Proc. Code § 425.16(e)(3)-(4) ..................................................... 7

Cal. Civ. Proc. Code § 425.16(e)(4) ............................................... 1, 9, 10

Uniform Single Publication Act, Cal. Civ. Code § 3425.3............................... 22, 23

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  SUMMARY OF ARGUMENT

This lawsuit exemplifies the danger in letting those with unlimited resources use libel law – and the courts – as a tool for chilling newsworthy speech.  In his Complaint, David Beckham, one of the most famous people in the world, alleges that *In Touch Weekly* magazine defamed him by reporting that he slept with a former prostitute, Irma Nici, in 2007.  Beckham, who has profited tremendously off of his fame and has pushed his personal life, his marriage, his family, and his sexuality into the public spotlight, offers nothing other than his word to dispute the well-researched, well-sourced story that *In Touch Weekly* published.  He ignores the years of press – unchallenged by any legal claims – documenting his prior affairs, including another one with a "high class prostitute."  But Bauer did not just rely on prior consistent reports of Beckham's adultery; the editors spoke to Nici, who provided her detailed on-the-record story, corroborated it with diligent independent research, and further substantiated it with confirmations from the other woman in the encounter and the madam, Kristin Davis.  In response to this evidence, Beckham supplied only a conclusory denial, devoid of facts.  In the end, Bauer believed the Article, and each challenged statement, to be absolutely true.

To provide for the "fast and inexpensive unmasking and dismissal" of claims, like Beckham's, that target expressive works about matters of public interest, the California Legislature enacted the anti-SLAPP statute, Code of Civil Procedure § 425.16.  *Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 16, 43 Cal. Rptr. 2d 350, 356 (1995).  *See also* Cal. Civ. Proc. Code § 425.16(e)(4).  Under Section 425.16, such claims must be stricken at the outset of a lawsuit unless the plaintiff presents *admissible evidence* to establish that he has a "probability" of prevailing on the merits.  Cal. Civ. Proc. Code § 425.16(b).  To meet his burden, the plaintiff must substantiate his claims and must overcome any applicable defenses.  *See Bradbury v. Superior Court*, 49 Cal. App. 4th 1108, 1117, 57 Cal. Rptr. 2d 207, 213 (1996);

1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Robertson v. Rodriguez*, 36 Cal. App. 4th 347, 359, 42 Cal. Rptr. 2d 464, 470-71 (1995).

Here, Bauer can readily satisfy its burden of demonstrating that Plaintiff's libel claim arises from Bauer's exercise of its free speech rights concerning a matter of public interest. The Article's report on Beckham's most recent alleged extramarital affair, particularly in the context of this year's spate of "high-profile star[s] to be caught cheating on [their] wi[ves]," as reported in the Article, plainly involves Bauer's exercise of its free-speech rights about a matter of public interest. Complaint at ¶ 16. The claim is thus subject to a special motion to strike under California's anti-SLAPP statute, Code of Civil Procedure § 425.16. Under Section 425.16, the burden thus shifts to Plaintiff to demonstrate – with admissible evidence – that he has a probability of prevailing on each of his claims.

He cannot meet that burden. Even assuming that Plaintiff could establish falsity and that each statement is defamatory, he cannot establish by "clear and convincing" evidence that Bauer published the article at issue with actual malice, *i.e.*, subjectively knowing the article was false, or having serious doubts about its accuracy. Here, where Bauer had three sources it found to be credible and sought comment from Beckham, where Bauer was able to independently verify many of the details in its sources' stories, and where the report was entirely in keeping with a history of allegations of Beckham's infidelity (none of which has been challenged by Beckham in a court of law), the magazine believed the Article to be absolutely true and did not entertain any serious doubts as to its accuracy. Because Plaintiff cannot demonstrate any possibility – much less the required "probability" – of prevailing on his state law claims, the claims should be stricken.[3]

---

[3] As set forth below in Section IV.B., Plaintiff's duplicative claim for intentional infliction of emotional distress is based on the same allegations as his libel claim, and is barred for the same reasons as his libel claim.

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## II.   SUMMARY OF FACTS

The Court undoubtedly is familiar with soccer superstar David Beckham.  *The New York Times* has referred to him as "the world's most famous soccer player," and in 2004 his name was the most searched sports term on Google.  Wickers Decl. at Exhibit L.  In addition to his athletic prowess, Beckham has cultivated a public persona as a fashion model and sex symbol with his own cologne and numerous endorsements.  He has worked tirelessly to maintain this image, licensing his name to be used on video games, and appearing in documentaries and reality television series.  *Id.*; Wickers Decl. at Exhibit O.  Indeed, just last week Beckham announced that he will be launching his own line of underwear.   *Id.*

Since 1999, when Beckham married Victoria Adams, of the internationally famous pop group The Spice Girls, the couple's marriage has been a subject of intense interest worldwide.  While they were already well known in the United States, the couple's prominence here mushroomed when, in 2007, they moved to Los Angeles so that Beckham could play soccer for the Los Angeles Galaxy and his wife could attempt a career in show business.

Beckham's marriage, and subsequent three children, have received a great deal of public attention, as he has attempted to carefully control his image as a family man.  However, this image has another angle, as he has also obtained a widely reported reputation for marital infidelity, or, as the *Times of London* observed, his "propensity to 'play away.'"  Deinzer Decl. at Exhibit K.  Thus, as Bauer was well aware, in 2004, Rebecca Loos, Beckham's former personal assistant, admitted to having an affair with Beckham and her detailed revelations were the focus of international reporting, including in *In Touch Weekly*.  Baer Decl. at ¶ 7; Lee Decl. at ¶ 8; Wickers Decl. at Exhibit P.  Loos's claims were quickly followed by other women also claiming to have had affairs with Beckham, including Sarah Marbeck, who the *Times of London* described as "a high class prostitute."  Baer Decl. at ¶ 8; Exhibit A; Deinzer Decl. at Exhibit K.  Beckham took no legal action to challenge

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

3

**DAVIS WRIGHT TREMAINE** LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the reports; nor did any woman recant.  Indeed, Beckham's biography on wikipedia.com has a devoted section titled "Affair Claims," which appeared long before *In Touch Weekly*'s story about Nici (Wickers Decl. at Exhibit M), and just this May, Beckham's wife felt compelled to state, in an interview, "I know David has never cheated on me."  Baer Decl. at Exhibit B.

