1 | KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
2 |   *rkendall@kbkfirm.com*
Philip M. Kelly (212714)
3 |   *pkelly@kbkfirm.com*
Joshua Y. Karp (254424)
4 |   *jkarp@kbkfirm.com*
10100 Santa Monica Blvd., Suite 1725
5 | Los Angeles, California 90067
Telephone: 310.556.2700
6 | Facsimile: 310.556.2705

7 | Attorneys for Plaintiff and Cross-
Defendant
8 | David V. Beckham

9

10 | **UNITED STATES DISTRICT COURT**

11 | **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

12

| | |
|---|---|
| DAVID V. BECKHAM, an individual, | Case No. CV10-7980 R (SSx) |
| Plaintiff, | |
| v. | **JOINT STIPULATION REGARDING PLAINTIFF AND CROSS-DEFENDANT DAVID V. BECKHAM'S NOTICE OF MOTION AND MOTION TO CONDUCT DISCOVERY PRIOR TO RESPONDING TO BAUER DEFENDANTS' ANTI-SLAPP MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| BAUER PUBLISHING COMPANY, L.P., a Delaware limited partnership; BAUER MAGAZINE L.P., a Delaware limited partnership; BAUER MEDIA GROUP, INC., a Delaware corporation; BAUER, INC., a Delaware corporation; BAUER NORTH AMERICA, INC., a Delaware corporation; MICHELLE LEE, an individual; IRMA NICI, an individual; and DOES 1 through 50, inclusive, | |
| Defendants. | [Declarations of Irma Nici, Philip M. Kelly, Jeff Raymond, and Elizabeth A. McNamara filed concurrently herewith] |
| IRMA NICI, an individual, | Hon. Manuel L. Real |
| Cross-Complainant, | Date: January 18, 2011 Time: 10:00 a.m. Courtroom: 8 |
| v. | |
| DAVID V. BECKHAM, an individual, | Discovery Cutoff: TBD Pretrial Conference: TBD Trial Date: TBD |
| Cross-Defendant. | |

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

NOTICE OF MOTION AND MOTION OF DAVID BECKHAM TO CONDUCT DISCOVERY PRIOR TO
RESPONDING TO BAUER DEFENDANTS' ANTI-SLAPP MOTION

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on January 18, 2011, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 8 of the Courthouse for the United States District Court for the Central District of California (Western Division), located at 312 N. Spring Street, Los Angeles, California, 90012, before the Honorable Manuel L. Real, Plaintiff and Cross-Defendant David V. Beckham ("Beckham") will and hereby does move this Court for an order granting Beckham the ability to conduct limited discovery prior to responding to Defendants Bauer Publishing Company, L.P., Bauer Magazine L.P., Bauer Media Group, Inc., Bauer, Inc., Bauer North America, Inc. and Michelle Lee's (collectively the "Bauer Defendants" or "Bauer") Special Motion to Strike Plaintiff's Claims for Libel and Slander Pursuant to California Code of Civil Procedure § 425.16, filed November 18, 2010 and currently set for hearing on February 7, 2010 (the "Anti-SLAPP Motion"). Beckham requests this order in order to obtain relevant documents and testimony from the Bauer Defendants and from Defendant and Cross-Complainant Irma Nici ("Nici") that is essential to opposing the Anti-SLAPP Motion.

The discovery Beckham seeks is relevant and essential, and thus good cause exists to grant this Motion to Conduct Discovery, for the following reasons:

1. The information sought by Beckham is in the control of the Bauer Defendants and Defendant Nici;

2. The discovery will allow Beckham to successfully oppose the Anti-SLAPP Motion by establishing a prima facie case that Bauer acted with actual malice in publishing the false and defamatory article about Beckham; and

3. The discovery requested is narrowly tailored and is the least burdensome alternative to obtain the necessary information.

Beckham is entitled to such discovery in opposing the Anti-SLAPP Motion, just as he would be entitled to conduct discovery to oppose a summary judgment motion under Federal Rule of Civil Procedure 56(d). *See In re Bah*, 321 B.R. 41, 45

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

1

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1 (B.A.P. 9th Cir. 2005) ("[I]f a defendant makes a motion to strike under the anti-

2 SLAPP statute based on a failure of proof or evidence, the motion must be treated as

3 though it is a motion for summary judgment and discovery must be developed

4 sufficiently to permit summary judgment under Rule 56"); *Metabolife Int'l, Inc. v.*

5 *Wornick,* 264 F.3d 832, 846-47 (9th Cir. 2001) (ordering discovery of defendants to

6 oppose anti-SLAPP motion where information was in defendants' exclusive control

7 and "may be highly probative" to showing falsity); *Lafayette Morehouse, Inc. v.*

8 *Chronicle Pub. Co.,* 37 Cal. App. 4th 855, 868 (1995) (an ample opportunity to

9 conduct discovery is "of prime import in a libel suit against a media defendant who

10 will generally be the principal, if not the only, source of evidence concerning" actual

11 malice). In an effort to avoid motion practice on this issue, counsel for Beckham

12 wrote a detailed letter to counsel for the Bauer Defendants and for Nici stating his

13 position that discovery is necessary and warranted, and counsel for all parties met

14 and conferred regarding this dispute. Neither Nici nor the Bauer Defendants agreed

15 to voluntarily allow discovery.

16      This Motion for Limited Discovery is based on this Notice of Motion, the

17 attached Joint Stipulation, the Declaration of Philip M. Kelly filed concurrently

18 herewith, all of the pleadings, files, and records in this proceeding, all other matters

19 of which the Court may take judicial notice, and any argument or evidence that may

20 be presented to or considered by the Court prior to its ruling.

21 Dated: December 28, 2010       KENDALL BRILL & KLIEGER LLP

22

23

24 By: _____

25       Philip M. Kelly
         Attorneys for Plaintiff David Beckham

26

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

2

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1

## **TABLE OF CONTENTS**

2

**Page**

4  I.      BECKHAM'S INTRODUCTION ...................................................................1

5  II.     BAUER DEFENDANTS' INTRODUCTION....................................................4

6  III.    DEFENDANT/CROSS-COMPLAINANT NICI'S INTRODUCTION..........7

7  IV.    BECKHAM'S CONTENTIONS AND POINTS AND AUTHORITIES ........8

8       A.    Statement of Facts ...............................................................................8

9            1.    Efforts of In Touch Weekly To Publish An Article About Beckham...................................................................................8

10            2.    The Defamatory Article At Issue...............................................8

11 12            3.    Bauer Intentionally Prevented Beckham From Having An Opportunity To Disprove the Article Before It Was Published ................................................................................9

13 14            4.    Other Publications Immediately Recognized That Nici's Story Was Nothing But A Pack Of Lies And That Absolutely No Corroboration Existed ......................................10

15 16            5.    The Bauer Defendants' Anti-SLAPP Motion and the Incomplete and Self-Serving Facts and Documents Bauer Disclosed With It .............................................................12

17                (a)    Baer Meeting Kristin Davis, Nici's Madam....................13

18                (b)    The Nici Interviews .........................................................13

19 20                (c)    Emails and Conversations Between Baer and Michelle Lee Regarding Nici's Story.............................14

21                (d)    Baer's Conversation With The "Other Prostitute"...........15

22 23                (e)    *In Touch* Editorial Decisions Regarding Other Allegations of Beckham's Infidelity and Other Celebrity Affairs .............................................................15

24 25                (f)    Nici and Davis' Exclusive Source Agreements with Bauer.......................................................................16

26                (g)    *In Touch*'s "Research" To Confirm The Nici Story ........16

27       B.    ARGUMENT ....................................................................................17

28            1.    A Party Opposing An Anti-SLAPP Motion In Federal Court Is Entitled To Discovery Essential To Its Opposition ......17

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

i

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

2. Beckham Is Entitled To Conduct Discovery Into Bauer's Actual Malice ........................................................................20

(a) Beckham Is Entitled To Documents And Deposition Testimony From Nici .......................................................23

(b) Beckham Is Entitled To Documents And Deposition Discovery From The Bauer Defendants ..........................25

V. BAUER DEFENDANTS' CONTENTIONS AND POINTS AND AUTHORITIES ....................................................................29

 A. Statement of Facts ..................................................................29

  1. David Beckham's History of Marital Infidelity .........................29

  2. *In Touch Weekly*'s Leads About More Recent Affairs ..............30

  3. The Reporting for the Article at Issue ......................................30

  4. Bauer Obtains and Publishes Beckham's Denial .......................32

  5. The Bauer Defendants' Anti-SLAPP Motion ...........................33

  6. The Present Motion .................................................................35

 B. Argument .................................................................................38

  1. Section 425.16(g) and Fed. R. Civ. P. 56(d) Permit Discovery Only if the Plaintiff Demonstrates Good Cause or That the Evidence Sought Exists and is "Essential" to His Opposition ......................................................................38

  2. Plaintiff Has Not Met His Burden By Showing That the Requested Discovery is Essential or Even Exists .....................43

  3. Discovery is Not Available to Plaintiff on the Issue of Actual Malice Where the Requested Evidence, Even if It Existed, Would Not Establish Actual Malice ..........................47

  4. The Specific Discovery Sought By Plaintiff From the Bauer Defendants is Not Even Relevant To, Let Alone Essential To, Plaintiff's Opposition. ...........................................50

   (a) The Specific Discovery Sought from the Bauer Defendants is Not Essential or in Existence ....................50

   (b) The Discovery Sought by Plaintiff From Nici is Not Relevant to Plaintiff's Opposition and Would Be Duplicative ..................................................................55

VI. DEFENDANT/CROSS-COMPLAINANT NICI'S CONTENTIONS AND POINTS AND AUTHORITIES ...................................................57

VII. BECKHAM'S CONCLUSION .......................................................58

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

ii

VIII. BAUER DEFENDANTS' CONCLUSION ......................................................58

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

# I.  **BECKHAM'S INTRODUCTION**

By this motion, David Beckham seeks an order allowing him to conduct limited and targeted discovery of Bauer and Irma Nici in order to respond fully to Bauer's recently filed anti-SLAPP motion.  Because the discovery sought is essential to Beckham's opposition to the anti-SLAPP motion and is exclusively within Bauer's and Nici's possession, Beckham is entitled to the discovery sought herein before any determination is made on the anti-SLAPP motion.

In late September 2010, Bauer-owned tabloid magazine *In Touch Weekly* published an article entitled "David's Dangerous Betrayal" (the "Article"), which alleged that Beckham committed a crime by paying for sex with Nici and another prostitute in 2007.  Declaration of Philip M. Kelly ("Kelly Decl.") Exhibit ("Ex.") 1.  The Article is entirely false; Beckham has never met or heard of Nici or the unidentified other prostitute, nor has he ever paid anyone for sex.  Bauer knew, or at least recklessly disregarded, that Nici's story was false, but it nonetheless paid her and her admitted "madam" $50,000 to purchase the exclusive rights to the fabrications and then published those lies as a cover story.  Indeed, Bauer's business model is apparently based on publishing predominantly false stories about celebrities; a recent review of the verifiable *In Touch Weekly* cover stories over a 20-month period found that 91 percent of the *In Touch Weekly* cover stories were false.  Kelly Decl. Ex. 20.

To hold Bauer and Nici accountable for their lies, Beckham filed suit for defamation and intentional infliction of emotional distress.  Kelly Decl. Ex. 2.  After removing the case to this Court, Bauer filed its anti-SLAPP motion.  Bauer *assumes* that Beckham can prove that the article is false and defamatory, but argues that Beckham cannot meet his burden of showing that Bauer acted with actual malice in publishing the article.  Kelly Decl. Ex. 3 at 12-22.  Immediately upon filing the anti-SLAPP motion, Bauer took the position that all discovery was stayed and has steadfastly refused Beckham any discovery.  Kelly Decl. ¶ 3.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

In support of the anti-SLAPP motion, Bauer selectively disclosed incomplete, self-serving facts and documents that, according to Bauer, prove that it lacked actual malice in publishing the Article.  The centerpiece of Bauer's presentation is a transcript of just one of the two several-hour interviews that Bauer claims to have conducted with Nici.  However, the transcript contains over 800 instances where abbreviations like "[UI]," apparently meaning "unintelligible," "[simultaneous voices]," and "[speaking quickly]" replace actual conversation.  Additionally, there is a significant gap in the transcription between the end of Tape 1 and the beginning of Tape 2.  Moreover, numerous "facts" that appear in the Article are nowhere to be found in the transcript and it is therefore unknown whether Nici made obviously false, or easily disproven, statements during these lapses in the transcript or if Bauer asked Nici for any verifiable proof of her wild allegations.  It is clear that discovery is required so that Beckham can inquire into the portions of the first interview that were not transcribed, as well as into the contents of the second interview, as to which no transcription exists at all.

The law in the Ninth Circuit is clear:  a plaintiff is entitled to obtain discovery to test the assertions in a defendant's anti-SLAPP motion just as he would be entitled to conduct discovery to oppose a summary judgment motion under Federal Rule of Civil Procedure 56(d).  Indeed, "if a defendant makes a motion to strike under the anti-SLAPP statute based on a failure of proof or evidence, the motion must be treated as though it is a motion for summary judgment and discovery must be developed sufficiently to permit summary judgment under Rule 56." *In re Bah*, 321 B.R. 41, 45 (B.A.P. 9th Cir. 2005).  As such, Rule 56(d) – formerly 56(f) – applies, which requires that the nonmoving party be allowed to conduct discovery "essential to justify its opposition."  Fed. R. Civ. P. 56(d).  Accordingly, "if a defendant desires to make a special motion to strike based on the plaintiff's lack of evidence, the defendant may not do so until discovery has been developed sufficiently to permit summary judgment under Rule 56." *Rogers v. Home*

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

2

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1  *Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999); *see also*

2  *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001).

3  Courts thus routinely grant leave to conduct discovery essential to an

4  opposition to an anti-SLAPP motion, especially when, as here, the factual record has

5  not been adequately developed or when the anti-SLAPP motion focuses on actual

6  malice: "[I]f the information needed to defend the motion is in the moving party's

7  control, *as is generally the case when a plaintiff must prove malice*, 'most courts ...

8  are lenient in granting further time for discovery ....' *This tendency toward leniency*

9  *is strengthened when the summary judgment motion raises latent fact issues such as*

10  *motive, intent, knowledge, or credibility and the moving party has exclusive control*

11  *over those facts*." *Rogers* 57 F. Supp. 2d at 981 (emphasis added). Indeed, ***an ample***

12  ***opportunity to conduct discovery is "of prime import in a libel suit against a media***

13  ***defendant who will generally be the principal, if not the only, source of evidence***

14  ***concerning" actual malice***. *Lafayette Morehouse, Inc. v. Chronicle Pub. Co.*, 37

15  Cal. App. 4th 855, 868 (1995) (emphasis added).

16  Beckham easily satisfies the Rule 56(d) standard with respect to the discovery

17  sought herein, namely (i) the depositions of Irma Nici, Deborah Baer (the author of

18  the article and interviewer of Nici and the other alleged sources), Michelle Lee (the

19  editor who oversaw the decision to publish the Article and the "research" conducted

20  to confirm its accuracy), and Annette Deinzer (who allegedly confirmed the

21  accuracy of certain aspects of the Article); and (ii) production of documents related

22  to the Article, Bauer's knowledge of facts bearing on the Article's veracity, Bauer's

23  interviews with Nici, her madam, and the unidentified second prostitute, and

24  Bauer's efforts (or lack thereof) to corroborate Nici's allegations. Without this

25  evidence, which is within the defendants' exclusive control, Beckham would be

26  severely prejudiced in opposing the anti-SLAPP motion and demonstrating Bauer's

27  willful blindness to the falsity of Nici's story and Bauer's malicious intentions to

28  publish a salacious story about Beckham to sell magazines.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

3

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

## II.   **BAUER DEFENDANTS' INTRODUCTION**

In keeping with the purpose of the anti-SLAPP statute – which provides for the "fast and inexpensive unmasking and dismissal" of claims, like Beckham's, that target speech – this Court has issued two orders rejecting any protracted delay in the time for the Bauer Defendants' Special Motion to Strike to be heard. *Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 16, 43 Cal. Rptr. 2d 350, 356 (1995); *see also* Cal. Civ. Proc. Code § 425.16(c)(4); Declaration of Elizabeth A. McNamara ("McNamara Decl.") Ex. A.  Nonetheless, inexplicably waiting more than four weeks after the Bauer Defendants filed their motion, Beckham now seeks further delay by filing a belated request for discovery.  And for no good reason he chose to serve his half of this stipulation on the Friday evening of December 17, thereby forcing defendants to provide their responses the Monday after the Christmas holiday weekend.