Against this backdrop of an established reputation as a serial adulterer, *In Touch Weekly* this past year began to receive information from a series of independent sources about several additional extramarital dalliances of Beckham.  In July, a source told the magazine that Beckham had an affair with a Los Angeles lingerie store employee.  Baer Decl. at ¶¶ 10-11; Lee Decl. at ¶¶ 13-14.  Separately, the magazine began to hear that Beckham was having an affair with the mother of one of the other students who attended school with Beckham's sons.  Baer Decl. at ¶ 13.  It learned that a nanny of Beckham's had seen suggestive text messages between Beckham and the mother, Shery Shabani.  *Id.*  (Indeed, since Beckham filed this lawsuit, documents filed in Shabani's own divorce proceedings have named Beckham as someone that Shabani's husband believed she was having an affair with.  *Id.*; Exhibit C.)  The magazine also had sources (including an acquaintance of Beckham) tell it about Beckham's strange behavior at two different hotels, at which he appeared to be spending time with women who were not his wife.  Baer Decl. at ¶¶ 11-12.

*In Touch Weekly* did not report any of these allegations, but the magazine's belief in their accuracy, coupled with the previous widespread published reports of Beckham's affairs, necessarily informed the editors' belief in the article at issue in this action.  The article was published in the October 4, 2010 issue of *In Touch Weekly* and recounted Irma Nici's story of her affair with Beckham in 2007 (the "Article").  The Article described how Nici, a former prostitute, was hired by David Beckham in New York City in August 2007, spent the night with him, and the next month had a second encounter with him in London.  Baer Decl. at Exhibit H.  The

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Article was based on a three-hour on-the-record interview with Nici, who provided vivid details of her encounter.  The magazine's reporter found Nici to be credible and believed her "1000 percent."  Baer Decl. at ¶ 24; Exhibit E.  Further, the magazine was able to independently corroborate details she provided – documenting, for example, that Beckham was in New York and London at the times of the encounters; that he was without his wife at least in part on these trips; and that his trip to London was in connection with his father's heart attack.[4]  Baer Decl. at ¶¶ 25-29; Lee Decl. at ¶ 22.

But the reporting did not end there.  Because one of Nici's nights with Beckham involved another prostitute, for a "threesome," Baer spoke directly to that other woman, who confirmed her presence along with details that matched Nici's story.  Baer Decl. at ¶ 30.  Kristin Davis, the Manhattan madam who went to jail in the wake of the Eliot Spitzer prostitute scandal, also confirmed on the record that she had supplied the other woman for the "threesome" with Beckham.  Id. at ¶ 31.

As Bauer approached its production deadline, it reached out to Beckham's representatives for a comment.  On Saturday, September 18, a Bauer editor provided all the salient details to Beckham's representative over the phone and later read him the entire draft article.  Baer Decl. at ¶ 35.  On Monday morning, September 20, the day the Article went to press, Beckham's lawyers sent letters to Bauer denying the

---

[4] While Nici and the other woman both independently said the encounter occurred at the Parker Meridien, *In Touch Weekly*'s investigation revealed that Beckham was staying at the Waldorf Hotel while in New York.  The magazine did not see this as a substantive discrepancy.  Baer Decl. at ¶ 29; Lee Decl. at ¶ 27.  Nici had described Beckham's room in the Parker Meridien as being not too big and apparently devoid of Beckham's personal possessions.  *Id.*  Bauer understood that it was certainly within Beckham's means to pay for two hotel rooms in the same city, and common sense indicated that he would not bring a prostitute back to the hotel where his entourage was staying.  *Id.*  Accordingly, the fact that Beckham stayed in the Waldorf but brought a prostitute to the Parker Meridien did not give the editors pause.  Further, after publication of the Article, it has been suggested that Nici's story could have been the product of internet research, but, if so, the Waldorf would have been identified, not the Parker Meridien.

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

affair and his representative issued a two-line statement.  Lee Decl. at Ex. J.  The letters and statement provided only a conclusory denial, with no details or evidence to refute the story.  *Id.  In Touch Weekly* prominently featured Beckham's denial in the opening passages of the Article.

In sum, *In Touch Weekly* published its Article based on the firsthand recollections of Irma Nici as confirmed by Kristin Davis and the other woman.  It was a story whose many details were independently verified by the magazine and one that was entirely consistent with the magazine's own prior reporting, as well as previous widespread reports of other affairs by Beckham, including at least one with another prostitute.  In the face of this evidence, Beckham provided only a general denial.  In the end, the magazine and its editors absolutely believed in the truth of the story, and most certainly had no serious doubts about its accuracy.  Baer Decl. at ¶¶ 2, 44, 45; Lee Decl. at ¶¶ 2, 34.

In his Complaint, Beckham asserts two causes of action against Bauer, for libel and intentional infliction of emotional distress.  Complaint at ¶¶ 28-48.[5]  With no facts refuting any statement in the Article, the unverified Complaint conclusorily alleges that the Article contains "a series of lies," and demands at least $25 million in general damages.  *Id.* at ¶ 15 and Prayer.

### III.  BECKHAM'S LAWSUIT IS SUBJECT TO A SPECIAL MOTION TO STRIKE.

**A.   The Anti-SLAPP Statute Broadly Protects Media Defendants Against Libel Claims.**

In 1992, the California Legislature enacted C.C.P. § 425.16 "to nip … in the bud" meritless claims that target a defendant's exercise of free-speech rights.  *Braun v. Chronicle Publ.*, 52 Cal. App. 4th 1036, 1042, 61 Cal. Rptr. 2d 58, 61 (1997).  Under the statute, any "cause of action against a person arising from any act of that

---

[5] The Complaint also asserts a slander claim against Irma Nici.  Complaint at ¶¶ 19-21; 36-42.  That cause of action is not at issue on this motion.

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

person in furtherance of that person's right of … free speech ... in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that [he] will prevail on the claim."  C.C.P. § 425.16(b)(1).