Delay is not the only cause for concern with Beckham's motion.  More critically, he fails to meet his burden of showing not only that the discovery he seeks is *essential*, but also that the facts he wishes to find even *exist*.  He has not pointed to a single fact that establishes the falsity of Bauer's story, let alone that Bauer was aware of such a fact or studiously avoided obtaining it.  Instead, based on nothing more than pure speculation that evidence "may exist," he seeks to embark on a proverbial fishing expedition in the vain hope that somehow, somewhere, he will find evidence that Bauer knew its story was false or had serious doubts about the story.

Plaintiff David Beckham is married to Victoria Beckham and is the self-proclaimed "world famous athlete" no doubt familiar to the Court.  Complaint ¶ 1. He filed this libel lawsuit against the Bauer Defendants and Irma Nici after the Bauer Defendants published an article in the magazine *In Touch Weekly* disclosing that Beckham hired Nici (a former prostitute who was interviewed by the Bauer Defendants on the record) to have sex in New York and London (the "Article").

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

4

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

Nici's story was entirely consistent with Beckham's widely published reputation for marital infidelity, included vivid details (many of which Bauer was able to independently confirm before publication) and was corroborated by two additional sources: another prostitute who participated in a "threesome" with Beckham in New York, and Kristin Davis, the former madam, who arranged the tryst. In short, Bauer published its Article believing it to be entirely accurate.

On November 18, 2010, the Bauer Defendants filed a special motion to strike the complaint under California Code of Civil Procedure § 425.16, the anti-SLAPP statute, which acts to automatically stay discovery. In its motion, Bauer establishes that Beckham cannot establish a "probability of success" because he cannot as a matter of law meet his burden of showing actual malice, *i.e.*, clear and convincing evidence that Bauer published the Article knowing it to be false or with actual serious doubts as to its truth. To obtain discovery after the filing of an anti-SLAPP motion, Beckham must demonstrate "good cause" under C.C.P § 425.16(g) or that discovery "is essential to his opposition" under Federal Rule 56(d), standards that the courts deem to be functionally the same. *Price v. Stossel*, 590 F. Supp. 2d 1262, 1270 (C.D.Cal. 2008). Beckham does not meet his burden.

The purpose of California's anti-SLAPP statute "is best served by an interpretation which . . . require[s] a plaintiff to marshal facts sufficient to show the viability of the action *before* filing a SLAPP suit." *Ludwig*, 37 Cal. App. 4th at 16. Nonetheless, Beckham looks to defendants in a desperate hope that they can provide evidence to support his claim. He demands four depositions – including Bauer's source Irma Nici, who could not possibly testify to Bauer's subjective state of mind – and proposes sweeping document requests seeking "all documents" from Bauer and Nici on innumerable topics.

Essentially, Beckham's demands fit into two categories. First, he believes discovery is "likely" to reveal that Bauer "knew the falsity of Nici's story" or "had doubts about [its] truth," but in the face of Bauer's overwhelming (and sworn)

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

5

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1  evidence to the contrary, he provides no explanation as to why that would be

2  "likely."  Instead, as his central rationalization for discovery, Beckham looks to the

3  supposed "woefully poor quality" of the transcript of Bauer's interview of Nici

4  produced in support of Bauer's motion.  Noting hundreds of supposed "lapses" in

5  the transcript, Beckham speculates that Nici may have "made obviously false, or

6  easily disproven, statements during these lapses. . . ."  *See supra* at p. 2.

7  Egregiously, Beckham fails to inform the Court that when his counsel first raised a

8  concern with the transcript (prepared and notarized by an independent transcription

9  service), Bauer promptly agreed to provide him with the actual audio files (and has

10  since done so).  *See* McNamara Decl. at ¶ 2.  Thus, together, the transcript and audio

11  belie Beckham's speculation that the missing word here or there would reveal

12  "obviously false" statements.

13         Alternatively, Beckham hopes to establish through discovery that Bauer

14  turned a blind eye and purposefully avoided finding the truth.  He raises the specter

15  of several questions Bauer possibly failed to ask Nici and its other sources.  But the

16  record already establishes that much of the identified information *was* requested;

17  and even if Bauer did not, for example, ask to see Nici's passport, as a matter of law

18  such an alleged "failure" would not support a finding of actual malice.  *See*, *e.g.*,

19  *Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d 1249, 1253-54 (9th Cir. 1997) (adopting

20  a "see-no-evil, hear-no-evil tack" and failing to contact plaintiff did not amount to

21  clear and convincing evidence of actual malice).

22         Beckham's proposed discovery is precisely the type of "fishing expedition" –

23  resulting only in delays and high costs – that the anti-SLAPP statute is designed to

24  prevent.  Given the overwhelming evidence demonstrating that the Bauer

25  Defendants did not doubt the accuracy of their report, and had no reason to doubt it,

26  discovery could not possibly establish Beckham's burden of showing actual malice.

27  Because Beckham cannot show that the evidence he seeks exists or is essential to his

28  opposition to the Special Motion to Strike, this motion should be denied.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

6

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

## III.   <u>DEFENDANT/CROSS-COMPLAINANT NICI'S INTRODUCTION</u>

Overlooked in Beckham's introduction is the Cross-Complaint of Irma Nici, who having been victimized in the first instance by Beckham's baseless lawsuit, was then again victimized by the horrendous (and tortious) conduct of Beckham's agents in chasing her down, and endlessly harassing her at her hotel in a needless exercise in serving her. (She had, through counsel, already agreed to accept service—and even allowed herself to be photographed to prove she had been served, but to no avail, Beckham's agents were unrelenting in making her life a living hell.) Her cross complaint in this action followed. She filed an anti-SLAPP motion in the state court prior to this case being removed, but then withdrew it. Her declaration there, already a part of this court's file, is attached hereto. In it she simply and powerfully reiterates the truth of her statements to In Touch magazine. Thus it is unequivocally established that her testimony is that each and every single thing she said to In Touch Magazine was the truth. There is no need for her testimony for Beckham to adequately oppose Bauer Publishing's anti-SLAPP motion, in that she has already testified that what she told Bauer was –and is—true. Beckham need harass her no further to hear it: Nici swears that she told Bauer Publishing the truth and stands by every syllable of her story.

To be sure, in his introduction, Beckham labels Nici's statements as "lies". Well, Nici's sworn testimony is that the liar is Beckham. For purposes of this motion there is nothing to be served by discovery in this "he said", "she said" contest. Beckham and Nici both know the truth and to be sure one of them is "lying", to use Beckham's word. Who that is, and who is telling the truth, is not before the court in the pending motion. The time will come in due course for Beckham to be deposed, and for Nici to be deposed, but that time is not yet upon us. Beckham's premature request for unilateral discovery is beyond harassing, it is unjust and what is more (as will be developed below, contrary to law. For these reasons, Nici strongly opposes this motion.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

7

## IV.   BECKHAM'S CONTENTIONS AND POINTS AND AUTHORITIES

### A.   Statement of Facts

#### 1.   Efforts of In Touch Weekly To Publish An Article About Beckham

Bauer admits that it has long been plotting to publish a dramatic story about Beckham's alleged infidelity.  Kelly Decl. Ex. 5 (Declaration of Deborah Baer), at ¶ 10.  Its goal was to damage Beckham's reputation by showing that, according to *In Touch Weekly*'s Editor in Chief Michelle Lee, "Beckham's efforts to portray and market himself as a family man, happily married with three children . . . was not the whole story."  Kelly Decl. Ex. 6 (Declaration of Michelle Lee), at ¶ 10.  Yet each time Bauer pursued the rumor mill, it reached a dead end.  Kelly Decl. Ex. 5 at ¶¶ 11-13; Kelly Decl. Ex. 6 at ¶ 14.  After numerous false starts, Bauer recklessly grabbed the opportunity Nici provided, ignored clear red flags in Nici's story, and published her lies.

#### 2.   The Defamatory Article At Issue

On September 23, 2010, *In Touch Weekly* published the Article.  Kelly Decl. Ex. 1.  In graphic and salacious detail, and using Nici and Kristin Davis, Nici's admitted "madam," as its primary sources, the Article falsely asserts that Beckham, a world-renowned soccer star and celebrity, engaged in an illegal sexual acts with Nici, an admitted prostitute, in 2007.  Bauer asserted in the Article that Beckham paid for sex with Nici and another prostitute.  Bauer subtitled the Article: "David Beckham acts like a loving family man, but he's hiding a secret life of hookers and unsafe sex."  *Id*.  The episodes described in the Article are complete fabrications.  Beckham has never met Nici (or the other alleged prostitute who supposedly joined Nici during the evening), let alone paid either of these two prostitutes for sex.  Kelly Decl. Ex. 7 (Beckham Declaration).

Nici sold these lies, and the Bauer Defendants purchased them, for $50,000, for publication in both the U.S. and the German editions of *In Touch Weekly*.  Kelly

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

8

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

Decl. Ex. 8.  The Bauer Defendants attempted to maximize their profit off these lies by placing a photograph of Beckham and his wife on the cover of the October 4, 2010 issue of *In Touch Weekly* containing the Article.  Kelly Decl. Ex. 1.  On top of this photograph, the Bauer Defendants overlaid the headline "Beckham Caught Cheating: The Ultimate Betrayal!" and the following accompanying text:

> EXCLUSIVE: David's affair with a $10,000-a-night hooker
>
> - A threesome and unsafe sex
> - His dig at super-thin Posh
> - The call girl: "I could see why he'd be unhappy"

*Id.*

Because of Beckham's worldwide fame, the lies in the Article and Nici's falsehoods have been repeated and disseminated around the globe, and an untold number of people have read or heard about the fabrications.  These false stories have caused Beckham great anguish and emotional distress, and have adversely affected both Beckham's professional life as an athlete, endorser, and charity spokesperson. To clear his name and to be compensated for the emotional and monetary toll these stories have exacted, Beckham brought claims against the Bauer Defendants and Nici for libel, slander, and intentional infliction of emotional distress.  Kelly Decl. Ex. 2.

### 3. <u>Bauer Intentionally Prevented Beckham From Having An Opportunity To Disprove the Article Before It Was Published</u>

Bauer claims in the Motion that it gave Beckham's representatives an opportunity to comment on the Article before it was published and suggests that Beckham had the opportunity to disprove the allegations.  Far from advancing Bauer's cause, the actual facts show just how sleazy Bauer's conduct was. Although Bauer contacted a Beckham representative before publishing the Article, Bauer did not even provide Beckham with a single business hour, much less a

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

9

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

business day, in which to refute Nici's story.  The chronology is as follows:  Bauer first interviewed Nici on Saturday, September 11, 2010.  It waited, however, until Saturday, September 18 to dump the story on Beckham's publicists, and then demanded that they respond to the already-drafted article no later than Monday, September 20, at 6 a.m. Los Angeles time.  Kelly Decl. Ex. 5 at ¶ 35.  Bauer did not present the allegations and impending story to Beckham's representative and then ask if Nici's story was true; rather, Bauer advised the Beckham representative that it would be publishing the Article, regardless of Beckham's response.  Declaration of Jeff Raymond ¶¶ 2-4.  In the short time that Bauer left for Beckham's response, Beckham's representatives issued complete denials of all of the allegations in the Article.  *Id.* at ¶ 5.  Apparently, however, that was insufficient for Bauer, as Bauer now cites to the blanket denials that Beckham's representatives had less than two weekend days to craft as being insufficient to provide any doubts about the veracity of Nici's story because they did not include detailed evidence disproving allegations that never occurred.  Kelly Decl. Ex. 3 at 20-22; Ex. 5 at ¶ 36; Ex. 6 at ¶¶ 27-29.  These tactics should not be countenanced.  Bauer ambushed Beckham and did not give him an opportunity to substantively respond to the allegations as it knew that Beckham would disprove the allegations if provided a reasonable opportunity to do so.

> **4.** **Other Publications Immediately Recognized That Nici's Story Was Nothing But A Pack Of Lies And That Absolutely No Corroboration Existed**

Nici tried to sell her story to other tabloid publications.  After hearing Nici's story and conducting just a superficial investigation of its veracity, those tabloids quickly determined that it was entirely false and refused to publish Nici's lies.  For example, *News of the World* interviewed Nici and investigated her claims.  Kelly Decl. Ex. 9.  In rejecting Nici's story as completely false, the newspaper identified numerous purported facts and documents that would be exclusively in Nici's

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

10

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

possession, if they existed, and that are highly relevant to Beckham's opposition to the Anti-SLAPP Motion:

- Nici claims that she met Beckham after an introduction from a mutual friend, but Nici refused to identify the friend.

- Nici refused to provide the full name of the second prostitute that allegedly joined Nici and Beckham in the Le Parker Meridian hotel in New York; Nici's agent told *News of the World* that no amount of money will convince "Jess" to corroborate Nici's allegations.

- Nici claimed she has phone records revealing that Beckham called her from Le Parker Meridian, but claimed to *News of the* World that she "lost" the password for internet access to her mobile account and admitted that she did not have copies of any such records. Nici claimed to keep detailed notes on all of her client bookings, but could not provide Beckham's phone number.

- Nici offered to show *News of the World* her passport to prove that she was in New York in August 2007, but claimed that she did not have the passport with her. Later, she claimed handbag containing the passport had been stolen.

- Nici alleged that she has credit card receipts to show she was at the Claridge's Hotel in London with Beckham, but again claimed the receipts were unavailable.

*Id.* The *Daily Mail*, a newspaper in the United Kingdom, also investigated Nici's allegations and likewise found them completely false, concluding that "Miss Nici does not appear to have a shred of evidence to support her version of events, and her observations of Beckham are nothing new." Kelly Decl. Ex. 10.

In addition to the red flags identified by *News of the World*, which Bauer apparently ignored, it also appears that Bauer failed to check with the Le Parker Meridien or Claridge's Hotel, which would have informed Bauer that Beckham did not have a room at either hotel during the relevant time periods, and failed to seek or obtain any corroborating documentary evidence.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

11

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1    Bauer's recklessness in reviewing Nici's allegations, and its failure to conduct

2    a decent investigation before publishing these lies, needs to be explored through

3    discovery before Bauer's protestations of innocence can be credited.