Five years later, responding to court decisions that interpreted the statute too narrowly, the California Legislature amended Section 425.16(a) to ensure that it "shall be construed broadly."  The California Supreme Court later declared that this "broad construction … is desirable from the standpoint of judicial efficiency," and "that [a narrow construction] would serve Californians poorly." *Briggs v. Eden Council*, 19 Cal. 4th 1106, 1121-22, 81 Cal. Rptr. 2d 471, 480 (1999).

In *Navellier v. Sletten*, 29 Cal. 4th 82, 88, 124 Cal. Rptr. 2d 530, 535 (2002), the Court outlined the "two-step process for determining whether an action" must be stricken under Section 425.16.  "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." *Id.*  To make this showing, the defendant must demonstrate that the alleged conduct "underlying the plaintiff's cause [of action] fits one of the categories spelled out in section 425.16, subdivision (e)." *Id.*  Those categories include:

> … (3) any written or oral statement or writing made [by the defendant] in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct [by the defendant] in furtherance of the exercise of the constitutional right ... of free speech in connection with a public issue or an issue of public interest.

C.C.P. § 425.16(e)(3)-(4).  If the claim arises from conduct falling within one of these categories, the court "must then determine whether the plaintiff has demonstrated a probability of prevailing." *Navellier*, 29 Cal. 4th at 88, 124 Cal. Rptr.2d at 535.  If the plaintiff cannot meet this burden, his claim must be stricken. *Id.*

The Federal Courts in this Circuit have routinely applied California's anti-SLAPP law when deciding state law claims in diversity actions. *See*, *e.g.*, *U.S. ex*

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963 (9th Cir. 1999); *Thomas v. Fry's Electronics, Inc.*, 400 F.3d 1206 (9th Cir. 2005) (reversing district court for failing to apply anti-SLAPP statute); *Price v. Stossel*, 590 F. Supp. 2d 1262 (C.D. Cal. 2008), *aff'd*, 620 F.3d 992 (9th Cir. 2010).

**B.   Beckham's Libel Claim is Subject To a Special Motion To Strike Under Subsections (e)(3) and (e)(4).**

The libel claim as against Bauer arises solely from Bauer's Article.  Complaint at ¶¶ 14-18; 22-27.  Because the Article involves Bauer's exercise of free-speech rights about an issue of public interest – specifically, the prominent marriage of Beckham and the recent trend of high-profile male athletes, stars, and politicians cheating on their wives – it is protected under Section 425.16(e)(3) and (e)(4).

Subsection (e)(4) extends the statute's protection to any conduct "in furtherance of the exercise of the constitutional right … of free speech in connection with … an issue of public interest."  Bauer's Article plainly involves the exercise of free-speech rights and enjoys "full First Amendment protection."  *Hoffman v. Capital Cities/ABC*, 255 F.3d 1180, 1186 (9th Cir. 2001) (*Los Angeles* magazine feature on Hollywood fashion was constitutionally protected).  That the story appeared in an entertainment-news magazine is irrelevant; as the California Supreme Court declared, "constitutional guarantees of freedom of expression apply with equal force to … a news report or an entertainment feature."  *Shulman v. Group W Prods.*, 18 Cal. 4th 200, 220, 74 Cal. Rptr. 2d 843, 856 (1998).

Likewise, there is no doubt that Bauer's Article relates to an "issue of public interest," within the terms of subsection (e)(4).  It is well established that issues of public interest are not restricted to hard news reports.  Instead, "[t]he definition of 'public interest' within the meaning of [Section 425.16] has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society."  *Damon v. Ocean Hills Journalism Club,* 85 Cal. App. 4th 468, 479, 102 Cal. Rptr. 2d 205, 212 (2000). The case law underscores how broadly

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

"public interest" is defined in anti-SLAPP cases.  In *Seelig v. Infinity Broadcasting Corp.*, the court held that a radio host's on-air criticism of a contestant from *Who Wants To Marry A Multi-Millionaire* related to a matter of public interest.  97 Cal. App. 4th 798, 807-808, 119 Cal. Rptr.2d 108, 115 (2002).  The court noted that the show had been of "significant interest to the public" because of "what its advent signified about the condition of American society." *Id.*

In *Nygard v. Uusi-Kerttula,* 159 Cal. App. 4th 1027, 1042, 72 Cal. Rptr. 3d 210, 220 (2008), the court reiterated that an issue of public interest "is any issue in which the public is interested."  "In other words, the issue need not be 'significant' to be protected by the anti-SLAPP statute – it is enough that it is one in which the public takes an interest." *Id.*  It is of course indisputable that the public takes an interest in Beckham and, in particular, his marriage.  Earlier this year, the Ninth Circuit reaffirmed that courts "must construe ... 'issue of public interest' in section 425.16(e)(4) broadly" to include any "topic of widespread, public interest." *Hilton v. Hallmark Cards,* 599 F.3d 894, 906 (9th Cir. 2010).  The court thus found that a birthday card poking fun at Paris Hilton fell within the scope of the statute. *Id.* at 906-907.  Just as the public takes interest in Ms. Hilton and the air of celebrity surrounding her, so too has Beckham been a constant focus of public attention. Beckham's international fame, the fame of his marriage to Victoria coupled with the emerging trend of high-profile stars (*e.g.*, Tiger Woods) cheating on their wives, causes this report to fall squarely within the statute's broad definition of "public interest."

Further, where, as here, the statements at issue relate to potential criminal wrongdoing (the solicitation of prostitution), courts have not hesitated to find that the anti-SLAPP statute's public-interest standard is met.  In *Nicosia v. DeRooy*, 72 F. Supp. 2d 1093, 1096, 1102, 1110 (C.D. Cal. 1999), for example, the court found that an article accusing the plaintiff of embezzling money from Jack Kerouac's heirs related to an issue of public interest.  Similarly, in *Sipple v. Foundation for Nat'l*

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Progress*, 71 Cal. App. 4th 226, 238-240, 83 Cal. Rptr. 2d 677, 684-85 (1999), the court held that a report about allegations that a political consultant abused his ex-wives concerned an issue of public interest.