4        **5.**    <u>**The Bauer Defendants' Anti-SLAPP Motion and the**</u>

5            <u>**Incomplete and Self-Serving Facts and Documents Bauer**</u>

6            <u>**Disclosed With It**</u>

7    As soon as he was able to do so in State Court, Beckham served deposition

8    notices and requests for production of documents on Nici, Michelle Lee, and the

9    other Bauer defendants in an effort to gather evidence demonstrating the falsity of

10    Nici's claims and evidence demonstrating that Bauer acted with actual malice in

11    publishing the Article.  Kelly Decl. ¶ 2, Exs. 12-14.  In response to Beckham's suit,

12    and to halt his gathering of evidence against them, Bauer removed the case to

13    federal court and filed the anti-SLAPP motion.[1]  Kelly Decl. Ex. 3, 15.  Bauer and

14    Nici have repeatedly refused to provide any discovery to Beckham since removing

15    the case and while the anti-SLAPP motion is pending.  Kelly Decl. ¶ 3.

16    Bauer's anti-SLAPP motion alleges that each of Beckham's causes of action

17    against Bauer arises from conduct in furtherance of Bauer's constitutionally

18    protected right of free speech and that Beckham cannot show a probability of

19    prevailing on his claims.  Specifically, Bauer contends that even if Beckham can

20    show that the Article is false and defamatory, Beckham cannot meet his burden of

21    showing a probability of prevailing on his claim that Bauer acted with actual malice,

22    i.e. that Bauer knew the Article was false or recklessly disregarded the fact that the

23    Article was false.  Kelly Decl. Ex. 3, at 12-22.  In support of its argument that it did

24    not act with actual malice, Bauer discusses the various steps it took to learn of Nici's

25    story and to confirm its alleged veracity.  *Id*.  But there are myriad gaps and holes in

26

27    [1] Nici filed her own anti-SLAPP motion on October 4, 2010, but withdrew her
motion less than ten days later.  Kelly Decl. Ex. 15.

28

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1   Bauer's story.  Rather than confirm that the Bauer Defendants acted without actual

2   malice, the incomplete record Bauer provides indicates that Bauer is withholding

3   evidence that will show that it had significant doubts about the veracity of Nici's

4   story.  Beckham seeks discovery to fill in the following gaps in Bauer's record, and

5   he is confident that such discovery will reveal that Bauer did in fact act with actual

6   malice in publishing the Article.

7                    **(a)      Baer Meeting Kristin Davis, Nici's Madam**

8          Bauer's incomplete disclosure of the facts begins with Bauer's account of

9   how it learned that Nici wanted to talk to a magazine about her former clients.  In

10  her declaration, Deborah Baer, the Executive Editor of *In Touch Weekly*, briefly

11  discusses how she got in touch with Kristin Davis ("Davis"), Nici's madam.  Kelly

12  Decl. Ex. 5.  Apparently, during the summer of 2010, an *In Touch* editor on the

13  West Coast spoke to Davis, who told the editor that a prostitute she had worked with

14  was willing to speak about some of her former clients, and provided some names.

15  Kelly Decl. Ex. 5 at ¶ 16.  The list did not include Beckham.  In July, Baer met

16  Davis, and later Davis contacted her and told her that she knew another prostitute

17  who wanted to speak to a magazine about her former clients.  Baer does not provide

18  any of the substance of her discussions with Davis, except to note that Davis

19  provided a list of some of the prostitute's famous male clients, Beckham was one of

20  the names on the list, and, apparently as a result of Bauer's ongoing efforts to

21  publish a damaging story about Beckham as described in Section III.A.1, above,

22  Baer "elected to obtain more information on David Beckham."  Kelly Decl. Ex. 5 at

23  ¶ 17.

24                    **(b)      The Nici Interviews**

25         Baer declares that her discussion with Davis eventually led her to interview

26  Nici on two separate occasions for a total of six or seven hours.  Kelly Decl. Ex. 5 at

27  ¶¶ 19 & 34.  The most obvious examples of Bauer's incomplete submission on the

28  evidence of actual malice are in its discussion regarding these interviews and the

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

13

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1  evidence it provides of them.  Bauer includes a transcript of Baer's first interview

2  with Nici, which Baer claims lasted approximately three hours.  *Id*. ¶ 19; Kelly

3  Decl. Ex.4.  This transcript is of woefully poor quality and completeness.  It

4  contains over 500 instances where the abbreviation "[UI]" appears, apparently

5  meaning "unintelligible,"[2] instead of including the actual words spoken by Nici,

6  Baer, or the unidentified third person in the interview.  Kelly Decl. Ex.4.  Likewise,

7  there are almost 200 inclusions of the phrase "[simultaneous voices]," almost 100

8  instances where the transcriber writes "sounds like" and 7 instances where the

9  phrase "[speaking quickly]" replaces actual conversation.  Kelly Decl. Ex.4.

10  Additionally, there is a gap in the transcription between the end of Tape 1 and the

11  beginning of Tape 2.  As Tape 1 ends, Nici is discussing her alleged second

12  encounter with Beckham.  When Tape 2 begins, Nici is talking about Kristin Davis

13  and the Elliot Spitzer scandal.  There is no indication in the transcript of an

14  intervening question that would explain this change in topic.  *Id*. at Tape 1, Side B

15  Page 40 – Tape 2, Side A Page 1.  Baer also declares that she interviewed Nici a

16  second time for three or four hours.  Kelly Decl. Ex. 5 at ¶¶ 33 & 34.  The Bauer

17  Defendants do not include a transcription of this second interview; instead, Baer

18  provides scant details in her declaration.  *Id*.

19          **(c)**    **Emails and Conversations Between Baer and Michelle**

20                             **Lee Regarding Nici's Story**

21       After her first interview with Nici, Baer emailed Defendant Michelle Lee, *In*

22  *Touch Weekly*'s Editor in Chief, and two Bauer employees to provide them with the

23  "highlights" of the interview.  Kelly Decl. Ex. 17.  In this email, Baer wrote that "[I]

24  believe [Nici] 1000 percent."  *Id*.  Both Baer and Lee cite to this email as evidence

25  that the Bauer Defendants had no doubts about Nici's story.  Kelly Decl. Ex. 5 at ¶

26  24; Kelly Decl. Ex. 6 at ¶ 21.  Yet the Bauer Defendants only include this email;

27

28        [2] Bauer does not provide an explanation for the abbreviation "UI."

**Kendall Brill**
**& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

14

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1  they do not provide any other documents related to Bauer's belief in the veracity of

2  the story or related to the absence of any evidence corroborating the story of an

3  admitted prostitute and her madam for which they received $50,000.  Moreover,

4  Lee, in her declaration, stated that she and Baer spoke on the phone after the

5  interview, and Baer "told [Lee] more details of Nici's story."  Kelly Decl. Ex. 6 at ¶

6  21.  Neither Lee nor Baer provides any details about this phone conversation,

7  including any discussions about the veracity of the allegations made by Nici.

8  <center>**(d)**  **Baer's Conversation With The "Other Prostitute"**</center>

9  Baer declares that she confirmed Nici's account with the "other prostitute

10  who came to the room for the 'threesome' with Ms. Nici and Mr. Beckham."  Kelly

11  Decl. Ex. 5 at ¶ 30.  It appears that Baer only spoke to this woman on the phone,

12  Bauer conducted no investigation of her or about her, and Baer may not even know

13  her name.  In any event, all Baer reveals about this conversation is that this woman

14  confirmed Nici's account; Baer provides no specifics and no transcript of that

15  interview.  *Id.*

16  <center>**(e)**  ***In Touch* Editorial Decisions Regarding Other**</center>

17  <center>**Allegations of Beckham's Infidelity and Other**</center>

18  <center>**Celebrity Affairs**</center>

19  True to its reputation as a supermarket tabloid magazine, *In Touch* has

20  attempted to use the protections provided by the litigation privilege to publicize

21  further outrageous and plainly false allegations about David Beckham in its anti-

22  SLAPP motion.  These allegations are so far-fetched that even *In Touch* felt they

23  were not fit to print in their magazine.  Thus, Baer and Lee include in their

24  declarations other rumors of Beckham's alleged infidelity that *In Touch* did not

25  publish.  Kelly Decl. Ex. 5 at ¶¶10-14; Kelly Decl. Ex. 6 at ¶¶ 10-15.  This includes

26  alleged stories about Beckham and a lingerie saleswoman, Beckham waiting in the

27  lobby of a hotel for some unknown woman, and Beckham and the mother of one of

28  the students in his sons' school.  *Id.*  Baer and Lee cite the existence of these

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

15

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

unsubstantiated rumors as reason to believe Nici's story, even though even *In Touch* deemed these stories unfit to print. But Bauer's reliance on these false rumors to demonstrate its absence of malice just proves the opposite: Bauer was hell-bent to publish rumors of infidelity, and when Nici came forward, Bauer was desperate to believe her and willfully blind to the many red flags her story raised.

### (f)    Nici and Davis' Exclusive Source Agreements with Bauer

Baer and Lee cite the exclusive Source Agreements that Nici and her madam, Kristin Davis, signed as further proof that they believed Nici's story. Kelly Decl. Ex. 5 at ¶¶ 41-42; Kelly Decl. Ex. 6 at ¶ 25. Baer briefly mentions that at first only Nici signed the Source Agreement, and later it was decided that Bauer would pay Davis directly, and so Davis signed the Agreement. Neither Baer nor Lee discusses the details or reasons for this change, including why Bauer decided to pay Kristin Davis – who Bauer holds out as an independent corroborating source (Kelly Decl. Ex. 3 at 5, 20; Ex. 5 at ¶¶ 21, 31; and Ex. 6 at ¶ 24) – instead of Nici.

### (g)    *In Touch*'s "Research" To Confirm The Nici Story

Finally, in an apparent effort to show that it adequately researched Nici's allegations, the Bauer Defendants submit the Declaration of Annette Deinzer, the Research Director for In Touch Weekly. Kelly Decl. Ex. 18. From Deinzer's declaration it appears that the entirety of her research consisted of reading internet articles (presumably innuendo in other tabloids) about Beckham for a couple of hours. *Id*. at ¶ 3 ("I read many articles . . . I also read many articles"); *id*. at ¶ 4 ("I spent several hours reading articles."). Instead of keeping records of her research, though, Deinzer states that she simply "noted their content for the purpose of corroboration" and she provides a "small sample" of the articles In Touch Weekly used in its research for the Article. Kelly Decl. Ex. 19. Bauer provides copies of these articles, which Bauer admits were printed *after* Beckham filed suit (Deinzer Decl. at ¶ 4), but has withheld Deinzer's contemporaneous notes. Bauer also

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

16

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1  withheld documents that it specifically relies on to support its anti-SLAPP Motion,

2  most notably the documents purporting to confirm Beckham's whereabouts during

3  the time periods in questions.  See Kelly Decl. Ex. 5 at ¶¶ 25-29; Ex. 6 at ¶ 22.

4       Bauer does not offer any information or evidence that would even suggest

5  that sought or received any corroborating documents from Nici, Davis, or the

6  alleged other prostitute, which would prove or disprove the veracity of the Article.

7  Beckham expects to confirm that Bauer failed to request any corroborating

8  documents because it knew or expected that such documents would not exist.

9  **B.**    **ARGUMENT**

10      **1.**    **A Party Opposing An Anti-SLAPP Motion In Federal Court**

11             **Is Entitled To Discovery Essential To Its Opposition**

12      The Ninth Circuit and District Courts therein treat an anti-SLAPP motion that

13  raises factual issues as an early summary judgment motion under Federal Rule of

14  Civil Procedure 56.  Rule 56(d)[3] therefore applies, which requires that a nonmoving

15  party be allowed to conduct discovery "essential to justify" its opposition.

16  *Metabolife Int'l*, 264 F.3d at 846 ("Although Rule 56(f) facially gives judges the

17  discretion to disallow discovery when the non-moving party cannot submit evidence

18  supporting its opposition, the Supreme Court has restated the rule as requiring,

19  rather than merely permitting, discovery 'where the nonmoving party has not had

20  the opportunity to discover information that is essential to its opposition.'" (quoting

21  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202

22  (1986)); *In re Bah*, 321 B.R. 41, 45 (B.A.P. 9th Cir. 2005) ("[I]f a defendant makes

23

24      [3] Following the 2010 amendments to the Federal Rules of Civil Procedure,

25  what used to be Federal Rule of Civil Procedure 56(f) is now Federal Rule of Civil
   Procedure 56(d).  Federal Rule of Civil Procedure 56 Advisory Committee Notes

26  2010 ("Subsection (d) carries forward without substantial change the provisions of
   former subdivision (f).  A party who seeks relief under subdivision (d) may seek an

27  order deferring the time to respond to the summary-judgment motion.")

28

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1   a motion to strike under the anti-SLAPP statute based on a failure of proof or

2   evidence, the motion must be treated as though it is a motion for summary judgment

3   and discovery must be developed sufficiently to permit summary judgment under

4   Rule 56"); *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D.

5   Cal. 1999) ("[I]f a defendant desires to make a special motion to strike based on the

6   plaintiff's lack of evidence, the defendant may not do so until discovery has been

7   developed sufficiently to permit summary judgment under Rule 56."); *Flores v.*

8   *Emerich & Fike*, 2010 WL 2640625, at *2 (9th Cir. June 29, 2010) (unpublished)

9   (approving of *Metabolife*); *Aeroplate Corp. v. Arch Ins. Co.*, 2006 WL 3257487 at

10   *9 (E.D. Cal. Nov. 9, 2006) ("The court concludes that where, as here, the

11   nonmoving party has not had . . . any opportunity for discovery, and where there

12   has been a motion for leave to conduct discovery, the court is without discretion to

13   deny the requested opportunity.").[4]

---

15      [4] Under California's anti-SLAPP statute, Cal. Code Civ. Proc. §425.16(g), the
16   filing of an anti-SLAPP motion automatically stays all discovery proceedings unless
a party files a noticed motion and shows "good cause" for allowing specified
17   discovery. The courts in the 9th Circuit cited above have held that the automatic
18   discovery stay pursuant to §425.16(g) conflicts with Rule 56(f), and therefore Rule
56(f) must apply. *See, e.g., Rogers*, 57 F. Supp. 2d at 982 ("Because the discovery-
19   limiting aspects of §425.16(f) and (g) collide with the discovery-allowing aspects of
20   Rule 56, these aspects of subsections (f) and (g) cannot apply in federal court.");
*Metabolife Int'l*, 264 F.3d at 846 (agreeing with *Rogers*). Yet this exercise is mostly
21   academic, as the "good cause" standard under §425.16(g) is very similar to the Rule
22   56(f) standard. Courts have generally held that a plaintiff satisfies the "good cause"
standard under § 425.16(g) "[i]f the plaintiff makes a timely and proper showing in
23   response to the motion to strike, that a defendant or witness possesses evidence
24   needed by plaintiff to establish a prima facie case." *Lafayette Morehouse*, 37 Cal.
App. 4th at 868 (libel action). In these situations, "the plaintiff must be given the
25   reasonable opportunity to obtain that evidence through discovery before the motion
26   to strike is adjudicated." *Id.*; see *also New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d
1090, 1101 (C.D. Cal. 2004) ("This Court sees very little difference in the principles
27   enunciated in the text of the two rules, or in their interpretation.").