As these cases confirm, Bauer's Article relates to an issue of public interest within the meaning of the anti-SLAPP statute. The Article opens by observing that "Like Jesse James and Tiger Woods [Beckham] is yet another high-profile star to be caught cheating on his wife." Baer Decl. at Exhibit H. Numerous major celebrities, including, as referenced in the Article, Tiger Woods and Sandra Bullock, have recently been involved in the exact same circumstances, which have received substantial public attention. Wickers Decl. at Exhibit N. Moreover, as a self-proclaimed "world famous athlete," Beckham's exploits and foibles unquestionably qualify as issues of public interest as that concept has been defined in *Seelig* and the other cases discussed above.[6] Complaint at ¶ 1. Beckham's lawsuit thus is subject to a special motion to strike under Section 425.16(e)(4).

Subsection (e)(3) independently extends the statute's reach to any statement made in "a public forum in connection with an issue of public interest." Courts now routinely recognize that news publications and similar programs are public forums under subsection (e)(3). In *Annette F. v. Sharon S.*, 119 Cal. App. 4th 1146, 1161, 15 Cal. Rptr. 3d 100, 110 (2004), the court held that "a news publication is a 'public forum' within the meaning of the anti-SLAPP statute if it is a vehicle for discussion of public issues and it is distributed to a large and interested community." Similarly, the court in *Damon* held that a community newsletter was a "public forum" under subsection (e)(3), 85 Cal. App. 4th at 477, while the court in *Seelig* held that a radio

---

[6] *See also Dora v. Frontline Video*, 15 Cal. App. 4th 536, 542-43, 18 Cal. Rptr. 2d 790, 792 (1993) ("[p]ublic interest attaches to people who by their accomplishments or mode of living create a bona fide attention to their activities" and to "popular culture"; interpreting Civil Code § 3344); *Carlisle v. Fawcett Publs.*, 201 Cal. App. 2d 733, 746-47, 20 Cal. Rptr. 405, 414 (1962) (same).

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

show was a public forum. 97 Cal. App. 4th at 806-07.

*In Touch Weekly* is a national magazine that reports on entertainment news. Lee Decl. at ¶ 3. Like the publications in *Annette F.* and *Damon* and the radio show in *Seelig*, *In Touch Weekly* is a public forum under Section 425.16(e)(3). Because the article relates to an issue of public interest (*see* discussion above), it also is protected under subsection (e)(3).

## IV. BECKHAM CANNOT SHOW A PROBABILITY OF PREVAILING.

Because Bauer has made its threshold showing under either subsection (e)(4) or (e)(3), Beckham's claims must be stricken unless he demonstrates a probability that he will prevail. C.C.P. § 425.16 (b)(1). As the court explained in *DuPont Merck Pharm. v. Superior Court*, 78 Cal. App. 4th 562, 568, 92 Cal. Rptr. 2d 755, 760 (2000), "to satisfy its burden under the second prong of the anti-SLAPP statute, it is not sufficient that plaintiffs' complaint survive a demurrer." Instead, the plaintiff must "meet the defendant's constitutional defenses," *Robertson*, 36 Cal. App. 4th at 359, and present "competent evidence" showing that he will "probably prevail at trial." *Bradbury*, 49 Cal. App. 4th at 1117. Because Beckham cannot establish with clear and convincing evidence that Bauer published the Article knowing it was false, or with serious doubts as to its accuracy, his libel claim is barred by Bauer's actual malice defense, and his Complaint must be stricken.

### A. Beckham's Libel Claim Will Fail Because He Cannot Meet the Fault Standard of Libel.

Assuming for the purposes only of this motion that Beckham could show that the Article was false and defamatory – which he has not even alleged the slightest bit of evidence to support – he still could not establish a probability of prevailing because he cannot demonstrate that Bauer published the article with actual malice.

#### 1. Beckham is a Public Figure.

Libel is not a strict liability tort; the degree of fault that a plaintiff must show depends upon whether he is a public figure or a private figure. *Gertz v. Robert*

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Welch, Inc.*, 418 U.S. 323, 347, 94 S.Ct. 2997, 3011, 41 L.Ed.2d 789 (1974).  As courts long have recognized, individuals far less renowned than Beckham are public figures for purposes of defamation law.  *See, e.g., Solano v. Playgirl*, 292 F.3d 1078, 1084 (9th Cir. 2002) (*Baywatch* actor Jose Solano was public figure); *Carafano v. Metrosplash.com*, 207 F. Supp. 2d 1055, 1071 (C.D. Cal. 2002) (*Star Trek: Deep Space Nine* actress Chase Masterson was public figure).

Here, Beckham's Complaint alleges that he is a "world famous athlete" and, as such, there can be no dispute that he is a public figure.  Complaint at ¶ 1.  *See, e.g., Cepeda v. Cowles Magazines & Broadcasting, Inc.*, 392 F.2d 417, 419 (9th Cir. 1968) (public figures "include artists, athletes, business people, dilettantes, anyone who is famous or infamous because of who he is or what he has done"); *Tavoulareas v. Piro*, 817 F.2d 762, 772 (D.C. Cir. 1987) ("well-known athlete or entertainer" is "archetype of the general purpose public figure").  Indeed, on the heels of the Article, and seriously undermining his allegation that the Article "adversely affected" his professional life as an "endorser," Beckham has announced he is launching his own underwear line and has been offered a hosting gig on *Saturday Night Live*.  Wickers Decl. at Exhibit L.  His public-figure status is not in doubt.

### 2. Beckham Cannot Establish That the Article was Published with Actual Malice.

The First Amendment imposes a heavy burden on a public figure who files a libel claim.  A public figure must prove not only that the statement at issue is false and defamatory, but also that the defendant published the statement with constitutional "actual malice," that is "with 'knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Masson v. The New Yorker*, 501 U.S. 496, 510, 111 S.Ct. 2419, 2429, 115 L.Ed.2d 447 (1991) (citations omitted).  "The standard of actual malice is a daunting one," *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996), and is necessary to guarantee the "national commitment to the principle that debate on public issues should be uninhibited,

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

robust, and wide-open[.]" *New York Times v. Sullivan*, 376 U.S. 254, 270, 84 S.Ct. 710, 721, 11 L.Ed.2d 686 (1964).