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

18

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

In light of this standard, courts routinely grant plaintiffs' motions to conduct discovery in order to oppose anti-SLAPP motions, particularly where the discovery sought is possessed by the defendants or relates to falsity or actual malice. *See, e.g.*, *Metabolife Int'l*, 264 F.3d at 846-47 (ordering discovery of defendants to oppose anti-SLAPP motion where information was in defendants' exclusive control and "may be highly probative" to showing falsity); *Chevron Corp. v. Bonifaz*, 2010 WL 1948681 (N.D. Cal. May 12, 2010) (granting Plaintiff discovery on defendant's knowledge); *Aeroplate Corp. v. Arch Ins. Co.*, 2006 WL 3257487, at *10 (E.D. Cal. Nov. 9, 2006) (granting motion to conduct discovery and staying disposition on anti-SLAPP motion until discovery is completed); *Rogers*, 57 F. Supp. 2d at 985 (granting plaintiff's ex parte application to continue hearing on anti-SLAPP motion so that she can conduct discovery); *Henry v. Bank of America Corp.*, 2010 WL 431969, at *1 (N.D. Cal. Feb. 2, 2010) (noting that the Court had previously denied Defendant's anti-SLAPP motion "to permit Plaintiff some time to conduct discovery"); *Taheri Law Group v. Evans*, 160 Cal. App. 4th 482, 492 (2008) (noting that the trial court "previously granted a motion . . . to lift the automatic discovery stay"); *Ryan v. Editions Limited West, Inc.*, 2006 WL 3707894 (N.D. Cal. Dec. 14, 2006) ("The lack of evidence at this early stage in the litigation means that more discovery is necessary and the special motion to strike must be denied."); *Hirel Connectors, Inc. v. U.S.*, 2004 WL 5639770, at *13 (C.D. Cal. Jan. 23, 2004) (noting that the court granted plaintiff's *ex parte* application to, among other things, order discovery relating to anti-SLAPP issues); *Ryan v. Editions Ltd. West, Inc.*, 2007 WL 2348724, at *1 (N.D. Cal. Aug. 14, 2007) (noting that the court denied plaintiff and counter-defendant's anti-SLAPP motion, "finding that [counterclaimant] was entitled to take discovery before the claim could be dismissed").

To meet the Rule 56(d) standard, the party requesting discovery generally must show "(1) it has set forth in affidavit form the specific facts it hopes to elicit

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

19

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Family Home & Finance Center, Inc. v. Federal Home Loan Mortgage Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). The specificity required under Rule 56(d), however, is lessened when, as in the present litigation, no discovery has taken place. In such circumstances, "the party making a Rule 56(f) motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid." *Burlington Northern Santa Fe R. Co. v. Assiniboine And Sioux Tribes of the Fort Peck Reservation*, 323 F.3d 767, 774. In addition to being discussed below, the specific facts that Beckham expects to discover, the existence of such facts, and the reason such facts are essential to opposing the anti-SLAPP motion are set forth in the Declaration of Philip M. Kelly.

## 2. <u>Beckham Is Entitled To Conduct Discovery Into Bauer's Actual Malice</u>

Good cause exists for Beckham to seek discovery concerning Bauer's actual malice.[5] To meet his burden of showing actual malice in opposing the Anti-SLAPP Motion, Beckham must demonstrate a prima facie case that Nici's statements are false and that the Bauer defendants acted with actual malice in publishing them.

---

[5] The requested discovery should take place on a schedule that allows Beckham to conduct discovery before he files his opposition to Bauer's anti-SLAPP motion. While the parties had agreed to a stipulated briefing schedule for both this motion and for Bauer's anti-SLAPP motion that would have allowed for any discovery to be completed in advance of the due date of Beckham's opposition, this Court did not find good cause for the stipulation. Based on the current schedule, Bauer's anti-SLAPP motion will be heard on February 7, and Beckham's opposition is due on January 14. Beckham intends to move *ex parte* to shorten the timeframe for the hearing on this motion or, in the alternative, to continue the hearing date and associated briefing schedule for Bauer's anti-SLAPP motion so that this Court can rule on Beckham's motion, and any discovery can be completed, in advance of the due date for Beckham's opposition to Bauer's anti-SLAPP motion.

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

20

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1   *See, e.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 84 S.Ct. 710, 11

2   L.Ed.2d 686 (1964); *Christian Research Institute v. Alnor*, 148 Cal. App. 4th 71, 80-

3   81 (2007). A defendant publishes with actual malice when it has knowledge that the

4   statement was false or acts with reckless disregard as to whether it was false.

5   *Sullivan*, 376 U.S. at 279-80; *Alnor*, 148 Cal. App. 4th at 84 (defendant acts with

6   actual malice if she knew that her statement was false or "subjectively entertained

7   serious doubt [her] statement was truthful."). This is a subjective test, "under which

8   the defendant's actual belief concerning the truthfulness of the publication is the

9   crucial issue." *Readers Digest Association v. Superior Court*, 37 Cal. 3d 244, 256

10  (1984). The ultimate issue is "the good faith of the publisher." *Id.*

11      Critically, a plaintiff can prove actual malice by circumstantial evidence.

12  *Alnor*, 148 Cal. App. 4th at 84 ("A defamation plaintiff may rely on inferences

13  drawn from circumstantial evidence to prove actual malice."); *Harte-Hanks*

14  *Comm'ns, Inc. v. Connaughton*, 491 U.S. 657, 668, 109 S.Ct. 2678, 105 L.Ed.2d

15  562 (1989) (affirming finding of actual malice supported by circumstantial evidence

16  of profit motive); *Goldwater v. Ginzburg*, 414 F.2d 324, 342 (2d Cir. 1969) ("There

17  is no doubt that evidence of . . . motive and of intent may be adduced for the

18  purpose of establishing, by cumulation and by appropriate inferences, the fact of a

19  defendant's recklessness or of his knowledge of falsity.").

20      The subjective standard of actual malice, along with the ability to prove it by

21  circumstantial evidence, is precisely why an anti-SLAPP motion based on an alleged

22  lack of actual malice generally requires discovery when the Rule 56(d) standard is

23  applied: the issue concerns the defendant's mental state, and facts concerning that

24  mental state tend to be exclusively within the possession of the defendant. As the

25  court noted in *Lafayette Morehouse*, an ample opportunity to conduct discovery is

26  "of prime import in a libel suit against a media defendant who will generally be the

27  principal, if not the only, source of evidence concerning such matters as whether

28  that defendant knew the statement published was false, or published the statement in

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

21

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

reckless disregard of whether the matter was false and defamatory, or acted negligently in failing to learn whether the matter published was false and defamatory."  37 Cal. App. 4th at 868.  Federal courts agree with the need of the nonmoving party to conduct discovery into actual malice:

> Because of the requirement that the nonmoving party be permitted to conduct necessary discovery, summary judgment is often considered inappropriate early in a case. In addition, federal courts take into account difficulties that the nonmoving party may have in developing the evidence he requires to defend the motion. For example, if the information needed to defend the motion is in the moving party's control, *as is generally the case when a plaintiff must prove malice*, 'most courts ... are lenient in granting further time for discovery ....'  *This tendency toward leniency is strengthened when the summary judgment motion raises latent fact issues such as motive, intent, knowledge, or credibility and the moving party has exclusive control over those facts*.

*Rogers*, 57 F. Supp. 2d at 981 (emphasis added) (citations omitted); *Costlow v. U.S.*, 552 F.2d 560, 564 (3rd Cir. 1977) ("[W]here the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course."); *see also Metabolife*, 264 F.2d 832, 848 ("the issue of 'actual malice'. . . cannot be property disposed of by a motion to dismiss in this case, where there has been no discovery."); *Hutchinson v. Proxmire*, 443 U.S. 111, 120 n.9, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979) ("The proof of 'actual malice' calls a defendant's state of mind into question, and does not readily lend itself to summary disposition." (citation omitted)).

Significantly, a defendant cannot defeat a plaintiff's claim for actual malice simply by asserting that it fully believed the story it published.  The Supreme Court has cautioned that:

> [t]he defendant in a defamation action brought by a public official cannot, however, automatically insure a favorable verdict by testifying that he published with a belief that the statements were

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

22

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

true. The finder of fact must determine whether the publication was indeed made in good faith. Professions of good faith will be unlikely to be persuasive . . . when the publisher's allegations are so inherently improbable that only a reckless man would have put them in circulation. Likewise, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports.

*St. Amant v. Thompson*, 390 U.S. 727, 732, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Beckham is thus entitled to conduct discovery to demonstrate that Bauer did in fact ignore or recklessly disregard the falsity of Nici's story.

(a) **Beckham Is Entitled To Documents And Deposition Testimony From Nici**

Discovery from Nici is clearly "essential to justify" Beckham's opposition to Bauer's anti-SLAPP motion under Rule 56(d). Kelly Decl., ¶¶ 4-9. Even though Bauer is assuming for purposes of this motion that Nici's story is false and defamatory, what Nici told Bauer, and the conversations and documents sought by Bauer and shared between them, are crucial in determining whether Bauer overlooked significant red flags that would have indicated that her story was entirely fabricated. *See Alnor*, 148 Cal. App. 4th at 84 ("A defamation plaintiff may rely on inferences drawn from circumstantial evidence to prove actual malice.") Beckham seeks the following discovery from Nici:

- **Deposition of Irma Nici.** As detailed above, taking Nici's deposition is unquestionably essential to showing Bauer's actual malice. Bauer interviewed Nici twice, but, as discussed above, has provided insufficient and incomplete details about what Nici said during those interviews. Beckham is entitled to Nici's testimony regarding the full details of both interviews, as such testimony will is expected to reveal that Nici included certain details in her story that are clearly false or easily proven false, and would thus show that Bauer ignored or recklessly disregarded obviously false information.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

23

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

Kelly Decl. ¶ 7.  Nici's testimony is also essential to understanding why Davis also signed the Exclusive Source Agreement and why Bauer paid Davis directly instead of paying Nici directly.  Such discovery would allow Beckham to show by direct or circumstantial evidence that Bauer recklessly ignored the falsity of Nici's story or knew that it was false.  Kelly Decl. ¶ 7.

- **Documents from Nici Allegedly Proving Her Allegations.**  Documents that Bauer requested or received from Nici that purport to corroborate her story, including, for instance, phone records, credit card receipts, journal entries, and passport records, are likewise essential to Beckham's opposition to Bauer's anti-SLAPP motion.  Those documents have not been submitted in support of the anti-SLAPP motion and Beckham is entitled to any such documents and to discover whether Bauer ever sought or received them.  The fact that Bauer did not request such documents other than phone records, or that such documents were not provided to Bauer, is circumstantial evidence that Bauer either recklessly disregarded the falsity of Nici's story or knew that it was false.  Kelly Decl. ¶ 8.

- **Documents concerning Nici's and Davis' signing of the Exclusive Source Agreement.**  These documents will help confirm whether the changes to the payment arrangements between Baer, Nici, and Davis caused Bauer to be concerned over the truth of Nici's story.  Davis appears to have acted as a gatekeeper during Bauer's reporting by initially shopping Nici's story to Bauer, dictating the terms of Nici's interview, brokering access to the alleged second prostitute (Bauer's other "independent" source), and handling the money Bauer paid for the story.   The fact that Bauer paid up to $50,000 to someone it holds out as an independent corroborating source, not to mention an admitted "madam" and convicted criminal, for access to Nici and her story raises deep concerns regarding the truthfulness of the allegations and Bauer's

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

24

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1  intent, and Beckham is entitled to discovery regarding this unusual

2  relationship and the concerns it raised.  Kelly Decl. ¶ 9.

3  A deposition notice and a Request for Production of documents on the foregoing

4  topics is attached the Kelly Declaration as Exhibits A and B.

**(b)    Beckham Is Entitled To Documents And Deposition Discovery From The Bauer Defendants**

7  With its anti-SLAPP motion, Bauer put the issue of its actual malice at the

8  forefront of this litigation.  Bauer assumes that Nici's story is false, but argues that

9  Beckham cannot prove actual malice.  There is no question that the full record of

10  Bauer's investigation and research of Nici's claims is "essential" to Beckham's

11  opposition, which, like Bauer's anti-SLAPP motion, will heavily focus on Bauer's

12  actual malice.  *See Goldwater*, 414 F.2d at 342 ("There is no doubt that evidence of

13  . . . motive and of intent may be adduced for the purpose of establishing, by

14  cumulation and by appropriate inferences, the fact of a defendant's recklessness or

15  of his knowledge of falsity."); Kelly Decl., ¶¶ 10-22.  Moreover, all of this

16  discovery is in Bauer's exclusive possession, making Beckham's request for such

17  discovery even more appropriate.  *Costlow*, 552 F.2d at 564 ("[W]here the facts are

18  in possession of the moving party a continuance of a motion for summary judgment

19  for purposes of discovery should be granted almost as a matter of course.")

20  • **Deposition of Deborah Baer.**  Baer's deposition is essential to Beckham's

21  opposition, as she was a central figure in the interviewing, research, and

22  publication of the article.  Baer is who Kristin Davis first talked to about Nici

23  and Beckham, and her testimony will reveal whether she encouraged Davis to

24  provide her a story, even if false, about Beckham and one of her prostitutes.

25  Kelly Decl. ¶ 12.  Baer also interviewed Nici twice, and her testimony will

26  therefore provide the missing details regarding both interviews, which are

27  likely to reveal that Bauer knew the falsity of Nici's story or had significant

28  doubts about the veracity of her story.  Baer will know whether she asked for

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

25

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

any corroborating evidence other than phone records, such as hotel records, Nici's passport showing her whereabouts during the months in question, and the name of the individual who purportedly connected Nici and Beckham. *Id.* Baer also allegedly confirmed Nici's story by supposedly speaking to the "other prostitute." Beckham is entitled to discover what was said between Baer and the "other prostitute," what Baer knows that might shed light on the identity of this other prostitute so that her account of the conversations with Bauer representatives can be explored, and whether there was anything said during Baer's conversation with this other prostitute that revealed the falsity of Nici's story. *Id.* at ¶ 13. Baer also discussed Nici's story with Michelle Lee and other Bauer employees by email and by phone, and Beckham is entitled to discovery on whether any of these discussions and conversations concerned the veracity of Nici's claims. *Id.* Finally, Baer seems to have also been privy to the details and reasons for why Davis signed the Exclusive Source Agreement, and her testimony will elicit whether this unusual arrangement raised concerns at *In Touch* over the veracity of Nici's story. *Id.* Discovery of all these facts will allow Beckham to show by direct or circumstantial evidence that Bauer acted with actual malice because it knew Nici's story was false or recklessly disregarded its falsity. *Id.* at ¶¶ 11, 21-22.

- **Deposition of Michelle Lee.** As Editor in Chief of *In Touch Weekly*, Lee "oversaw the reporting and editing" of the Article. Kelly Decl. Ex. 6 at ¶ 2. She had both email and phone conversations with Baer concerning Nici's story, and likely had conversations with other *In Touch* employees on the same subject. Lee also appears to have editorial control over the magazine, and thus makes final decisions about whether certain stories are fit for publication. Beckham is entitled to question Lee about Nici's story to determine if she had doubts about its truth, and he is also entitled to question Lee about Bauer's standard procedures for determining whether to publish

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

26

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

allegations concerning celebrity infidelity, and how those procedures were followed, or not followed, in the Beckham stories, the Jesse James story, and the John Gosselin story. Kelly Decl. ¶ 14, Ex. 11. The contrast between the research and investigation Bauer conducted for the Jesse James and John Gosselin stories, on the one hand, and the Article, on the other, will demonstrate that Bauer knowingly cut corners in investigating the Article before publication. Kelly Decl. ¶ 20-21. Likewise, Beckham is entitled to question Lee about Bauer's efforts to elicit Beckham's comment on the Article prior to publication. As discussed above, Bauer ambushed Beckham on a Saturday with Nici's allegations and a complete draft of the Article, and gave Beckham until Monday morning at 9 a.m. New York time to respond. This is a clear instance of Bauer purposefully avoiding the truth, which can support a finding of actual malice. *See Harte-Hanks Communications*, 491 U.S. at 692. This discovery is thus essential to Beckham's opposition. Kelly Decl. ¶¶ 11, 14.