The actual-malice standard focuses exclusively on the defendant's subjective state of mind "at the time of publication." *Bose Corp. v. Consumer Union*, 466 U.S. 485, 512, 104 S.Ct. 1949, 1966, 80 L.Ed.2d 502 (1984).  Courts consistently hold that "[k]nowledge of falsity means simply that the defendant was *actually aware that the contested publication was false*." *Woods v. Evansville Press*, 791 F.2d 480, 484 (7th Cir. 1986) (emphasis added).  Similarly, to establish that a defendant published a statement with "reckless disregard" for the truth, a plaintiff must show "that the defendant *actually had a 'high degree of awareness of … probable falsity*.'"  *Harte-Hanks Communications v. Connaughton*, 491 U.S. 657, 688, 109 S.Ct. 2678, 2696, 105 L.Ed.2d 562 (1989) (emphasis added).  "Reckless disregard" is not measured "by what a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant v. Thompson*, 390 U.S. 727, 730-31, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968).  "Mere negligence does not suffice" for actual malice, *Masson*, 501 U.S. at 510, nor does "an extreme departure from accepted professional standards of journalism[.]" *Newton v. NBC*, 930 F.2d 662, 669 (9th Cir. 1990). Instead, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant*, 390 U.S. at 731.

As an additional safeguard, the First Amendment requires a public-figure defamation plaintiff to prove actual malice by "clear and convincing" evidence. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-15, 91 L.Ed.2d 202 (1986).  "Actual malice cannot be implied and must be proven by direct evidence," which must "be such as to command the unhesitating assent of every reasonable mind." *Beilenson v. Superior Court*, 44 Cal. App. 4th 944, 950, 52 Cal. Rptr.2d 357, 362 (1996).  Where a plaintiff opposing an anti-SLAPP motion cannot meet his burden of establishing actual malice, his libel claim must be stricken. *See*,

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*e.g.*, *Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 275-78, 105 Cal. Rptr. 2d 674, 684-87 (2001); *Sipple*, 71 Cal. App. 4th at 248-250; *Bradbury*, 49 Cal. App. 4th at 1117; *Beilenson*, 44 Cal. App. 4th at 952; *Robertson*, 36 Cal. App. 4th at 358-60.[7]

Two California cases illustrate the heavy burden that a public-figure plaintiff must meet.  In *McCoy v. Hearst Corp.*, 42 Cal. 3d 835, 852-73, 231 Cal. Rptr. 518, 537 (1986), the California Supreme Court overturned a jury verdict for the plaintiff arising out of an article that reported the plaintiff had procured false testimony through coercion and physical assault.  The court concluded that a reporter who relied on a prisoner's affidavit – obtained after the reporter offered to help the prisoner in a detainer action – did not act with actual malice, even though the reporter "had questions about some of the information" that the prisoner told him and knew that the prisoner's attorney had doubts about his client's veracity.  The Court observed that even though "[i]t may be appropriate to fault [the reporter] for his credulity, his failure to be more cynical or guarded in his responses to [the prisoner], and particularly for his ill timed offer of assistance with the detainer," there was not clear and convincing evidence that the reporter actually thought the story was false.  *Id.* at 863-64.

In *Jackson v. Paramount Pictures Corp.*, 68 Cal. App. 4th 10, 19-20, 80 Cal. Rptr. 2d 1, 4-5 (1998), Michael Jackson sued the television program *Hard Copy* over a report about authorities' supposed search for a "videotape" depicting Jackson "fondling a young boy."  Jackson presented evidence that the defendants' source

---

[7] Courts repeatedly have granted special motions to strike defamation claims because the plaintiff failed to present clear and convincing evidence that the defendant acted with actual malice.  *See, e.g., Christian Research Institute v. Alnor*, 148 Cal. App. 4th 71, 55 Cal. Rptr. 3d 600 (2007); *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 53 Cal. Rptr. 3d 752 (2007); *Ghufar v. Bernstein*, 131 Cal. App. 4th 1230, 32 Cal. Rptr. 3d 626 (2005); *Ampex Corp. v. Cargle*, 128 Cal. App. 4th 1569, 27 Cal. Rptr. 3d 863 (2005); *Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 275-77, 105 Cal. Rptr. 2d 674, 684-86 (2001); *Sipple*, 71 Cal. App. 4th at 248-50; *Bradbury*, 49 Cal. App. 4th at 1117; *Beilenson*, 44 Cal. App. 4th at 952-53 (1996).

14

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

fabricated the story and that the district attorney refused to confirm the claim when questioned by the reporter. *Id.* at 21. Even more significantly, another source testified that she told the reporter that the story "sounds like B.S." and "sounds like a setup," to which the reporter responded, "Yeah, that's what I thought." *Id.* at 24. Although the reporter was warned that the story was false and "had doubts" about its veracity, the court held that there was no triable issue of fact on actual malice. *Id.* at 24, 35-36. The court reiterated that the actual-malice "standard does not require that the reporter hold a devout belief in the truth of the story being reported, only that he or she refrain from either reporting a story he or she *knows* to be false or acting in reckless disregard of the truth." *Id.* at 35 (emphasis in original).

Here, far from the admitted "doubts" or "questions" that existed in *McCoy* and *Jackson* – yet were *still* insufficient to establish actual malice – the editors responsible for the Article about Beckham *did* hold a "devout belief in the truth of the story being reported." Baer Decl. at ¶¶ 2, 24, 44, 45; Exhibit E; Lee Decl. at ¶¶ 2, 21, 34. That belief was well-founded in firsthand sources, corroborating details, and a story that was all the more credible because it was entirely consistent with everything the magazine knew about Beckham and what had been previously widely reported about him.