- **Deposition of Annette Deinzer.** Bauer has provided insufficient evidence regarding the research it did to confirm Nici's story. As *In Touch Weekly*'s Research Director, Deinzer allegedly conducted research and likely oversaw other people's research as well. Beckham is entitled to know the full extent of the research conducted by the Bauer Defendants and Deinzer to try to confirm Nici's story. Such discovery may reveal that Deinzer or others at *In Touch Weekly* learned through such research that the allegations against Beckham were untrue or highly suspicious, and thus confirm that Bauer acted with actual malice. Kelly Decl. ¶ 15.

- **Documents concerning Bauer's communications with Kristin Davis.** Just like Baer's deposition testimony will uncover facts about these communications, such as whether Baer and Davis plotted to concoct the story about Beckham's infidelity, any emails or other documents among Bauer

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

27

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

employees will do the same, and are likewise essential to Beckham demonstrating Bauer's actual malice.  Kelly Decl. ¶ 16.

- **Documents concerning Baer's interviews of, and communications with, Nici.**  Nici's statements at these interviews and in any other communications are crucial to knowing whether Nici said anything that was plainly false or easily provable as false.  Just as Nici and Baer's testimony on these interviews is critical, so too are documents discussing the content of these communications, as Nici's statements or actions regarding her story are likely to demonstrate that Bauer knew her story was false or recklessly disregarded its falsity.  Kelly Decl. ¶ 17.

- **Documents concerning Bauer's discussion with the "other prostitute."**  Bauer and the "other prostitute" are the only ones with direct knowledge about these communications.  Documents concerning any communications between Bauer and the "other prostitute" will help determine whether the "other prostitute" said anything to make Baer doubt the truth of Nici's story, and thus demonstrate that Bauer acted with actual malice.  Kelly Decl. ¶ 18.

- **Documents concerning the veracity of Nici's story, and Bauer's belief in and/or research into the veracity of Nici's story.**  Any and all documents on this topic are directly relevant to Bauer's actual malice.  These documents could show that Bauer had serious concerns about the truth of Nici's story before publication or that Bauer intentionally failed to seek corroborating evidence as it knew the lack of evidence would reveal the falsity of the allegations.  Kelly Decl. ¶ 19.

- **Documents concerning Bauer's standard procedures for investigating allegations of celebrity affairs.**  Documents on this topic are relevant to whether Bauer failed to follow its standard practices in investigating and corroborating Nici's story because it was concerned about what it might discover.  Kelly Decl. ¶ 20.  A defendant's purposeful avoidance of the truth

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

28

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1  can support a finding of actual malice, and thus this discovery is essential to

2  Beckham's opposition. *Harte-Hanks Communications*, 491 U.S. at 692.

3  Deposition notices and Requests for production of documents on the foregoing

4  topics is attached the Kelly Declaration as Exhibits C, D, E and F.

5  **V.  BAUER DEFENDANTS' CONTENTIONS AND POINTS AND**

6  **AUTHORITIES**

7  **A.  Statement of Facts**

8  The facts of this case have been laid out by the Bauer Defendants in their

9  Special Motion to Strike, filed on November 18, 2010 (attached to this stipulation as

10  Exhibit 3 to the Kelly Declaration), but they are summarized here.

11  **1.  David Beckham's History of Marital Infidelity**

12  As Bauer explained in its anti-SLAPP motion, and as Beckham apparently

13  does not contest, Beckham's marriage to his wife Victoria has received a great deal

14  of press attention, including widely reported stories about multiple affairs that

15  Beckham has had while married.  In fact, Beckham's reputation for marital infidelity

16  is so well established that *The Times of London* referred to it as his "propensity to

17  'play away.'"  Kelly Decl. Ex. 19.  Beckham does not dispute this reputation in the

18  present motion.

19  Bauer's knowledge of Beckham's reputation as a serial philanderer

20  necessarily informed its belief in Nici's story.  Bauer's editors were aware, for

21  example, that in 2004, it was reported worldwide that Rebecca Loos, Beckham's

22  former personal assistant, admitted to having an affair with Beckham.  The story of

23  the Loos "dalliance" and her contention that she became Beckham's "alternative

24  wife" is repeated in the Article at issue in this action, but notably Beckham does *not*

25  include those statements in his complaint.  Beckham's alleged affairs with other

26  women, including "high class prostitute" Sarah Marbeck and Danielle Heath (who

27  was mentioned in the Article as well, again without objection in Beckham's

28  complaint) also became the subject of great media attention.  Kelly Decl. Ex. 5 at

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

29

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

¶¶ 5-9.  Beckham took no legal action to challenge any of these prior reports about his affairs, and even in the current action appears to dispute none of this.

### 2.    *In Touch Weekly*'s Leads About More Recent Affairs

In the past year, *In Touch Weekly* began to receive new leads from a series of independent sources about several of Beckham's additional extramarital affairs. Naturally, given Beckham's history (a section of his Wikipedia page is devoted to his affairs), the editors of *In Touch Weekly* found these stories credible, and in keeping with a larger pattern.  Three separate sources told *In Touch Weekly* about: (1) a Los Angeles lingerie store employee who told friends about an affair with Beckham; (2) Beckham's strange behavior in hotel lobbies with women who are not his wife; and (3) rumors in Beckham's sons' school about his affair with the mother of one of the other students.  Kelly Decl. Ex. 5 at ¶¶ 10-14.  Bauer did not publish any of these alleged affairs in the Article at issue, or elsewhere, but, again, the information necessarily informed the magazine's belief in Nici's story.  Indeed, since Beckham filed this lawsuit, the story of his alleged affair with his sons' schoolmate's mother, Shery Shabani, has broken in other news outlets, and court documents from her divorce, including the accusation of this affair, have been made public.  Kelly Decl. Ex. 5 at Ex. C.  Beckham does not dispute the fact of Bauer's reporting and does not in his papers or declaration deny that he had an affair with Ms. Shabani or the lingerie saleswoman.

### 3.    The Reporting for the Article at Issue

The Article at issue described how Irma Nici, a former prostitute, was hired by David Beckham in New York City in August 2007, spent the night with him, and the next month had a second encounter with him in London.  Kelly Decl. Ex. 5 at Ex. H.  The Article was based on Bauer's three-hour on-the-record interview with Nici, who provided vivid details of her encounter.  Both the audio recording of that

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

30

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

interview and a transcript of the recording have been provided to Beckham.[6]

The magazine's reporter found Nici to be credible and believed her "1000 percent," as evidenced by her contemporaneous email. Kelly Decl. Ex. 5 at ¶ 24; Ex. E. Bauer has provided to Beckham a sworn declaration from the reporter Deborah Baer, explaining in detail why she found Nici credible and why she believed Nici's story of an affair with Beckham. *In Touch Weekly* was able to independently corroborate a number of details Nici provided – documenting, for example, that Beckham was in New York and London at the times of the encounters; that he was without his wife at least in part on these trips; and that his trip to London was in connection with his father's heart attack. Kelly Decl. Ex. 5 at ¶¶ 25-29; Kelly Decl. Ex. 6 at ¶ 22. Bauer has provided as exhibits to its anti-SLAPP motion news articles that helped it corroborate these statements. Bauer is not aware of any previously published reports that *contradict* Nici's story, and Beckham has not provided any or even claimed their existence.

Nici told Bauer that a second woman joined her and Beckham for a "threesome" when she was with him in New York and that she obtained her services through Kristin Davis, the well-known Manhattan madam who went to jail in the wake of the Eliot Spitzer prostitution scandal (and later ran for governor). Thus, to further corroborate Nici's story, Bauer interviewed both the other woman involved in the threesome and the madam who arranged her presence. Davis and the other prostitute (who wanted to remain confidential) confirmed Nici's depiction of the events and Beckham's use of their services. Nici and Davis went further and also signed Bauer's source agreements, expressly confirming in writing that the

---

[6] Bauer interviewed Nici a second time before the Article was published. This interview was concerned exclusively with two other clients of Nici – not David Beckham. Kelly Decl. Ex. 5 at ¶¶ 33-34. Accordingly, Bauer did not include this transcript with its anti-SLAPP motion because it was not relevant. In his demand for a transcript of the second interview, Beckham ignores this critical fact.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1   information they provided was truthful and warranting that it would not violate

2   another's rights.  In the end, "everything fit."  Kelly Decl. Ex. 6 at ¶ 22.  Bauer had

3   three first-hand sources; their information was consistent; and the story of yet

4   another Beckham affair was in keeping with his well-established reputation for

5   infidelity.  Bauer had absolute faith in the accuracy of the Article.

6          **4.**        **Bauer Obtains and Publishes Beckham's Denial**

7        Before publishing the story, Bauer also reached out to Beckham's

8   representatives for a comment.  Providing two days for comment, Bauer gave

9   Beckham's representative all of the salient details of the story and even read the

10   entire draft to him.  In those two days, Beckham's representatives did not point out a

11   single fact to Bauer that would contradict the Article; nor did they request additional

12   time to obtain such facts.  Instead, Beckham's representative and lawyers sent only

13   blanket denials.  Such conclusory denials are commonplace and hardly cause doubts

14   in the minds of editors.  Over and over, famous men (like Bill Clinton, John

15   Edwards and countless others) routinely (and vehemently) deny affairs, only to have

16   later events establish their truth.  Kelly Decl. Ex. 5 at ¶¶ 35-40; Ex. 6 at ¶¶ 26-32.

17        *In Touch Weekly* prominently featured Beckham's denial in the opening

18   passages of the Article, so that its readers could understand that Beckham disputed

19   the story.  Tellingly, not only did Beckham fail to provide any facts to discredit

20   Nici's story prior to publication, but he still has not provided such information in the

21   more than three months since publication.  With Nici claiming to be able to account

22   for a 12-hour period in Beckham's life, if her story is false then Beckham (who

23   bears the burden of proving falsity in this action) should easily be able to provide

24   *some* piece of evidence to establish his whereabouts.  But just as he issued only a

25   conclusory denial in September, he continues to rely on a conclusory denial now.

26   Kelly Decl. Ex. 7.

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

### 5. The Bauer Defendants' Anti-SLAPP Motion

After holding an initial conference as required by the Court's rules on November 11, 2010, the Bauer Defendants timely filed an anti-SLAPP motion on November 18, 2010. As spelled out in more detail in the brief in support of that motion, Bauer seeks to avail itself of the statutory right to have speech-chilling lawsuits dismissed at an early stage. In particular, Bauer's motion establishes that Beckham cannot possibly prevail on his libel suit because he cannot sustain his burden of showing that the Bauer Defendants published the Article actually aware that Nici's story was false or that they actually had serious doubts about the accuracy of the story – *i.e.*, with actual malice. Bauer does not *assume* that Beckham can establish the Article was false, as Beckham over and over misleadingly asserts. *See supra* at pp. 1, 25. To the contrary, Bauer's editors continue to believe the story is true in no small part because Beckham has failed to produce any evidence to the contrary. Instead, Bauer's Motion to Strike only states that *even if* Beckham could establish falsity, he *still* must establish Bauer knew its story was false at the time it published. This Beckham cannot possibly do.

In connection with its anti-SLAPP motion, Bauer provided Beckham and the Court with the following materials:

- A certified transcript of Bauer's interview with Nici about David Beckham. Kelly Decl. Ex. 4. (In response to a request from Beckham's attorney, Bauer has also provided Beckham with the audio recording of this interview, as the best evidence of what was said during the interview.) This interview shows exactly what Nici told Bauer, where Bauer got each of the challenged statements published in the Article, and the basis for Bauer's assessment that Nici was a credible source.

- Articles about Beckham's past marital infidelities. Kelly Decl. Ex. 5 at Ex. A. Beckham does not dispute the fact that his prior infidelities were the subject of widespread worldwide press coverage. As Bauer's fact-checker

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

33

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

attests, the articles Bauer provided with its motion are by no means the entire universe of press coverage of Beckham's infidelities.  None of the articles Bauer provided contradict the allegations at issue, and Bauer is not aware of any such articles.  If previously published news articles exist that undermine the credibility of Nici's story, such published news is equally available to plaintiff and he is certainly free to provide anything he deems relevant in opposition to Bauer's motion.

- An email from Deborah Baer, the editor who conducted the interview with Nici, outlining the interview and stating that Baer believed Nici "1000 percent."  Kelly Decl. Ex. 5 at Ex. E.  This email shows Baer's subjective state of mind after conducting the interview, and is evidence that she did, in fact, believe Nici's story.

- Articles confirming facts provided by Nici, including Beckham's whereabouts on various dates.  Kelly Decl. Ex. 18 at Ex. K.  Again, Beckham does not dispute the truth of any of these articles, nor does he dispute that they corroborate Nici's story.  Any number of other articles or other published information also address Beckham's whereabouts, but such information is likewise equally available to Beckham.  Bauer is not aware of any published information that contradicts Nici's story.  If such articles do exist, Beckham may provide them to the Court in opposition to Bauer's motion.

- The contracts executed by Nici and Davis verifying the truth of the information they provided to Bauer and expressly warranting that publication would not violate the rights of any person.  Kelly Decl. Ex. 5 at Ex. G.

- Sworn declarations from the editor who wrote the Article, the editor-in-chief who oversaw and approved the Article, and the researcher who verified various statements in the Article.  Kelly Decl. Exs. 5, 6, 18.  The declarations from the writer and editor of the article unequivocally state that, at every point along the process of writing and publishing the Article, Bauer believed

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

34

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1    the Article to be true (and it still does).  The declaration from the researcher

2    unequivocally states that all of the research she conducted (only some of

3    which she saved) corroborated Nici's story.

4      As explained in Bauer's anti-SLAPP motion, this evidence is more than

5 sufficient to establish that Bauer did not publish the Article with actual malice, *i.e.*,

6 knowing it was false or with serious doubts as to its truth.

### 6.    <u>The Present Motion</u>

8      Beckham inexplicably waited four weeks after Bauer filed its Motion to

9 Strike to serve his half of this motion for discovery and appeared to intentionally

10 time the filing so that defendants would have to respond over the Christmas holiday

11 weekend This Court should not countenance such gamesmanship.[7]

12      By this motion, Beckham seeks four depositions and the production of "all

13 documents" on a vast array of topics.  Yet, in support of this request for sweeping

14 discovery, Beckham focuses on facts that are irrelevant to his demand for discovery

15

---

16     [7] Since the Rule 26(f) conference on November 11, 2010, Beckham has been

17 on notice that the Bauer Defendants would file a Special Motion to Strike and that they would not agree to any discovery in light of the anti-SLAPP statute's automatic

18 stay of discovery.  *See* McNamara Decl. Ex. B.  At the Rule 26(f) conference, it was agreed that Beckham would file his motion seeking discovery on December 3, 2010,

19 an agreement the parties confirmed in a November 29, 2010 stipulation.  With Bauer's agreement again, Beckham then moved that date to December 10.

20 However, following the Court's December 6, 2010 order rejecting Beckham's

21 proposed schedule since "no good cause [was] shown to provide so much delay," Beckham *still* failed to serve his motion and without any explanation waited until

22 Friday evening December 17.  Further, with his half of this stipulation, Beckham has

23 provided defendants for the first time with his specific discovery requests. (Beckham's specific discovery requests are annexed as Exhibits A through F of this

24 stipulation.)  And Beckham's delay tactics do not end there.  By this motion, he

25 signals that he will also move the Court *ex parte* to continue the hearing date of Bauer's anti-SLAPP motion.  *See supra* at p. 20, n.5.  Yet, Beckham's alternative

26 proposed relief of continuing the hearing date on Bauer's anti-SLAPP motion is

27 precisely the relief this Court already *denied* on December 6.