Courts have regularly dismissed libel actions on factual records far weaker than this record. In *Fletcher v. San Jose Mercury News*, 216 Cal. App. 3d 172, 264 Cal. Rptr. 699 (1989), for example, plaintiff argued that a jury could infer that defendant *intentionally fabricated* a story about plaintiff, because of the discrepancy between the published article and the reporter's notes. Nonetheless, the Court held that "we do not think [the discrepancy between the notes and the article] demonstrates with convincing clarity that [the reporter] believed the allegations against [the plaintiff] were unfounded." *Id.* at 188 (actual malice not established even though there also was evidence the reporter did not like plaintiff, that the articles were "less than objective" and that they "clearly" contained factual errors).

15

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Similarly, in *St. Amant v. Thompson*, 390 U.S. 727 (1968) the United States Supreme Court reversed a libel judgment in favor of the plaintiff, a union president, in a lawsuit based on the defendant's televised reading of an affidavit accusing the president of bribery.  390 U.S. at 730.  There, the Court held that the plaintiff could not prove actual malice even though the defendant had relied solely on the affidavit, undertook no independent investigation of the charges, was aware that the affiant was one of the plaintiff's rivals, and knew nothing of the affiant's veracity.  *Id.*[8]

Here, Bauer did *not* rely solely on Nici's statements (even though her story was confirmed by a signed contract that included an express warranty that the information she provided would not violate another's rights).  Unlike the facts in *St. Amant*, Bauer *did* undertake an independent investigation and *did* take steps to confirm Nici's veracity, and *did* obtain comment from Beckham.  At no point did it obtain any evidence that caused it to doubt the story.  Had it done none of these things and even if Nici was biased against Beckham – which Bauer did not believe to be the case –  *St. Amant* would dictate that Nici's on-the-record statements were enough to prevent a finding of actual malice.  There simply is no basis for concluding that Bauer published the Article knowing it was false or with actual serious doubts as to its accuracy.  *See also Alnor v. Christian Research Institute*, 148 Cal. App. 4th 71, 55 Cal. Rptr.3d 600 (2007) (refusing to find actual malice even where evidence "gives rise to an inference [defendant] fabricated [information]"; where reporting was "slanted"; where "ill will" existed; where defendant did not adequately investigate his allegations; and where defendant relied on a source whose last name he did not even know).

---

[8] *See*, *also*, *Reader's Digest Ass'n v. Superior Court of Marin County*, 37 Cal. 3d 244, 208 Cal. Rptr. 137 (1984) (Insufficient evidence of actual malice despite plaintiff's contentions that:  (1) defendant failed to contact plaintiff; (2) defendant knew that plaintiff had already sued a source for libel; (3) defendant failed to "independently corroborate" allegations of a source; (4) article was not "fair" or "objective"; and (5) article omitted favorable information about plaintiff).

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

a.      **A Wealth of Evidence and Research Gave Bauer Strong Reason to Believe Its Story Was True, and It Did in Fact Believe Its Story Was True.**

Following a several-hour interview with Nici, Bauer's reporter came away believing her story "1000 percent."  Baer Decl. at ¶ 24 and Exhibit E; Lee Decl. at ¶ 21.  Nici provided vivid details that created a coherent whole story.  Further, she evidenced no ill will towards Beckham.  To the contrary, she had nothing but warm and positive things to say about Beckham (in contrast to what she had to say about other former clients).  Baer Decl. at ¶ 34.  Even when a publisher has a single source it believed in, and nothing more, courts routinely fail to find evidence of actual malice.  *Woods*, 791 F.2d at 488 (That defendant's sole source was a disgruntled employee is not "enough to establish that the author had serious doubts about the veracity of his source.  Reliance on a single source, in the absence of a high degree of awareness of probable falsity, does not constitute actual malice"); *Secord v. Cockburn*, 747 F. Supp. 779, 789 (D.D.C. 1990) ("[E]ven assuming that this [single] source was unreliable, the plaintiff had failed to point to any record facts to show that the author was subjectively aware that the source was unreliable").

Moreover, Nici's story was all the more credible because it was consistent with Bauer's own prior reporting, as well as the voluminous prior reports concerning Beckham's affairs that Bauer was well aware of.  Indeed, even details were consistent.  Reports of Beckham's affair with Rebecca Loos, for example, included allegations of a threesome, which lent credibility to Nici's report of a threesome.  Deinzer Decl. at Exhibit P.  Similarly, the fact that Sarah Marbeck, one of the women who claimed to have an affair with Beckham, was reported to be a "high class prostitute" gave Bauer further reason to believe that Beckham would sleep with a prostitute.  Yet more comfort was derived from the fact that, while he had denied these earlier stories, he took no action to challenge them.  Lee Decl. at ¶ 8.[9]

_____

[9] In the minds of Bauer's editors, the fact that Beckham failed to legally challenge these prior news articles, even though they were widely reported in

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Reliance on just such previously reported consistent behavior goes far to undercut any argument of actual malice.  In *Jackson v. Paramount*, for example, the credibility of *Hard Copy*'s report of a videotape suggesting child molestation by Michael Jackson was reinforced by the fact that "the report did not come out of the blue. [Jackson] had been the subject of a lengthy criminal investigation by the district attorney's office which was widely reported in the press, and had settled a lawsuit in which allegations of sexual molestation were made."  68 Cal. App. 4th at 34.

Nor can Beckham find support in a claim of "willful blindness" as was found in *Harte-Hanks Communications v. Connaughton*.  491 U.S. 657 (1989).  In connection with allegations of bribery, the publisher in *Harte-Hanks* had interviewed all the witnesses to a key conversation, *except* the "one witness most likely to confirm…the events."  *Id.* at 682.  This omission was all the more troubling since the publisher had tapes in its possession that would have revealed the falsity of the allegations, but they chose not to listen to them, leading the Court to its conclusion that there was a "deliberate effort to avoid the truth."  *Id.* at 684-685.  Here, in stark contrast, Bauer spoke to or sought comment from *all* parties present or aware of the two encounters, Nici, Davis, the other woman and Beckham.  The editors learned no evidence that contradicted or undermined their belief in the accuracy of Nici's story. And they most certainly did not possess any evidence that they ignored but would have proven Nici's allegations to be false.  Lee Decl. at ¶¶ 25, 32; Baer Decl. at ¶¶ 24, 37.