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  and instead address the substantive anti-SLAPP motion. By doing so, Beckham

2  indicates precisely that he does *not* require further discovery to provide his

3  opposition. For example, Beckham contends that Bauer "ambushed" Beckham by

4  only allowing him two days to comment and that it did so because Bauer "knew that

5  Beckham would disprove the allegations *if provided a reasonable opportunity to do*

6  *so*." *See supra* at p. 10 (emphasis added). Of course, now more than three months

7  have passed since that phone call, providing Beckham with ample opportunity to

8  "disprove the allegations"; but despite repeated requests to provide *any* information

9  that would establish the Article was false, Beckham has still failed to do so.

10  However, from a discovery standpoint, if Beckham believes these facts support a

11  finding of actual malice – and the case law could not be more clear that even a

12  failure to seek comment from a subject is not grounds for showing actual malice[8] –

13  he already has all the evidence he needs on this point. There is no dispute that

14  Bauer contacted Beckham's representatives on Saturday, he provided his conclusory

15  denial on Monday, and Bauer prominently included his denial in the Article.

16      In a similar vein, Beckham engages in an extended discussion concerning his

17  claim that Nici "tried to sell her story to other tabloid publications." *See supra* at p.

18  10. This has no relevance to any discovery need and Beckham does not argue that it

19  does. Instead, Beckham focuses on a *News of the World* story that he implies

20  rejected Nici's story <u>before</u> *In Touch Weekly* accepted it, but in this entire discussion

21  fails to inform the Court that the *News of the World* article was published <u>after</u>

22  Bauer's article. Thus, Nici's story had *not* been rejected by any other publications

---

[8] *See*, *e.g.*, *Eastwood*, 123 F.3d at 1254 n.10 (even where publisher admits that it had phone numbers for Eastwood on file, there is "no requirement that the [publisher] make such a call."); *Secord v. Cockburn*, 747 F. Supp. 779, 789 (D.D.C. 1990) (plaintiff cannot rely on defendant's failure to consult with him prior to publication as proof of actual malice); *Davis v. Costa-Gavras,* 654 F. Supp. 653, 657 (S.D.N.Y. 1987) ("[P]laintiff cannot prove actual malice merely by asserting that a publisher failed to contact the subject of his work.").

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

36

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

when Bauer published it.  Reliance on events that occurred after publication are irrelevant for an actual malice analysis, which looks at the subjective state of mind of the publisher "at the time of publication."  *See*, *e.g.*, *Bose Corp. v. Consumers Union*, 466 U.S. 485, 512, 104 S.Ct. 1949, 1966 (1984); *Herbert v. Lando*, 781 F.2d 298, 305-06 (2d Cir. 1986) (it is "self-evident" that information acquired after publication is not relevant to the publisher's state of mind "at the time of publication").  Further, it is ironic that Beckham would impugn *In Touch Weekly*'s newsgathering and cast his lot with *The News of the World*, given that he has sued that tabloid for libel and has repeatedly dismissed the accuracy of its reporting:

- It was *The News of the World* that first reported in 2004 that Beckham had an affair with his personal assistant, Rebecca Loos, reportedly paying Loos 350,000 pounds for the story.  Kelly Decl. Ex. 19.  Beckham called the allegations "ludicrous," but as *The Times of London* reported, he "stopp[ed] short of a denial."  *Id.*  Despite England's plaintiff-friendly libel laws, Beckham never sued.

- It was *The News of the World* that next reported that Sarah Marbeck, a call girl, also had an affair with Beckham.  Beckham called that story "ludicrous" as well, but again did not sue.

- Finally, in 2005, Beckham sued *The News of the World* for libel when his nanny provided information to the paper questioning the strength of Beckham's marriage.

But even if information gleaned from articles published after the Article at issue were relevant to actual malice – which it is not – Beckham has the articles.  Thus, this evidence has nothing to do with his claim that he needs discovery before Bauer's anti-SLAPP motion can be heard.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

37

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1   Indeed, Beckham's scattershot attacks at *In Touch Weekly* in this stipulation

2   do not in any way support his application for discovery.[9]  Instead of random sniping

3   at *In Touch Weekly*, to obtain discovery Beckham is required to make a

4   particularized showing that each piece of discovery he seeks is essential to his case,

5   and he also must show that the evidence he seeks exists.  *See infra* at pp. 43-47.  As

6   Bauer explains in more detail herein, Beckham does not meet either prong of the

7   applicable standard.

8   **B.**   **Argument**

9   **1.**   **Section 425.16(g) and Fed. R. Civ. P. 56(d) Permit Discovery**

10   **Only if the Plaintiff Demonstrates Good Cause or That the**

11   **Evidence Sought Exists and is "Essential" to His Opposition**

12   The anti-SLAPP statute was enacted by the California Legislature to respond

13   to lawsuits, like this one, that threaten to chill the valid exercise of First Amendment

14   rights. It provides for the "fast and inexpensive unmasking and dismissal" of claims,

15   like Beckham's, that target expressive works about matters of public interest.

16   *Ludwig*, 37 Cal. App. 4th at 16.  *See also* Cal. Civ. Proc. Code § 425.16(e)(4).

17   Under Section 425.16, such claims must be stricken at the outset of a lawsuit unless

18   the plaintiff presents *admissible evidence* to establish that he has a "probability" of

19   prevailing on the merits.  Cal. Civ. Proc. Code § 425.16(b)(1).

20   The Ninth Circuit has found that the application of Section 425.16 confers

21   substantive rights, and, therefore, that its protections apply to cases, like this one,

22   that are removed to federal courts on diversity grounds.[10]  Indeed, in finding that

24   [9] Incredibly, Beckham cites to a gossip website's unscientific and unverified

25   analysis for its conclusion that Bauer has a "business model" of publishing false

stories about celebrities.  *See infra* at p. 1; Kelly Decl. Ex. 20.  Such evidence is not

26   relevant or admissible.

27   [10] *See*, *e.g.*, *Price v. Stossel*, 620 F.3d 992 (9th Cir. 2010) (Section 425.16

28   applies to defamation actions against media defendants in federal court); *see also*

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

38

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1   Section 425.16 applies in federal court, the Ninth Circuit recognized that it serves

2   the California Legislature's goal of guaranteeing "procedural and substantive

3   remedies for the prompt exposure, dismissal, and discouragement of SLAPP suits."

4   *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 971

5   (9th Cir. 1999) (ruling that Section 425.16 may be employed in federal court, and

6   citing to the broad construction mandated by C.C.P. § 425.16(a)).

7       Courts in this Circuit also regularly apply the statute's mandatory discovery

8   stay under Section 425.16(g). *See, e.g., Price*, 620 F.3d at 999 (citing approvingly

9   district court's denial of discovery, noting that "Under California law, discovery is

10  automatically stayed when a defendant files an anti-SLAPP motion, unless the

11  opposing party can demonstrate 'good cause.'"). As one state Court of Appeal

12  noted, in affirming the trial court's refusal to allow discovery, "to allow appellant

13  such extensive discovery would subvert the intent of the anti-SLAPP legislation."

14  *Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226, 247 (1999). *See also*

15  *Nicosia v. DeRooy*, 72 F. Supp. 2d 1093, 1111 (N.D.Cal. 1999) (denying plaintiff's

16  request for discovery where actual malice argument raised).

17      Accordingly, to lift the stay of discovery, a plaintiff must establish "good

18  cause under Section 425.16(g) or that discovery is "essential" under the equivalent

19  Federal Rule 56(d).[11] As Beckham acknowledges, in practice, no difference exists

20  between the requirements of Rule 56(d) and Section 425.16(g). *See supra* at p. 18

21  n.4; *see also New.Net, Inc. v. Lavasoft*, 356. F. Supp. 2d 1091, 1101 (C.D.Cal. 2004)

22  ("at least on its face, [Section 425.169g)] would seem to be entirely consistent with

23  (footnote continued)
    *United States ex. Rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d

24  963, 970-73 (9th Cir. 1999), *cert. denied*, 530 U.S. 1203 (2000); *Metabolife Int'l,*

25  *Inc. v. Wornick*, 264 F.3d 832, 839-40 (9th Cir. 2001); *eCash Technologies, Inc. v.*

26  *Guagliardo*, 127 F. Supp. 2d 1069, 1074-75 (C.D.Cal. 2000).

27      [11] Rule 56(d) is equivalent to the old Rule 56(f), which has now been

28  renumbered.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1   Rule 56(f)").  The Court in *New.Net* explained that "[b]oth statutes confer discretion

2   on the trial court to permit discovery in the face of a dispositive motion, in the

3   appropriate case and upon a proper showing."  *Id*.  Yet, a Rule 56(d) motion may be

4   granted only "where the nonmoving party has not had the opportunity to discovery

5   information that is ***essential to its opposition***."  *Id*. (quoting *Metabolife Int'l, Inc. v*

6   *Wornick,* 264 F3d 832 845 (9th Cir. 2001) (emphasis in original).  Thus, as plaintiff

7   concedes, a party seeking discovery must with particularity "show (1) that they have

8   set forth in affidavit form the specific facts that they hope to elicit from further

9   discovery, (2) that the facts sought exist, and (3) that these sought-after facts are

10  'essential' to resist the summary judgment motion."  *See supra* at pp. 19-20, *citing*

11  *Family Home & Fin. Ctr., Inc. v Fed. Home Loan Mortg. Corp.*, 525 F3d 822, 827

12  (9th Cir. 2008).[12]

13          Here, the Bauer Defendants' anti-SLAPP motion establishes with a wealth of

14  evidence that it published the statements at issue in the Article with complete

15  confidence in their accuracy.  Accordingly, as a matter of law, Beckham cannot

16  meet his burden of establishing actual malice.  In the defamation context, "actual

17  malice" means "with 'knowledge that it was false or with reckless disregard of

18  whether it was false or not.'"  *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496,

19  510 (1991) (citations omitted).  To establish "reckless disregard" for the truth, a

20  plaintiff must show "that the defendant actually had a 'high degree of awareness of

21  . . . probably falsity.'"  *Harte Hanks Commc'n v. Connaughton*, 491 U.S. 657, 688

22  (1989) (citation omitted).  "Mere negligence does not suffice" for actual malice,

---

23          [12] *Family Home* demonstrates *precisely* the faults with plaintiff's application.
24  In that case, the Ninth Circuit upheld the district court's *denial* of a motion for
    discovery, holding that the evidence sought was only "generically relevant" to the
25  summary judgment motion, and was not, as required, "essential" to opposing
26  summary judgment.  *Id.* at 827.  So, too, here, Beckham only ever argues why the
    evidence he seeks is tangentially related – or "generically relevant" – to Bauer's
27  anti-SLAPP motion; he never explains why it is essential.

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

*Masson*, 501 U.S. at 510, nor does "an extreme departure from accepted professional standards of journalism[.]"  *Newton v. NBC*, 930 F.2d 662, 669 (9th Cir. 1990).  Instead, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."  *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  "The standard of actual malice is a daunting one," *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996), and focuses exclusively on the defendant's subjective state of mind "at the time of publication."  *Bose*, 466 U.S. at 512.  Finally, as an additional safeguard, the First Amendment requires a public-figure defamation plaintiff to prove actual malice by "clear and convincing" evidence.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-15 (1986).

Just how "daunting" this standard is can be seen in *Christian Research Institute v. Alnor*, 148 Cal. App. 4th 71, 80-81 (2007), a case plaintiff relies on.  *See supra* at pp. 21, 23.  There, *even* where plaintiff argued that the defendant conducted an "inadequate investigation,'" relied on "biased and unreliable sources," and harbored ill will toward plaintiff, the Court of Appeal still found that "plaintiffs have not demonstrated Alnor acted with actual malice by clear and convincing evidence." *Id.* at 92 (noting also that "[w]e recognize the actual malice requirement places a substantial barrier to defamation claims brought by a public figure, particularly at this early stage of the proceeding.").

Here, Beckham has provided this Court with no foundation for any belief that discovery will uncover heretofore undisclosed, relevant and admissible clear and convincing evidence of actual malice, *i.e.*, that Bauer actually believed its story to be false or had serious doubts about it.  Importantly, both federal and California state cases have made clear that seeking discovery after the filing of an anti-SLAPP motion cannot be a speculative affair, but rather must be targeted, and based on strong showings that essential evidence will be uncovered.  What Beckham seeks here – without putting forth a single piece of evidence himself to show why the

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

41

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1  Bauer Defendants should have doubted their story (or, for that matter, to even

2  indicate that any part of the story is untrue) – is the quintessence of what is *not*

3  permitted.[13]

4      As the Northern District aptly explained, courts should allow discovery:

6      only if the plaintiff demonstrates "that a defendant or a witness
possesses evidence needed by plaintiff to establish a prima facie case."

7  . . . [Plaintiff] has failed to identify, either in his opposition to
[defendant's] motion to strike or in his opposition to [defendant's]

8  motion to dismiss, any theory which if proved would support a finding
of malice.  Under these circumstances, the Court finds that Nicosia has

9  not made an adequate showing that a defendant or a witness possesses
evidence which would establish malice. *See Sipple v. Foundation for*

10  *National Progress,* 71 Cal. App. 4th 226, 247, 83 Cal. Rptr. 2d 677,
690 (1999) (affirming trial court's denial of discovery request when

11  plaintiff failed to identify additional facts expected to be revealed

12  through discovery or explain how discovery would allow plaintiff to
establish prima facie case).

13

14

15  *Nicosia*, 72 F.Supp.2d at 1111 (citation omitted).  In language entirely applicable

16  here, the court in *Nicosia* further explained:

17      Of course, it is possible that with discovery [plaintiff] could uncover

18  new evidence to support a theory of malice not yet identified. The mere
possibility that this might occur, however, does not satisfy the standard

19  articulated in *Lafayette* and *Sipple*.

20  *Id.* at 1111 n.12.  The burden is on Beckham to show that his action is viable.

21  Indeed, as the courts have explained, he should have had enough evidence to

22  establish a defamation claim even before filing this speech-chilling lawsuit against

23  the Bauer Defendants.  *Ludwig*, 37 Cal. App. 4th at 16 (plaintiff should "marshal

24  _____

25  [13] This is particularly true with regard to Beckham's broad demands for
discovery from Irma Nici, one of Bauer's sources.  Nici is not a party to Bauer's

26  anti-SLAPP motion.  Further, what Nici believed to be true is utterly irrelevant to
the issue of actual malice, which exclusively looks to Bauer's state of mind.  Thus,

27  discovery from Nici is not even relevant, let alone "essential," as required.

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

42

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1  facts . . . *before* filing a SLAPP suit") (emphasis in original). As established below,

2  Beckham cannot meet his burden and he has provided the Court with no basis for

3  believing that the sweeping discovery requested would change that conclusion.

**2.   Plaintiff Has Not Met His Burden By Showing**

**That the Requested Discovery is Essential or Even Exists**

6  Beckham has not provided a shred of evidence to support his contention that

7  evidence actually exists demonstrating that Bauer had serious doubts about its story.