Consider, for example, *Beilenson v. Superior Court*, 44 Cal. App. 4th 944 (1996).  There, a congressional candidate sued his opponent for libel for stating that plaintiff unethically practiced law while employed by the state.  The plaintiff alleged that defendant "recklessly failed to take any steps to discover" whether plaintiff had

England, where he was then a resident at the time, only gave them further confidence in their accuracy and the truth of Nici's story.  It is widely understood that it is far easier to sustain a libel claim in England than in the United States.  Lee Decl. at ¶ 8.

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

in fact broken any laws, and further alleged that any reasonable investigation would have shown that no laws were broken. *Id.* at 947. Nonetheless, the Court of Appeal *reversed* the trial court's denial of an anti-SLAPP motion, and held that plaintiff failed to demonstrate that defendant *knew* his statement was false or doubted its truth. *Contrast Antonovich v. Superior Court*, 234 Cal. App. 3d 1041, 285 Cal. Rptr. 863 (1991) (sufficient evidence to support actual malice finding where defendant charged political opponent with destroying files with no evidence for the accusation, and in the face of plaintiff's showing of proof to the contrary).

At every turn, Bauer's investigation corroborated Nici's story and it found no evidence to contradict it. Nici's description of Beckham – from his voice to his demeanor – fit with his public persona. The times and locations of the meetings jibed with what they determined to be Beckham's travel schedule. Even his conversational gambits – from his love for his sons, his frustration with his Los Angeles teammates and his concern for his father's health – comported with facts Bauer was able to independently document. Baer Decl. at ¶¶ 25-29. As aptly found in *McCoy v. Hearst Corp.*, discussing the defendant's investigation, the California Supreme Court observed that "In the course of these efforts, the reporters uncovered several items which *in their minds* directly and indirectly corroborated [a source's] allegations." *McCoy*, 42 Cal. 3d at 854 (emphasis in original). The Court explained further, "It should be emphasized that whether [the alleged facts] occurred is irrelevant to resolution of the issue of appellants' subjective state of mind. Instead, it is appellants' subjective attitude toward the information they discovered which properly bears on the issue of actual malice." *Id.* at 854 n.16.[10]

In sum, Beckham cannot come close to demonstrating clear and convincing

---

[10] Nor does it change the analysis that the story involved hiring a prostitute, which is criminal activity. *See Jackson*, 68 Cal. App. 4th 10 (accusations of sexual conduct with underage boy); *Newton v. National Broadcasting Company, Inc.*, 930 F.2d 662 (9th Cir. 1990) (imputing mafia ties to singer Wayne Newton).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

evidence that Bauer published the story with actual malice. Baer, the editor in charge

of the story, and Lee, the magazine's Editor-in-Chief, indisputably believed the

Article to be true and accurate. Baer Decl. at ¶¶ 2, 44, 45; Lee Decl. at ¶¶ 2, 34.

Beckham thus cannot show that Bauer had "knowledge that [the story] was false."

*New York Times*, 376 U.S. at 280. Nor can he show that Bauer had "a high degree of

awareness … of probable falsity," as he must do to establish "reckless disregard."

*Harte-Hanks*, 491 U.S. at 688. At the time of publication, Baer had met with Nici,

whom she found to be consistent and believable; Nici spoke on the record and used

her real name; and she signed a contract with Bauer confirming that the information

she provided did not violate others' rights. Lee Decl. at ¶ 25. Baer also spoke with

two other firsthand sources, both of whom she found credible, and both corroborated

Nici's story. *Id.* at ¶¶ 30, 31. Further, Baer and Lee had *In Touch Weekly*'s research

and photo departments verify any details of the sources' stories that they could, and

everything checked out. Baer Decl. at ¶¶ 25-29; Lee Decl. at ¶ 22. The research

department also spent hours poring over prior coverage of Beckham, which

demonstrated a pattern of infidelity, and only added to what the editors themselves

had remembered of the Rebecca Loos scandal and other affairs. Baer Decl. at ¶¶ 6-9,

24, 44; Lee Decl. at ¶ 23; Deinzer Decl. at ¶¶ 3, 4 and Exhibit K. On top of all that,

the magazine had itself just a few months earlier been on the verge of publishing a

similar story about a totally separate woman (a story that it still believes to be

entirely accurate) and had at least three sets of other independent sources providing

information about Beckham's alleged infidelity. Baer Decl. at ¶¶ 10-14; Lee Decl. at

¶¶ 12-15. In the end, the magazine believed the Article to be true and most certainly

had no serious doubts about its accuracy.

### b. Beckham's Conclusory Denial Did Not Create Any Doubts.

The magazine did not proceed with publication of its Article before providing

Plaintiff with an opportunity to respond. After being informed of all the Article's

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

details, two days later Beckham did no more than provide the magazine with a conclusory denial and threats of litigation. Beyond the fact that he was staying in New York at the Waldorf, not the Parker Meridien – which Bauer's investigation had already uncovered and which was not inconsistent with Nici's story – Beckham provided no details to refute or even contradict the Article. Lee Decl. at ¶¶ 27, 32; Baer Decl. at ¶¶ 36, 37, 40.

Blanket denials are the norm in the world of journalism, particularly when it comes to allegations of affairs. They do nothing to support actual doubt. On many occasions, *In Touch Weekly* has received outright denials of stories that later proved entirely true. Lee Decl. at ¶¶ 29-31. In one instance, a celebrity even sued *In Touch Weekly*'s sister publication over an allegation of an affair, only to withdraw the action when the truth of the report was confirmed. Lee Decl. at ¶ 31. Bauer's experience is consistent with countless other examples in the press where prominent figures (including Bill Clinton, John Edwards and even Victoria Beckham) have vehemently denied affairs or other facts only to have them later proven to be true. Lee Decl. at ¶ 29; Baer Decl. at ¶ 39.

Accordingly, it is not surprising that the courts have repeatedly held that a denial does not constitute evidence of actual malice. Actual malice "cannot be predicated on mere denials, however vehement," because "such denials are so commonplace … that, in themselves, they hardly alert the conscientious reporter to the likelihood of error." *Edwards v. Nat'l Audubon Society*, 556 F.2d 113, 121 (2d Cir. 1977); *see also Robertson*, 36 Cal. App. 4th at 359 (rejecting "boilerplate denial of wrongdoing" as evidence of actual malice). So too, here, Beckham's general denial, and nothing more, did not create any doubt as to the accuracy of the Article. Baer Decl. at ¶¶ 36, 37, 40; Lee Decl. at ¶¶ 27-29, 32.