8  He claims to need testimony of Deborah Baer about her interview with Nici because

9  this testimony is "likely to reveal that Bauer knew the falsity of Nici's story," but

10  provides no explanation as to why such testimony would reveal that (in the face of

11  Baer's declaration that she believed Nici "1000 percent").  Next, Beckham claims to

12  need to depose Michelle Lee "to determine if she had doubts about [Nici's story's]

13  truth," without indicating any reason to believe Lee had any doubt (and in spite of

14  Lee's swearing to the contrary in her own declaration).  Then, he seeks discovery

15  from Annette Deinzer, who conducted fact-checking research for the story, because

16  "[s]uch discovery may reveal that Deinzer or others at *In Touch Weekly* learned

17  through such research that the allegations against Beckham were untrue or highly

18  suspicious," but provides no reason to believe that Deinzer's research "may" show

19  this.  Finally, he seeks a deposition of Nici to discover "what Nici told Bauer," but

20  Beckham has the audio recording of the Nici interview concerning him and he never

21  explains how Nici could possibly testify as to what Bauer believed.  Indeed, Nici has

22  re-confirmed in a sworn declaration that everything she told Bauer was true.  Again,

23  Beckham provides nothing to support a theory that Nici would repudiate her prior

24  contract *and* her sworn testimony.  His demand for these depositions is based on

25  nothing more than pure speculation and unfiltered hope that something will emerge

26  to help his case.

27  Nor has Beckham demonstrated any foundation for believing documents exist

28  that would show Bauer had serious doubts about the story.  Indeed, Beckham has

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

43

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

not pointed to the *existence* of any information that would contradict the Article.  He has not said, "If only you had interviewed witness X" or "If only you had read document Y."  Instead, he simply hopes that Bauer *might* have in its possession some document that *might* give rise to doubt about Bauer's article.  He cannot identify what such a document might look like; he just hopes it exists.

As the Ninth Circuit repeatedly has held, parties opposing summary judgment cannot meet their burden and obtain a continuance to pursue discovery by offering speculation that discovery will reveal something to assist their case.  *See*, *e.g.*, *Apache Survival Coal. v. U.S.*, 21 F.3d 895, 911 n.17 (9th Cir. 1994).  There, in rejecting appellant's challenge to the trial court's refusal to permit further discovery before resolving respondent's summary judgment motion, the Court explained that "[e]ven if Appellants otherwise were entitled to discovery, it was within the district court's discretion to deny it when, as in this case, the complaining party could only speculate as to what it might discover."  *Id.*  Thus, "[t]he mere hope that further evidence may develop prior to trial is an insufficient basis for a continuance under Fed. R. Civ. P. 56(f)."  *Cont'l Mar. of San Francisco, Inc. v. Pacific Coast Metal Trades Dist. Council*, 817 F.2d 1391, 1395 (9th Cir. 1987).  "Denial of a Rule 56(f) application is proper where it is clear that the evidence sought … is the object of pure speculation."  *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991); *accord California v. Campbell*, 138 F.3d 772, 779-780 (9th Cir. 1998).[14]

Nonetheless, to support his need for discovery, Beckham now attempts to cast a wide net to find *some* indication that Bauer in fact had serious doubts about the Article.  But as the summary of Bauer's reporting establishes, there *were no* red

---

[14] More importantly, even if there was some piece of information or some document somewhere in the world that might have cast Nici's story in doubt,  absent an allegation that the Bauer Defendants were *aware of* such information, any supposed information is simply irrelevant to the Court's determination of whether Bauer published the article with actual malice.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

44

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

flags for Bauer. The declarations submitted in support of the Special Motion to Strike demonstrate that Bauer believed its Article was entirely accurate and had no reason to doubt its accuracy. Kelly Decl. Ex. 6 at ¶¶ 2, 25, 32, 34; Kelly Decl. Ex. 5 at ¶¶ 2, 24, 40, 44, 45. Bauer relied on a source it found to be credible, whose story felt to the interviewer "organic" and genuine. Kelly Decl. Ex. 5 at ¶ 24. It independently corroborated a number of facts from her story and further corroborated it with two other sources. And the magazine sought Beckham's side of the story, and published it in its entirety. Kelly Decl. Ex. 6 at ¶¶ 26-32; Kelly Decl. Ex. 5 at ¶¶ 35-40. Finally, the story was consistent with a pattern of infidelity documented by countless prior press reports and therefore was inherently credible. Beckham was hardly the first public figure to cheat on his wife. Such stories had dominated headlines in the past year. Indeed, Bauer had reason to believe it knew of at least *six* examples of Beckham's cheating.

Beckham has not provided this Court with any reason to believe Bauer's affiants will somehow repudiate their sworn testimony and reveal they "knew" the Article was false. Discovery is not available when a plaintiff merely seeks to probe the truthfulness of defendant's sworn statements submitted to the court. Consider, for example, *Sipple*, 71 Cal. App. 4th 226. There, in opposition to a special motion to strike under Section 425.16, plaintiff moved for an order permitting him to conduct discovery, to help him carry his burden of showing actual malice. He sought to justify the discovery with the argument that "he should be 'permitted to test respondents' self-serving declarations and elicit circumstantial evidence through discovery before being subjected to dismissal for failure to establish a prima facie case.'" *Id.* at 247. Where, as here, it did not appear that discovery would disclose information to establish actual malice, the appellate court affirmed the trial court's denial of the plaintiff's discovery request, holding that such discovery "would subvert the intent of the anti-SLAPP legislation." *See also 1-800 Contacts, Inc. v. Steinberg*, 107 Cal. App. 4th 568, 593 (2003) (Even though conflicting declarations

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

45

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1    were submitted on the key point in dispute, the appeals court affirmed the denial of

2    discovery and held that discovery "may not be obtained merely to 'test' the

3    opponent's declarations.").

4        What is at the heart of Beckham's inability to demonstrate that the evidence

5    he seeks even exists is his utter failure to explain how and why the Article is false

6    and to produce anything to support that conclusion.  Beckham is the best source of

7    this evidence – that is, if it actually exists.  If he did not spend about 12 hours with

8    Nici in New York in August 2007, days before his soccer match, he should be able

9    to account for his time.  However, Beckham has steadfastly refused – despite

10   repeated requests – to provide any support for his conclusory denial.  Tellingly,

11   while Beckham has now (for the first time) submitted a declaration denying Bauer's

12   Article, he nowhere states (or even implies) what evidence he will present to

13   establish falsity and again rests on an unsubstantiated denial.  *See*, *e.g.*, *Lafayette*

14   *Morehouse, Inc. v. Chronicle Publ'g Co.*, 37 Cal. App. 4th 855, 868 (1995) (in anti-

15   SLAPP motion, plaintiff bears burden of showing likelihood of success); *accord*

16   *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d 963, 971

17   (9th Cir. 1999).  *See also Edwards v. Nat'l Audubon Soc'y*, 556 F.2d 113, 121 (2d

18   Cir. 1977) (noting that blanket denials "are so commonplace … that, in themselves,

19   they hardly alert the conscientious reporter to the likelihood of error."); *Robertson v.*

20   *Rodriguez*, 36 Cal. App. 4th 347, 359 (1995) (rejecting "boilerplate denial of

21   wrongdoing" as evidence of actual malice).

22       Similarly, Beckham claims that "[D]iscovery may reveal that Deinzer [*In*

23   *Touch*'s fact-checker] learned through such research that the allegations against

24   Beckham were untrue or highly suspicious."  *See supra* at p. 27.  But *what*

25   information should Deinzer or others at *In Touch Weekly* have discovered?  Deinzer

26   diligently spent "several hours" reading articles about Beckham, including

27   allegations of his past indiscretions, and turned up no reason to doubt the accuracy

28   of these reports.  If there is an article Beckham believes Deinzer should have found

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

46

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1  that would cast into doubt Beckham's history as a serial cheater, then let him put

2  forth that piece of evidence.

3       In the end, Beckham wants several depositions and unfettered access to

4  Bauer's files in the unsubstantiated hope of finding something to defeat Bauer's

5  anti-SLAPP motion.  His application is bare speculation; it does not support his

6  request.

### 3.   Discovery is Not Available to Plaintiff on the Issue of Actual Malice Where the Requested Evidence, Even if It Existed, Would Not Establish Actual Malice

10       Separately, discovery requests made under subsection (g) of C.C.P. § 425.16

11  must be denied if a defendant can show that, regardless of the outcome of the

12  requested discovery, plaintiff's claims still fail.  *See*, *e.g.*, *Tutor-Saliba Corp. v.*

13  *Herrera*, 136 Cal. App. 4th 604, 617-18 (2006) (denying discovery request under

14  Section 425.16 where information would not affect resolution of special motion to

15  strike); *Carver v. Bonds et al*., 135 Cal. App. 4th 328 (2005) (same); *Blanchard v.*

16  *DirecTV*, 123 Cal. App. 4th 903 (2004) (same); *Schroeder v. Irvine City Council*, 97

17  Cal. App. 4th 174 (2002) (same).  In other words, if the plaintiff's claim would still

18  fail even if he obtained the evidence he seeks or there is no reason to believe that he

19  could obtain that evidence, the discovery would be "futile" and hardly amount to the

20  essentiality required.  *Burlington N. Santa Fe R. R. Co. v. Assiniboine and Sioux*

21  *Tribes of the Fort Peck Reservation*, 323 F.3d 767, 774 (9th Cir. 2003) (discovery

22  appropriately denied when it would have been "futile").

23       Here, given the multiple layers of redundancy in Bauer's reporting, Beckham

24  has provided the Court with no basis for any belief that discovery will uncover

25  heretofore undisclosed, relevant evidence of actual malice.  Bauer has already

26  provided the necessary declarations that "covered this ground, and established the

27  scenario and basic elements of the case."  *1-800 Contacts*, 107 Cal. App. 4th at 594.

28  Even if he could somehow establish falsity through Nici's deposition – and there is

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

47

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

no reason to think he will, given the affidavit she filed after this action was filed, reaffirming the truth of her story – that would be utterly irrelevant unless he also shows that Bauer knew Nici's story was false.  Yet, Deborah Baer and Michelle Lee (the writer/editor of the article and the editor-in-chief, respectively) have both sworn that they had no knowledge that the information obtained from Nici, corroborated by other sources, and fully in keeping with Beckham's history, was allegedly erroneous in any way.  Indeed, they have both sworn that they took all appropriate steps to confirm that information's accuracy.  It is clear from *1-800 Contacts* and *Sipple* that Beckham cannot justify discovery by simply wanting to test the affiants and invoking the speculative hope that discovery could possibly undermine Lee's or Baer's sworn statements.

Beyond his rank speculation that discovery might miraculously reveal Bauer actually harbored serious doubts about its story, Beckham's demand for discovery focuses on his contention that Bauer did not seek or receive any corroborating documents from its sources.  *See supra* at p. 24, noting phone records, credit card receipts, journal entries and passport records.  Of course, Beckham paid in cash, so no credit card receipts would exist.  Moreover, the record already establishes that Baer *did* seek phone records (which Nici did not have since she no longer had the same cell phone) and that, with respect to journals, Nici's boyfriend had stolen her diary, which explained why she was coming forward.  That leaves an alleged failure to review Nici's passport to confirm whether she was in New York and London at the times alleged.

However, even if evidence established that Bauer failed to ask for Nici's passport or some other documents, in the context of its multiple sources, corroborating details and a consistent pattern of behavior by Beckham that made the story inherently credible, such an omission would hardly amount to a "purposeful avoidance of the truth."  The law is to the contrary.  To establish a purposeful avoidance of the truth, the plaintiff must show that the publisher had doubts about

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

48

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1   its story and consciously avoided information that would confirm its inaccuracy.

2   For example, in *Harte-Hanks*, 491 U.S. at 682, the publisher had interviewed all the

3   witnesses to a key conversation, *except* the "one witness who was most likely to

4   confirm . . . the events."  Moreover, the publisher had tapes in its possession that

5   would have revealed the falsity of the allegations, but chose not to listen to them.

6   *Id.* at 684-85.  All of this, the Court found, supported a finding that defendants

7   deliberately "avoid[ed] the truth."

8           Here, Bauer interviewed (or sought comment from) every person involved in

9   the events and possessed no information that would have revealed the falsity of

10  Nici's story.  Not exploring every conceivable avenue does not amount to a

11  purposeful avoidance of truth, particularly when, as here, there is no evidence that

12  Baur had any doubts about is story.  In *Eastwood v. Nat'l Enquirer, Inc.*, 123 F.3d

13  1249 (9th Cir. 1997), now-Chief Judge Kozinski lists a number of steps that the

14  *Enquirer* could have taken to verify its story about Clint Eastwood:  calls to

15  Eastwood's representatives, asking for another witness to corroborate the source's

16  story, asking who arranged the source's supposed meeting with Eastwood, asking

17  where and when the supposed meeting happened, and making an effort to locate a

18  corroborating witness.  *Id.* at 1254-55.  But even though the *Enquirer* did none of

19  those things, this was still not enough to show clear and convincing evidence of

20  actual malice.  As here, the Court found that the story about Eastwood was

21  consistent with other articles about him, and the *Enquirer* had a good-faith reason

22  to trust its source.[15]  In the present case, Bauer did everything that the *Enquirer* did not

23  do:  it called Beckham's representatives, got other witnesses to corroborate Nici's

24  _____

25          [15] In sharp contrast, the Court in *Eastwood* did find actual malice with respect
    to one issue:  whether the published interview was an "Exclusive."  *Id.* at 1256.

26  Since the editors obviously knew that they did not interview Eastwood directly, their
    presentation of the article to the public as if they had conducted such an interview

27  was done with the requisite knowledge to support a finding of actual malice.

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1  story, spoke to Kristin Davis, who facilitated the threesome, and got details on when

2  and where the liaisons took place (which it then verified).  So while Beckham may

3  try to place some weight on the fact that Bauer did not ask Nici for her passport or

4  some other form of corroboration, this supposed failure to pursue every possible

5  means of corroboration does not establish actual malice and so is not "essential"

6  evidence.

### 4.  The Specific Discovery Sought By Plaintiff From the Bauer Defendants is Not Even Relevant To, Let Alone Essential To, Plaintiff's Opposition.

10  Plaintiff has listed several categories of documents and deposition testimony

11  that he would like before opposing Bauer's anti-SLAPP motion.  None of this

12  requested discovery meets the standard of either Rule 56(d) or Section 425.16(g).

13  Indeed, the categories of testimony and documents that Beckham requests mainly

14  have two things in common:  they violate the Courts' warnings against fishing

15  expeditions (*see Apache*, 21 F.3d at 911 n.17 (denying discovery when "the

16  complaining party could only speculate as to what it might discover")) and against

17  seeking discovery solely to disprove a sworn declaration (*1-800 Contacts*, 107 Cal.

18  App. 4th at 593 (discovery under Section 425.16(g) "may not be obtained merely to

19  'test' the opponent's declarations.")).

### (a)  The Specific Discovery Sought from the Bauer Defendants is Not Essential or in Existence

22  Bauer does not deny that "the issue of its actual malice [is] at the forefront of

23  this litigation."  *See supra* at p. 25.[16]  Yet Beckham somehow equates the

─────────────

25  [16] Again, Beckham misleadingly states that "Bauer assumes that Nici's story
26  is false…."  *Id.*  Of course Bauer assumes no such thing and Beckham has given it
    no reason to believe so.  Merely for the purpose of its anti-SLAPP motion, Bauer is
27  not relying on truth as a defense.  The burden still rests with Beckham to prove that
    Bauer's article is *not* true.  *See*, *e.g.*, *Masson*, 501 U.S. at 516 ("[O]f course, the

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

importance of actual malice in this case with the fact that "the full record of Bauer's investigation and research" is "essential" to Beckham's opposition. *Id.* Of course, by that standard, a moving party could *always* get discovery on whatever topic is "at the forefront" of the litigation. That is not the law. Beckham must make a particularized showing for each category of information he requests. He fails in this attempt.