The Supreme Court has held that "A denial only serves to buttress a case for actdual malice when there is something in the content of the denial or supporting evidence produced in conjunction with the denial that carries a doubt-inducing

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

quality." *Harte-Hanks*, 491 U.S. at 691.  Here, Beckham's denial provided no reason for doubt.

In sum, every avenue *In Touch Weekly* pursued gave it reason to believe its story, and nothing gave it reason to doubt it.  Beckham's blanket denial did not change that fact.  On this record, Beckham cannot meet his burden of showing a probability that Bauer published the story with actual malice, let alone do so with the required "clear and convincing" evidence.  His libel claim should be stricken.[11]

## B.   Plaintiff's Duplicative Emotional Distress Claims Should Be Dismissed.

### 1.   Plaintiff's Remaining Claim Is Based On The Same Facts As His Defamation Claim and Is Barred By The Same Defenses and the Uniform Single Publication Act.

The United States Supreme Court has held that a plaintiff may not avoid constitutional defenses to a defamation claim by restyling that claim as one for invasion of privacy, intentional infliction of emotional distress, or any other tort.  *See*, *e.g.*, *New York Times*, 376 U.S. at 269 (constitutional protection does not depend on the label given to cause of action); *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50, 108 S. Ct. 876, 879, 99 L.Ed.2d 41 (1988) (Plaintiff cannot avoid libel defenses because the claim is styled as "intentional infliction of emotional distress").  Similarly, California courts hold that where the gravamen of a claim is the alleged falsity of the defendant's statement, the plaintiff cannot evade constitutional or statutory defenses by giving the claim a name other than defamation.  *See*, *e.g.*, *Blatty v. New York Times*, 42 Cal. 3d 1033, 1042-43, 232 Cal. Rptr. 542, 547 (1986).  This basic principle is codified in California's Uniform Single Publication Act, California

---

[11] Should Beckham now choose to put forth evidence to try and establish the falsity of *In Touch Weekly*'s article, it would not support a finding of actual malice. If he possessed such information, he should have provided it to Bauer when his side of the story was requested.  Any information he provides now does not affect Bauer's subjective state of mind at the time of publication.  *Herbert v. Lando*, 781 F.2d 298, 305-06 (2d Cir. 1986) ("It is self-evident that information acquired after the publication of defamatory material cannot be relevant to the publisher's state of mind or his alleged malice at the time of publication.")

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Civil Code § 3425.3, which provides that "[n]o person shall have more than one cause of action for damages for libel or slander or invasion of privacy or any other tort founded upon any single publication or exhibition or utterance, such as any one issue of a … magazine[.]"  Under this rule, multiple causes of action founded upon the alleged falsity of a single publication or broadcast must be dismissed.  *Id.*; *see also Baugh v. CBS, Inc.*, 828 F. Supp. 745, 756 (N.D. Cal. 1993) (same).

Plaintiff's Complaint includes a cause of action for libel and a claim for intentional infliction of emotional distress against Bauer.  Complaint at ¶¶ 43-48.  Both claims are based on the *same* alleged facts (and indeed refer to the same paragraphs of general fact allegations in his Complaint, *see* Complaint at ¶ 43), specifically, Bauer's allegedly false statements about him.  Complaint at ¶¶ 14-27.  This tag-on emotional distress claim is duplicative of the defamation claim, and is barred by the same constitutional defenses established above, *supra* at pages 11-22, and violates the Single Publication Act.  As a result, this claim must be stricken.

### 2. Plaintiffs Cannot Show The Requisite Extreme And Outrageous Conduct Necessary For An Intentional Infliction Of Emotional Distress Claim.

Even if Beckham could overcome these hurdles – which he cannot – his claim still fails because he cannot show the requisite "extreme and outrageous conduct" or that Bauer published the Article "with knowledge of a substantial certainty that [plaintiff] would suffer severe emotional injury upon discovery of the facts."  *Potter v. Firestone Tire & Rubber Co.* 6 Cal. 4th 965, 974, 25 Cal. Rptr. 2d 550, 555 (1993).  *See also Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1123, 257 Cal. Rptr. 665, 669 (1989).  Courts will permit liability on such claims "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable[.]"  *Cochran v. Cochran*, 65 Cal. App. 4th 488, 496, 76 Cal. Rptr. 2d 540, 545 (1998).  This standard is an objective one that looks to the reaction of the "average member of the community."  *Katsaris v. Cook*, 180 Cal. App. 3d 256, 267,

MOTION TO STRIKE
DWT 15952444v6 0069628-000028

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

225 Cal. Rptr. 531, 537 (1986).

Here, Bauer did nothing more than report what it believed was absolutely true after it gave Plaintiff a full opportunity to provide any evidence to contradict its reporting.  Beckham had endured similar reams of reports and Bauer had no reason to believe he would suffer "severe emotional injury" with one more article.  Beckham therefore cannot establish the required probability of prevailing on his intentional infliction of emotional distress claim.

## V.   CONCLUSION

Beckham cannot show a probability of success on either of his claims. Accordingly, Bauer respectfully requests that the Court grant this Motion and strike Beckham's Complaint.


DATED:  November 18, 2010          DAVIS WRIGHT TREMAINE LLP
                                   ALONZO WICKERS IV
                                   ELIZABETH A. McNAMARA (*Of Counsel*)
                                   KEVAN CHOSET (*Of Counsel*)


                                   By:   /s/ Alonzo Wickers IV
                                           Alonzo Wickers IV

                                   Attorneys for Defendants
                                   BAUER PUBLISHING COMPANY, L.P.,
                                   BAUER MAGAZINE L.P., BAUER MEDIA
                                   GROUP, INC., BAUER, INC., HEINRICH
                                   BAUER NORTH AMERICA, INC. and
                                   MICHELLE LEE

24

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899