- **Deposition of Deborah Baer.** As with many categories of information, Beckham's explanation of why he would like to depose Baer relies on rank speculation. He states that "her testimony will reveal whether she encouraged Davis to provide her a story, even if false…." But Baer has explained in her uncontroverted declaration exactly how she came to Davis and what Davis told her. There is absolutely nothing in the record to suggest that Baer asked Davis for a false story, and Beckham has not introduced any facts to suggest this is even a possibility.

Beckham also seeks Baer's deposition because "her testimony will therefore provide the missing details regarding" the interview with Nici. As discussed above, the "missing details" in the interview consist of a word here and there, and Beckham is grasping at straws when he suggests that perhaps these sporadic missing words will disturb the clear record of Nici's story and precisely what Baer learned from her. Nor would Baer's testimony be useful for determining the "identity of th[e] other prostitute," as she cannot be compelled to name her confidential source.

Finally, Beckham's request for discovery on "whether this unusual

---

(footnote continued)
burden is upon petitioner to prove falsity."); *Nguyen-Lam v. Cao*, 171 Cal. App. 4th 858, 867 (2009) ("plaintiff shoulder[s] the burden of proving not only the falsity of the challenged statement, but also that defendant acted with 'actual malice.'") (citation omitted).

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

51

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

arrangement [Davis signing the source agreement in addition to Nici] raised concerns at *In Touch* over the veracity of Nici's story" are unsubstantiated fishing expeditions.  Baer signed a declaration swearing that she did *not* doubt the veracity of the story.  Beckham provides no reason to believe that the discussions he cites would show that Baer doubted Nici's claims; he just wishes to test her sworn testimony, which is not a basis for discovery.

- **Deposition of Michelle Lee.**  Like Baer, Michelle Lee in her own sworn declaration stated that she found Nici's story to be "entirely credible," particularly "against the backdrop of all our prior reporting on Beckham and what had been previously reported elsewhere concerning Beckham's affairs." After each step of reporting and corroboration, she continued to believe the story, noting that "everything fit."  Kelly Decl. Ex. 6 at ¶ 22.  Indeed, "to this day, [she] ha[s] not learned any facts that have changed [her] belief that Nici's story is true."  *Id.* at ¶ 34.  After all this, Beckham wishes to find some information to "determine if she had doubts about [the Article's] truth."  He does not explain any reason to believe that Lee had doubts; he just once again wishes to test her testimony.

    Beckham also wants to "question Lee about Bauer's standard procedures for determining whether to publish allegations concerning celebrity infidelity, and how those procedures were followed, or not followed, in the Beckham stories, the Jesse James story, and the Jon Gosselin story." First, the procedures followed or not followed in those other stories are irrelevant to the present claim.  The Courts have repeatedly explained that objective reporting standards are *not* relevant in the actual malice analysis, and the Ninth Circuit has overturned district courts for precisely such a mistake.  "The district court's standard of what 'should have been foreseen' is an objective negligence test while the actual malice test of *New York Times* is deliberately subjective."  *Newton*, 930 F.2d at 680; *see also Fletcher v. San*

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

52

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

*Jose Mercury News*, 216 Cal. App. 3d 172, 187 (1989) (court does not sit "as some kind of journalism review seminar offering our observations on contemporary journalism and journalists") (internal citations omitted).  More importantly, Beckham once again provides no reason for the Court to believe that the procedures followed for those stories *were* any different from the procedure followed here.  Beckham states that the discovery he seeks "will demonstrate that Bauer knowingly cut corners in investigating the Article before publication."  But it is undisputed that Bauer spoke to or attempted to speak with everybody with knowledge of the events, and independently corroborated various facts.  Further, as set forth above, even if Beckham could establish that Bauer could have done more in its investigation, that would not establish actual malice where, as here, in context Bauer believed its story to be true and therefore did not have any doubts, which is the necessary predicate to any showing of a purposeful avoidance of the truth.  This is another fishing expedition, and not "essential" to Beckham's opposition.

- **Deposition of Annette Deinzer.**  Like Lee and Baer, Annette Deinzer submitted a sworn declaration attaching representative available articles that she reviewed in connection with her research for the Article.  Beckham claims that "discovery [of Deinzer] *may* reveal that Deinzer or others at *In Touch Weekly* learned through such research that the allegations against Beckham were untrue" (emphasis added).  Deinzer found multiple articles that corroborated Nici's story, and still other articles not annexed to Deinzer's declaration would also corroborate Nici's story.  But if Beckham believes there are articles that Deinzer found or should have found that would *contradict* Nici's story, then that evidence is within *his* control.  He has provided this Court with no basis to believe that any contradictory information exists in previous reports concerning Beckham. And if it does, he

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

53

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1     is free to submit such evidence as part of his opposition to Bauer's anti-

2     SLAPP motion and argue that Deinzer should have found it.

3     • **Documents concerning Bauer's communications with Kristin Davis.** As

4     discussed above, Deborah Baer has already sworn to her interactions with

5     Davis, and Beckham provides no reason to doubt the truth of this sworn

6     statement. Further, Beckham's hope of finding evidence that "Baer and Davis

7     plotted to concoct the story about Beckham's infidelity" is entirely

8     unfounded. Beckham has not provided a shred of evidence to suggest that

9     that is a possibility.

10     • **Documents concerning Baer's interviews of, and communications with,**

11     **Nici.** Bauer has already provided Beckham with the actual audio recordings

12     of the interview of Nici. That is the best evidence for determining whether

13     "Nici said anything that was plainly false or easily provable as false."

14     Beckham apparently admits that *nothing* in the transcript Bauer provided

15     demonstrates that Bauer knew Nici's story was (supposedly) false; why, then,

16     should the mumbled or quiet word here and there, many of which can, in fact

17     be heard in the recording, happen to be the words that would undermine

18     Nici's story?

19     • **Documents concerning Bauer's discussion with the "other prostitute."**

20     Again, Beckham wishes to know "whether the 'other prostitute' said anything

21     to make Baer doubt the truth of Nici's story." Baer has sworn that she did *not*

22     doubt Nici's story and that her interview of the other prostitute corroborated

23     her story; Beckham provides no reason to disbelieve her.

24     • **Documents concerning the veracity of Nici's story, and Bauer's belief in**

25     **and/or research into the veracity of Nici's story.** The entirety of the

26     declarations of Baer, Lee and Deinzer, as well as the articles annexed thereto

27     (and the other articles available in the public record) all go to the veracity of

28     Nici's story. Every piece of evidence amassed by Bauer *supported* Nici's

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

54

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

veracity. Yet Beckham states that "[t]hese documents *could* show that Bauer had serious concerns about the truth of Nici's story…" (emphasis added). He again provides no reason for the Court to believe Bauer had a single doubt.

- **Documents concerning Bauer's standard procedures for investigating allegations of celebrity affairs.** Beckham cannot build his case on a contention that Bauer should have found evidence that would have raised serious doubts about Nici's story. "Should have" or "could have" are not relevant standards. *Newton*, 930 F.2d at 680 ("The district court's standard of what 'should have been foreseen' is an objective negligence test while the actual malice test of *New York Times* is deliberately subjective."). Here, not only has Beckham not pointed to any contradictory evidence that Bauer did or should have had *in its possession*, but he has not pointed to any contradictory evidence that exists *in the entire universe*. Bauer's standard procedures or standard procedures that should be followed by all journalists are irrelevant, and Beckham does not cite any case to the contrary. *See*, *e.g.*, *Fletcher*, 216 Cal. App. 3d at 187 (court does not sit "as some kind of journalism review seminar offering our observations on contemporary journalism and journalists"). The only relevant issue is the Bauer editors' subjective states of mind regarding the truth or falsity of the Article at issue, not whether the magazine followed the same procedures on unrelated articles or whether it complied with some sense of standard journalistic practices.

> ### (b) <u>The Discovery Sought by Plaintiff From Nici is Not Relevant to Plaintiff's Opposition and Would Be Duplicative</u>

As with the discovery sought from Bauer, the discovery Beckham seeks from Nici is based on pure speculation, and an abstract hope that she might possess some useful piece of information. Nici is not a moving party on Bauer's Motion to Strike. In a sworn declaration filed with this Court, she stated that all the challenged

**Kendall Brill & Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

55

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1 statements in the Article are true.  Nonetheless, Beckham introduces his requests by

2 explaining that "the conversations and documents sought by Bauer and shared with

3 them, are crucial in determining whether Bauer overlooked significant red flags that

4 would have indicated that her story was entirely fabricated."  *See supra* at p. 23.  As

5 above, Beckham entirely omits the critical step under *Family Home* and other cases

6 of showing that "the facts sought exist."  What is more, since it is only *Bauer's* state

7 of mind that matters in this case, facts in Nici's possession are irrelevant to this case

8 unless they were also in Bauer's possession.  Thus, even should the Court allow any

9 discovery from Bauer (which it should not), it is certainly not "essential" to have

10 duplicative testimony from Nici (which also could not possibly go to Bauer's state

11 of mind).

- **Deposition of Irma Nici.**  Nici cannot provide any admissible evidence
   concerning actual malice, which looks at Bauer's belief concerning Nici's
   story, the only issue on this anti-SLAPP motion. Beckham has the transcript
   and audio files of the interview Nici gave to Bauer concerning Beckham and,
   as established above, there is no basis for concluding that a deposition of Nici
   is going to reveal "incomplete details about what Nici said." (Beckham states
   throughout his portion of this stipulation that "Bauer interviewed Nici twice,"
   but each time fails to apprise the Court what Baer explained clearly in her
   declaration: the second interview of Nici, conducted on the eve of publication
   of the Article, was not about Beckham at all, but rather about Nici's
   interactions with other clients.  Beckham does not even attempt to argue why
   such an interview is even relevant to his opposition.) Indeed, having had the
   transcript of the interview in his possession for over a month, Beckham could
   easily have identified *specific passages* in the transcript that he believes
   require elucidation and could potentially contain facts that would hurt Bauer's
   case.  But he has not done so.  He instead hopes that these sporadic inaudible
   or heavily accented words will "include[] certain details in [Nici's] story that

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

are clearly false or easily proven false."

Likewise, what Nici thought about why Bauer paid the money to Davis instead of directly to Nici is utterly irrelevant and could not provide admissible evidence concerning Bauer's belief in her story. Nici's views or reasons for doing things are of no moment whatsoever unless they were conveyed to Bauer. Only Bauer's subjective state of mind matters.

- **Documents from Nici Allegedly Proving Her Allegations.** It is odd that Beckham seeks from Nici documents that would *prove* her allegations. Bauer's anti-SLAPP motion rests on a detailed explanation of the information it learned and why it believed in the accuracy of its Article. If Nici has further proof that she did not give to Bauer, this of course will only hurt Beckham's case. And if she has further evidence that would have drawn her story into question, there is no basis to believe that any such evidence was provided to Bauer. And if it was not, then any such evidence is irrelevant to Bauer's state of mind.

- **Documents concerning Nici's and Davis' signing of the Exclusive Source Agreement.** Again, any hope on the part of Beckham that such documents "will help confirm whether the changes to the payment arrangements… caused Bauer to be concerned over the truth of Nici's story" is pure speculation. Baer and Lee have sworn that they were *not* concerned by this arrangement. Beckham's use of the word "confirm" is highly misleading, since it suggests that there is some other evidence that this would help "confirm." In fact, there is not a single piece of evidence in this case that Bauer was concerned about the truth of Nici's story.

## VI. DEFENDANT/CROSS-COMPLAINANT NICI'S CONTENTIONS AND POINTS AND AUTHORITIES

For the reasons set forth in their portion of this section, Nici joins the contentions and points and authorities of Bauer Publishing.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

57

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

## VII.   **BECKHAM'S CONCLUSION**

For the foregoing reasons, Beckham respectfully requests that the Court grant his Motion for To Conduct Limited Discovery in order to conduct depositions of Nici, Baer, Lee and Deinzer, and to obtain any documents regarding Bauer's actual malice in publishing the Article.

## VIII.  **BAUER DEFENDANTS' CONCLUSION**

This application for discovery is nothing more than an effort to delay the Court from reaching the merits of Bauer's anti-SLAPP motion and postpone the inevitable dismissal of Beckham's claim.  As courts have recognized, discovery is "usually the most time-consuming and expensive aspect of pretrial litigation," which is the primary reason behind the automatic stay of discovery included in Section 425.16.  *Garment Workers Center v. Superior Court*, 117 Cal. App. 4th 1156, 1161 (2004).  Consequently, discovery may only be granted under Section 425.16(g) when it is absolutely necessary to establish plaintiff's prima facie case.  Similarly, Courts will only grant discovery on a Rule 56(d) motion when the moving party can show that the information sought both exists and is essential to the party's opposition.  Here, since the overwhelming evidence demonstrates that Bauer published the Article at issue with a firm belief in its accuracy, there is no reason to believe that discovery will somehow reveal evidence to the contrary.  The costly imposition of discovery is entirely unwarranted.  Further, Beckham has not pointed to a single piece of evidence that would support his case.  In this way, this case is quite unusual.  In most actual malice cases, the plaintiff can not only show the falsity of the story, but also show that the falsity could have been discovered, if only the defendant had taken a certain step.  Here, Beckham has not only not shown any evidence that Bauer's story was false in the slightest, but he has also failed to point to a single piece of evidence that he believes Bauer *should have* discovered.

Indeed, it appears that Beckham's application is less about unearthing evidence of actual malice, and more about attacking a publication that dares to

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

58

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1  provide readers with coverage of Beckham that is not pre-approved, edited, shaped,

2  or spun by the media-savvy Beckham and his handlers. The core purpose of the anti-

3  SLAPP statute is to prevent exactly this kind of litigation – namely, litigation

4  "brought primarily to chill the valid exercise of the constitutional right[] of freedom

5  of speech." Cal. Civ. Proc. Code § 425.16(a). Beckham's aggressive efforts to

6  silence Bauer's coverage of his hypocritical lifestyle should not be encouraged by an

7  order granting Beckham's application for an order granting discovery under Section

8  425.16(g) or Fed. R. Civ. P. 56(d).

9

10  Dated: December 29, 2010          KENDALL BRILL & KLIEGER LLP

11

12

13                                   By: _____
                                        Philip M. Kelly
14                                      Attorneys for Plaintiff and Cross-
                                        Defendant
15

16  Dated: December 28, 2010          DAVIS WRIGHT TREMAINE LLP

17

18

19                                   By: _____
                                        Elizabeth A. McNamara
20                                      Alonzo Wickers IV
                                        Kevan Choset
21                                      Attorneys for Bauer Publishing Company,
                                        L.P., Bauer Magazine L.P., Bauer Media
22                                      Group, Inc., Bauer, Inc., Heinrich Bauer
                                        North America, Inc., and Michelle Lee
23

24

25

26

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11

JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY

1

2  Dated: December ___, 2010       JENSEN & ASSOCIATES, APC, TRIAL
                                    LAWYERS
3

4

5                                   By: _Paul Rolf Jensen/pc_____
6                                       Paul Rolf Jensen
                                        Attorneys for Defendant and Cross-
7                                       Complainant Irma Nici

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

60930.11                                    60
_____
JOINT STIPULATION RE: MOTION OF DAVID V. BECKHAM FOR RELIEF FROM DISCOVERY STAY