KENDALL BRILL & KLIEGER LLP
Richard B. Kendall (90072)
  rkendall@kbkfirm.com
Philip M. Kelly (212714)
  pkelly@kbkfirm.com
Joshua Y. Karp (254424)
  jkarp@kbkfirm.com
10100 Santa Monica Blvd., Suite 1725
Los Angeles, California 90067
Telephone: 310.556.2700
Facsimile: 310.556.2705

Attorneys for Plaintiff and Cross-Defendant

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DAVID V. BECKHAM, an individual., <br><br> Plaintiff, <br><br> v. <br><br> BAUER PUBLISHING COMPANY, L.P., a Delaware limited partnership; BAUER MAGAZINE L.P., a Delaware limited partnership; BAUER MEDIA GROUP, INC., a Delaware corporation; BAUER, INC., a Delaware corporation; BAUER NORTH AMERICA, INC., a Delaware corporation; MICHELLE LEE, an individual; IRMA NICI, an individual; and DOES 1 through 50, inclusive., <br><br> Defendants. <br><br> ―――――――――――――― <br><br> IRMA NICI, an individual., <br><br> Cross-Complainant, <br><br> v. <br><br> DAVID V. BECKHAM, an individual., <br><br> Cross-Defendant. | Case No. CV10-7980 R (SSx) <br><br> **PLAINTIFF AND CROSS-DEFENDANT DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Hon. Manuel L. Real <br><br> Date: February 7, 2011 <br> Time: 10:00 a.m. <br> Crtrm.: 8 <br><br> [Declarations of David Beckham, Joshua Dessalines, Craig Love, Jeff Raymond and Philip M. Kelly filed concurrently] |

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ............................................................................. 1

II.  STATEMENT OF FACTS ............................................................... 3

    A.  Nici's Story About David Beckham, And Its Retelling By Bauer ......... 3

        1.  The Alleged Encounter In New York In August 2007 ................ 3

        2.  The Alleged Encounter In London In September 2007 ............... 4

        3.  Beckham's Alleged Phone Call To Nici In October 2007 ........... 5

    B.  Nici's Story Is Entirely False ............................................................ 5

        1.  Beckham Did Not Meet With Nici And Another Prostitute At Le Parker Meridien Hotel In Manhattan In August 2007 ...... 5

        2.  Beckham Did Not Meet With Nici At Claridges Hotel In London in September 2007 ............................................................ 6

        3.  Beckham Did Not Call Nici From New York In October 2007 ................................................................................ 7

    C.  Bauer's Targeting of David Beckham, Its Ignorance of Red Flags Indicating The Falsity of Nici's Story, And Its Purposeful Avoidance Of The Truth .................................................................. 7

        1.  Bauer's Plot To Publish An Article About Beckham ................. 7

        2.  Bauer Relied Upon Untrustworthy Sources For The Article ............................................................................... 8

        3.  Bauer's Only Independent Research Into Nici's Claims Consisted of Internet Research and Tips About Beckham's Other Alleged Infidelities That Bauer Did Not Find Fit To Print ............................................................................... 9

        4.  Bauer Intentionally Prevented Beckham From Having An Opportunity To Disprove The Article Before It Was Published ........................................................................... 10

        5.  Other Publications Immediately Recognized That Nici's Story Was Nothing But A Pack Of Lies And That Absolutely No Corroboration Existed ....................................... 11

III.  BAUER'S ANTI-SLAPP MOTION SHOULD BE DENIED ..................... 12

Kendall Brill & Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

i

DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE

A.    Beckham's Libel And IIED Claims Against Bauer Are Not Subject To A Special Motion To Strike Under C.C.P. § 425.16 Because Beckham's Sex Life Is Not A "Public Issue" ...................... 13

B.    Beckham's Claims Have Far More Than "Minimal Merit" ................ 16

    1.    Beckham's Libel Claim Easily Clears the "Minimal Merit" Bar .................................................................................... 17

        (a)    Bauer's Statements About Beckham Are False .............. 18

        (b)    Bauer Published The False and Defamatory Statements With Actual Malice ........................................ 18

            (i)    Bauer Recklessly Disregarded The Truth That Nici's Story Was False, Or Was Aware That Nici's Story Was False ............................................. 19

            (ii)    Bauer Purposefully Avoided The Truth That Nici's Story Was False ...................................... 22

            (iii)    Bauer's Self-Serving Declarations Are Insufficient To Avoid A Finding Of Actual Malice ...................................................... 22

    2.    Beckham's Intentional Infliction of Emotional Distress Claim Against Bauer Has Sufficient Merit ................................ 24

IV.   CONCLUSION ........................................................................................ 25

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

ii

1

# TABLE OF AUTHORITIES

2

**Page**

3

4

## CASES

5

*Barnes-Hind, Inc. v. Superior Court,*
    181 Cal. App. 3d 377 (1986)........................................................................17

6

*Christian Research Institute v. Alnor,*
7
    148 Cal. App. 4th 71 (2007)..................................................................18, 19

8

*Cochran v. Cochran,*
    65 Cal. App. 4th 488 (1998)........................................................................24

9

*Condit v. National Enquirer, Inc.,*
10
    248 F. Supp. 2d 945 (E.D. Cal. 2002)...............................................13, 14, 15

11

*Davidson v. City of Westminster,*
    32 Cal. 3d 197 (1982).................................................................................24

12

*Diaz v. Oakland Tribune, Inc.,*
13
    139 Cal. App. 3d 118 (1983).......................................................................16

14

*Eastwood v. National Enquirer, Inc.,*
    123 F.3d 1249 (9th Cir. 1997).....................................................................18

15

*Ess v. Eskaton Properties, Inc.,*
16
    97 Cal. App. 4th 120 (2002).......................................................................24

17

*Fashion 21 v. Coalition for Humane Immigrant Rights of Los Angeles,*
    117 Cal. App. 4th 1138 (2004)....................................................................17

18

*Golden v. Dungan,*
19
    20 Cal. App. 3d 295 (1971).........................................................................25

20

*Goldwater v. Ginzburg,*
    414 F.2d 324 (2d Cir. 1969)..................................................................19, 23

21

*Harte-Hanks Commc'ns., Inc. v. Connaughton,*
22
    491 U.S. 657, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) .............................22

23

*Hilton v. Hallmark Cards,*
    599 F.3d 894 (9th Cir. 2010).......................................................................14

24

*HMS Capital, Inc. v. Lawyers Title Co.,*
25
    118 Cal. App. 4th 204  (2004).....................................................................16

26

*Masson v. New Yorker Magazine, Inc.,*
    960 F.2d 896 (9th Cir. 1992).......................................................................22

27

*McCoy v. Hearst Corp.,*
28
    42 Cal. 3d 835 (1986).................................................................................23

**Kendall Brill**
**& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

iii

DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE

*Michaels v. Internet Entertainment Group*,
    5 F. Supp. 2d 823 (C.D. Cal. 1998)..........................................15, 16

*Navellier v. Sletten*,
    29 Cal. 4th 82 (2002)..........................................12, 13, 16

*New York Times Co. v. Sullivan*,
    376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) ......................18

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
    151 Cal. App. 4th 688 (2007)..........................................13, 16

*Parnell v. Booth Newspapers, Inc.*,
    572 F. Supp. 909 (W.D. Mich. 1983)..........................................25

*Reader's Digest Assn. v. Superior Court*,
    37 Cal. 3d 244 (1984)..........................................18, 19, 23, 24

*Rezec v. Sony Pictures Entertainment, Inc.*,
    116 Cal. App. 4th 135 (2004)..........................................13

*Rogers v. Home Shopping Network, Inc.*,
    57 F. Supp. 2d 973 (C.D. Cal. 1999)..........................................15

*St. Amant v. Thompson*,
    390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968) ......................19, 23

*Suzuki Motor Corp. v. Consumers Union of the U.S., Inc.*,
    330 F.3d 1110 (9th Cir. 2003)..........................................19, 23

*Time, Inc. v. Firestone*,
    424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976) ......................14

*Virgil v. Time, Inc.*,
    527 F.2d 1122 (9th Cir. 1975)..........................................15

*Weinberg v. Feisel*,
    110 Cal. App. 4th 1122 (2003..........................................14, 17

*Widener v. Pacific Gas & Electric Co.*,
    75 Cal. App. 3d 415 (1977)..........................................23

## STATUTES AND REGULATIONS

Cal. Civ. Code § 45..........................................17

Cal. Civ. Code § 45a..........................................17

Cal. Civ. Code § 46..........................................17

Cal. Civ. Proc. Code § 425.16..........................................passim

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

iv

DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE

1

## **<u>TREATISES</u>**

2 Restatement 2d Torts § 46 ........................................................................... 25

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Kendall Brill
& Klieger LLP**
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

v

DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE

# I.    INTRODUCTION

Plaintiff and Cross-Defendant David Beckham ("Beckham") submits this opposition to Defendants Bauer Publishing Company, L.P., Bauer Magazine, L.P., Bauer Media Group, Inc., Bauer, Inc., Heinrich Bauer North America, Inc. and Michelle Lee's (collectively, "Bauer" or "Bauer Defendants") Special Motion to Strike Plaintiff's Complaint (the "Anti-SLAPP Motion").  Bauer's Anti-SLAPP Motion should be denied in its entirety.

This defamation and intentional infliction of emotional distress lawsuit arises out of an entirely false and defamatory article concerning Beckham published by Bauer-owned tabloid *In Touch Weekly*.  On September 23, 2010, *In Touch Weekly* published an article entitled "David's Dangerous Betrayal" (the "Article").  In graphic and salacious detail, and using Defendant Irma Nici, an admitted prostitute, and Kristin Davis, a convicted criminal and Nici's admitted madam, as its primary sources, the Article falsely asserts that Beckham, a world-renowned soccer star and celebrity, engaged in several illegal sexual acts with Nici and another unidentified prostitute in 2007.  The episodes described in the Article are complete fabrications.  Beckham has never met Nici (or the other alleged prostitute), let alone paid either of these two prostitutes, or any person, for sex.  Indeed, Bauer concedes, for the purpose of this proceeding, that the Article is a lie.

Bauer knew, or at least recklessly disregarded, that Nici's story was false, but it nonetheless paid her and her admitted madam $50,000 to purchase the exclusive rights to her fabrications and then published them.  These false allegations have caused Beckham great anguish and emotional distress, and have adversely affected Beckham's professional life as an athlete, endorser, and charity spokesperson.  To clear his name and to be compensated for the emotional and monetary toll these stories have exacted, Beckham brought claims against Bauer and Nici for libel, slander, and intentional infliction of emotional distress.  After removing the case to this Court, Bauer filed its Anti-SLAPP Motion.  Bauer *assumes* that Beckham can

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

1

prove that the article is false and defamatory, but argues that Beckham cannot meet his burden of showing that Bauer acted with actual malice in publishing the article. Additionally, Bauer argues that Beckham's intentional infliction of emotional distress ("IIED") claim is barred because Beckham cannot demonstrate actual malice, and that even if Beckham can show actual malice, its conduct was not extreme and outrageous. Bauer's anti-SLAPP arguments are without merit.

First, Bauer's special motion to strike fails under California Code of Civil Procedure (C.C.P.) § 425.16 ("Anti-SLAPP statute") because, as a matter of law, the private sex life of a celebrity is not an issue of public interest under C.C.P. § 425.16(e) and Beckham's claims therefore do not arise from a "protected activity."

Second, even if Beckham's libel and IIED claims are subject to the Anti-SLAPP statute, Bauer's Anti-SLAPP Motion must still be denied because, as demonstrated below, Beckham's libel claim has considerable merit, and certainly more than the "minimal merit" necessary to overcome an anti-SLAPP challenge. Beckham easily demonstrates below that the Article is false (which Bauer in any event admits for purposes of its Anti-SLAPP Motion) and further demonstrates that Bauer published the Article with actual malice. Despite the fact that he has been denied any opportunity to conduct discovery,[1] Beckham and his security team have submitted incontrovertible evidence establishing that Nici's claimed liaisons with Beckham simply did not happen. Additionally, Beckham demonstrates through circumstantial evidence that Bauer knew the Article was false or, at the very least, recklessly disregarded the falsity of Nici's stories and purposefully avoided learning that her allegations were a pack of lies. Likewise, Beckham has sufficiently

---

[1] Beckham has been seeking discovery from Bauer and Nici since early October 2010. Both parties have refused to provide Beckham any discovery, and as a result, Beckham filed a Motion to Conduct Discovery, Dkt. # 24, on December 28, 2010, seeking discovery from Bauer and from Nici on the issue of actual malice prior to responding to Bauer's Anti-SLAPP Motion. This court denied Beckham's motion on January 10, 2010. Dkt. # 29.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

2

DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE

demonstrated a probability of success on his IIED claim, as Bauer's targeting of Beckham with false accusations that he solicited and engaged in prostitution is extreme and outrageous conduct that caused Beckham severe emotional distress.

Accordingly, Bauer's Anti-SLAPP Motion should be denied in its entirety.

## II.     STATEMENT OF FACTS

### A.     Nici's Story About David Beckham, And Its Retelling By Bauer

"David's Dangerous Betrayal" begins by quickly lashing out at Beckham: "*In Touch* can now report that, like Jesse James and Tiger Woods, David, 35, is yet another high-profile star to be caught cheating on his wife.  In a worldwide exclusive interview with *In Touch*, Irma Nici, a former high-class call girl, claims she's slept with the world's most famous soccer star five times and spills every dirty detail of their affair."  Exhibit H To Bauer's Anti-SLAPP Motion ("Article") at 26-27.  The Article allegedly details at least five alleged acts of prostitution involving Nici and Beckham – in New York in August 2007 and in London in September 2007 – and also an act of soliciting prostitution in New York in October 2007.  As demonstrated below, each of these allegations is a lie.

### 1.     The Alleged Encounter In New York In August 2007

Nici alleges that she and Beckham were set up through "a mutual friend who is a stylist."  Article at 27.  The stylist, who is not identified, allegedly called Nici and told her that she had someone in New York who may want to meet with her, and asked whether she could give him her number.  Nici agreed.  Exhibit D to Bauer's Anti-SLAPP Motion (Transcript of First Nici Interview) ("Interview") at Tape 1, Side A ("1A") Page 2.  Nici told Bauer that Beckham telephoned her on Thursday, August 16, 2007, when he was in New York to play soccer.  Article at 27; Interview at 1A Page 11; Motion to Conduct Discovery, Dkt. # 24, at 46.  Nici claims that Beckham called her at around 9:30 or 10:00 P.M. and asked her if she wanted to "hang out."  Bauer asserted that Nici agreed to meet Beckham at Le Parker Meridien hotel in Manhattan, Article at 27, and said she would be there in 45 minutes to an

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

3

DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE

hour. Interview at 1A Page 6. Bauer reported that the two allegedly spent their first 90 minutes together "making small talk." Article at 28. Then the two purportedly "agree[d] on a price for several hours of sex" and Beckham "gave Irma $5,000 in cash, which he retrieved from an envelope in the hotel room safe" and the two then allegedly had sex. *Id*. at 28. Afterwards, Nici allegedly convinced Beckham to hire an additional prostitute to join him and Nici in further prostitution. *Id*. at 28. Once Beckham allegedly agreed, Nici called Kristin Davis and requested an "all-natural brunette." Interview at 1A Page 40. Beckham is alleged to have agreed to pay the girl for two hours of time, and Beckham allegedly gave Nici $2,400 in cash to pay the other prostitute. Interview at Tape 1 Side B ("1B") Page 9; Article at 29-30. Beckham then allegedly had sex with the other prostitute for "three or four minutes before turning back to [Nici]." Article at 30. The other prostitute left shortly thereafter. By this time, Nici claims, it was late at night, and Beckham had no more money, so he asked Nici to spend the night with him at Le Parker Meridien, and promised that he would have someone come by the hotel room in the morning to give her money. Interview at 1B Page 25. Beckham and Nici purportedly agreed on $10,000 for the entire night, and "[l]ater—after another sex session—[Nici] fell asleep with her head on his chest." Article at 30. In the morning, Beckham and Nici allegedly had sex once again, and then "a messenger arrived with another $5,000," which Beckham gave Nici. Nici then left Le Parker Meridien. *Id*.

In total, Nici allegedly stayed at Le Parker Meridien with Beckham for more than 10 hours: from before 11 p.m. on Thursday, August 16, 2007, until well after 9 a.m. on Friday morning, August 17, 2007. Interview at 1B Pages 10-11.

### 2. The Alleged Encounter In London In September 2007

Bauer reported that Beckham and Nici met again in London in September 2007, when Beckham was in London visiting his father, who had just had a heart attack. Nici claims that Beckham called her during the afternoon one day when she was in London and they met at Claridges hotel in London that night. Interview at

Kendall Brill & Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

4

DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE

1B Pages 38-39. "Irma claims he paid her about $5,000 for 90 minutes of what she characterizes as 'stress-reliever sex. It was blasé.'" Article at 30.

### 3. Beckham's Alleged Phone Call To Nici In October 2007

Bauer reported that Beckham solicited Nici in October 2007 by telephone when he was in New York, but because Beckham was in New York and Nici was in London, the two did not meet and had no further contact. Article at 30.

### B. Nici's Story Is Entirely False

#### 1. Beckham Did Not Meet With Nici And Another Prostitute At Le Parker Meridien Hotel In Manhattan In August 2007

As shown below, Beckham's whereabouts are fully accounted for on the day and night in question, and he was never at Le Parker Meridien or in the presence of Nici, whom he has never met. Beckham flew from Los Angeles to New York on Thursday, August 16, 2007, with his Major League Soccer team, the Los Angeles Galaxy, because the Galaxy was scheduled to play the New York Red Bulls on Saturday, August 18, 2007. Declaration of David Beckham ("Beckham Decl.") ¶ 6; Declaration of Joshua Dessalines ("Dessalines Decl.") ¶ 5 & Ex. A. His flight landed in New York just after 8:30 p.m. local time. Beckham Decl. ¶ 6; Dessalines Decl. ¶ 6 & Ex. A. One of Beckham's security guards escorted Beckham from the airport to the team bus at approximately 9:00 p.m., which departed for the team hotel around 9:15 p.m. Dessalines Decl. ¶ 6 & Ex. A. Beckham stayed at the Waldorf Astoria hotel with the rest of his teammates for the duration of his stay in New York; he did not have a hotel room or spend any time in a room at a different hotel. Beckham Decl. ¶ 7.

Within a few hours after the team bus arrived at the Waldorf Astoria, Beckham received a sports massage arranged by the hotel. Dessalines Decl. ¶ 7 & Ex. A. One of Beckham's security guards escorted the massage therapist into Beckham's room at the Waldorf Astoria hotel after the time Nici says that she arrived at Le Parker Meridien hotel to be with Beckham. Beckham Decl. ¶ 8;

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  Dessalines Decl. ¶ 7 & Ex. A.  Beckham's security team was with him before,

2  during, and after the massage.  Beckham Decl. ¶ 8.  The massage therapist did not

3  leave Beckham's room at the Waldorf Astoria until around 1:30 a.m. Friday

4  morning, August 17, 2007.  Dessalines Decl. ¶ 7 & Ex. A; Beckham Decl. ¶ 8.

5  Beckham then went to sleep in his hotel room at the Waldorf Astoria.  Beckham

6  Decl. ¶ 8.  At 10:00 a.m. on Friday morning, August 17, 2007, one of Beckham's

7  security guards escorted Beckham from his room at the Waldorf Astoria hotel to

8  breakfast.  Dessalines Decl. ¶ 8 & Ex. A; Beckham Decl. ¶ 9.

9      Nici's version of events on the night of August 16, 2007 and August 17, 2007

10  cannot be true.  Beckham was at the Waldorf Astoria from before 10:00 p.m. on

11  Thursday, August 16 until well after 10:00 a.m. on Friday, August 17.  He was in

12  the presence of his security guard and others until 1:30 a.m., before going to sleep

13  alone.  He was never at Le Parker Meridien.  Beckham Decl. ¶ 5.

14          2.    Beckham Did Not Meet With Nici At Claridges Hotel In London in September 2007

15

16  Beckham flew from Los Angeles to London in the late evening on

17  Wednesday, September 26, 2007, in order to visit his father, who had been admitted

18  to The London Chest Hospital after his heart attack.  Beckham Decl. ¶ 14;

19  Declaration of Craig Love ("Love Decl.") ¶ 4.  He arrived at Heathrow airport in

20  London at around noon local time on Thursday, September 27, 2007.  Id.  After

21  arriving at Heathrow, Beckham's security agent, who accompanied him on the trip

22  from Los Angeles to London, handed Beckham off to a United Kingdom-based

23  security guard and to Beckham's longtime friend Terry Byrne so that Beckham

24  could immediately go to the hospital to see his father.  Love Decl. ¶ 5; Beckham

25  Decl. ¶ 14.  Beckham visited with his father for several hours, and then drove to

26  Byrne's house with Byrne for a short while.  At around 6:30 p.m., Love picked up

27  Beckham from Byrne's house and brought him back to the hospital.  Love Decl. ¶ 6.

28  Beckham stayed at the hospital until approximately 10:45 p.m. that night.  Love

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

1  Decl. ¶ 7.  Then Love and Beckham returned to Beckham's home outside of

2  London, where they remained for the rest of the night.  *Id*.; Beckham Decl. ¶ 14.

3        On Friday, September 28, 2007, Beckham's wife, Victoria Beckham, arrived

4  in London and headed straight to the Beckhams' home.  Love Decl. ¶ 8; Beckham

5  Decl. ¶ 15.  Once Mrs. Beckham arrived at the Beckham home, she and Beckham

6  departed together for the hospital to visit Beckham's father.  Beckham Decl. ¶ 15.

7  Mr. and Mrs. Beckham spent most of the day at the hospital.  That night, Mr. and

8  Mrs. Beckham visited Mrs. Beckham's parents, and then went back to their home

9  for the remainder of the night.  *Id*. at ¶ 16.  On September 29, 2007, Mr. and Mrs.

10  Beckham visited Beckham's father at the hospital.  In the evening they had dinner

11  with Mrs. Beckham's family, and then went home, where they spent the remainder

12  of the night.  *Id*. at ¶ 17.  Finally, on Sunday, September 30, 2007, Beckham visited

13  his father at the hospital, where he stayed until the afternoon, at which point he had

14  to catch a flight back to Los Angeles.  *Id*. at ¶ 18.

15        Nici's story about Beckham meeting her during his trip to London is thus

16  totally false.  Beckham was either with his security team, his father, or with Mrs.

17  Beckham and her family during all three evenings and nights he was in London, and

18  he never set foot inside Claridges during this trip.  *Id*. at ¶ 13; Love Decl. ¶ 9.

19              3.    Beckham Did Not Call Nici From New York In October 2007

20        Nici claims that Beckham called her in October 2007 when he was in New

21  York, seeking to engage in prostitution with her.  This, again, is false.  Beckham

22  was never in New York during October 2007 and did not call her at any time.

23  Beckham Decl. ¶ 21.

24  **C.    Bauer's Targeting of David Beckham, Its Ignorance of Red Flags
       Indicating The Falsity of Nici's Story, And Its Purposeful**

25  **     Avoidance Of The Truth**

26              1.    Bauer's Plot To Publish An Article About Beckham

27        Bauer admits that it has long been plotting to publish a dramatic story about

28  Beckham's alleged infidelity.  Declaration of Deborah Baer to Bauer's Anti-SLAPP

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

7

DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE

Motion ("Baer Decl.") ¶ 10. Its goal was to damage Beckham's reputation by showing that, according to *In Touch Weekly*'s Editor in Chief Michelle Lee, "Beckham's efforts to portray and market himself as a family man, happily married with three children . . . was not the whole story." Declaration of Michelle Lee to Bauer's Anti-SLAPP Motion ("Lee Decl.") ¶ 10. This goal dovetails with *In Touch Weekly*'s Executive Editor Deborah Baer's self-described job description:

> I am a writer/editor at In Touch magazine. I used to interview celebrities, now I destroy their lives. I'm sorry about that.

Kelly Decl. Ex. 1. Yet each time Bauer pursued the rumor mill, it reached a dead end. Baer Decl. ¶¶ 11-13; Lee Decl. ¶ 14. After numerous false starts, Bauer recklessly grabbed the opportunity Nici provided, ignored clear red flags in Nici's story, and published her lies.

2.    <u>Bauer Relied Upon Untrustworthy Sources For The Article</u>

Bauer relied upon three sources for the Article, all of whom are criminals: Irma Nici, an admitted prostitute, Kristin Davis, Nici's admitted madam, and an unnamed second prostitute, who Bauer claims to have interviewed over the phone without any knowledge of her actual identity.

According to Bauer, during the summer of 2010, an *In Touch* editor on the West Coast spoke to Davis, who told the editor that a prostitute she had worked with was willing to speak about some of her former clients, and provided some names. Baer Decl. ¶ 16. At the time, Davis was running for Governor of New York, based on her notoriety as Elliot Spitzer's madam, and was desperate for publicity. Kelly Decl. Exs. 2 & 3. Davis' initial list of supposed "clients" did not include Beckham. Later in the summer, Davis contacted Baer again, and claimed that she could provide a list of additional clients. Beckham was allegedly one of the names on the "revised" list. As a result of Bauer's ongoing efforts to publish a damaging story about Beckham, Baer "elected to obtain more information on David Beckham." Baer Decl. ¶ 17. Baer then interviewed Nici and Davis, *id.* at ¶¶ 19 & 34, during

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

8

DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE

which Nici and Davis told Baer their concocted story about Beckham. Bauer and Nici agreed that Bauer would pay Nici $50,000 for her story, and Nici signed an exclusive source agreement with Bauer. Later, for reasons only Bauer, Nici and Davis know, it was decided that Bauer would pay the $50,000 to Davis directly, and so Davis, who Bauer holds out as an independent corroborating source, signed the exclusive source agreement as well. Exhibit G to Bauer's Anti-SLAPP Motion.

Bauer then supposedly "confirmed" Nici's account with the "other prostitute who came to the room for the 'threesome' with Ms. Nici and Mr. Beckham." Baer Decl. ¶ 30. It appears that Baer never met this woman in person, but only spoke to her once on the phone, apparently in the presence of Davis, who was continuing to orchestrate Baer's "investigation." Bauer conducted no investigation of this "other prostitute" and apparently does not know her name.

### 3. Bauer's Only Independent Research Into Nici's Claims Consisted of Internet Research and Tips About Beckham's Other Alleged Infidelities That Bauer Did Not Find Fit To Print

In an apparent effort to show that it adequately researched Nici's allegations, the Bauer Defendants submit the Declaration of Annette Deinzer, the Research Director for *In Touch Weekly*. Deinzer Declaration In Support of Bauer's Anti-SLAPP Motion. From Deinzer's declaration it appears that the entirety of her research consisted of reading internet articles (presumably innuendo in other tabloids) about Beckham for a couple of hours. *Id.* at ¶ 3 ("I read many articles . . . I also read many articles"); *id.* at ¶ 4 ("I spent several hours reading articles.").

Additionally, Bauer does not offer any information or evidence that would even suggest that it sought or received any corroborating documents from Nici, Davis, or the alleged other prostitute, which would prove or disprove the veracity of the Article. Instead, Bauer claims that it relied upon false rumors it had been hearing about Beckham in deciding to believe Nici's story. Yet these allegations are so far-fetched that even *In Touch* felt they were not fit to print in their magazine.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

9

DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE

Baer Decl. ¶¶ 10-14; Lee Decl. ¶¶ 10-15. In fact, Bauer's reliance on these false rumors to demonstrate its absence of malice just proves the opposite: Bauer was hell-bent to publish rumors of infidelity, and when Nici came forward, Bauer was desperate to believe her and was willfully blind to the many red flags her story raised. Bauer even includes a version of Beckham's Wikipedia page from December 2007 to show that Nici's allegations are believable. Tellingly, this version of the entry omitted the following sentence, which has appeared in the entry long before Bauer interviewed Nici: "There has never been any proof of any of the allegations of Beckham's claimed infidelity." Kelly Decl. ¶ 5 & Exs. 4 & 5.

### 4. Bauer Intentionally Prevented Beckham From Having An Opportunity To Disprove The Article Before It Was Published

In order to avoid learning facts that would disprove Nici's story, Bauer prevented Beckham from having any reasonable opportunity to disprove Nici's allegations. Bauer claims in its Motion that it gave Beckham's representatives an opportunity to comment on the Article before it was published and suggests that Beckham had the opportunity to disprove the allegations. Far from advancing Bauer's cause, the actual facts show just how sleazy Bauer's conduct was. Although Bauer contacted a Beckham representative before publishing the Article, Bauer did not even provide Beckham with a single business hour, much less a business day, in which to refute Nici's story. The chronology is as follows: Bauer first interviewed Nici on Saturday, September 11, 2010. It waited, however, until Saturday, September 18 to dump the story on Beckham's publicists, and then demanded that they respond to the already-drafted article no later than Monday, September 20, at 6 a.m. Los Angeles time. Baer Decl. ¶ 35.

Moreover, Bauer did not present the story to Beckham's representative and then ask if Nici's story was true; rather, Bauer told the Beckham representative that Bauer would be publishing the Article regardless of Beckham's response. Declaration of Jeff Raymond ¶¶ 2-4. In the short time that Bauer allowed for

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

10

DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE

Beckham's response, Beckham's representatives issued complete denials of all of the allegations in the Article. *Id.* at ¶ 5. Apparently, however, that was insufficient for Bauer, as Bauer now cites to the blanket denials that Beckham's representatives had less than two weekend days to craft as being insufficient to provide any doubts about the veracity of Nici's story because they did not include detailed evidence disproving allegations that never occurred. Anti-SLAPP Motion at 20-22; Baer Decl. ¶ 36; Lee Decl. ¶¶ 27-29. Bauer ambushed Beckham and did not give him an opportunity to substantively respond to the allegations as it knew that Beckham would disprove the allegations if provided a reasonable opportunity to do so.

>    5.    <u>Other Publications Immediately Recognized That Nici's Story Was Nothing But A Pack Of Lies And That Absolutely No Corroboration Existed</u>

Considering all of the above, it is unsurprising that other publications that did not share Bauer's desire to malign Beckham's reputation saw Nici's story for what it is: a complete fabrication. Nici talked to other tabloids when she tried to sell her story to them. After hearing Nici's story and conducting just a superficial investigation of its veracity, those tabloids quickly determined that it was entirely false and refused to publish Nici's lies. For example, *News of the World* interviewed Nici and investigated her claims. Kelly Decl. Ex. 6. In rejecting Nici's story as completely false, the newspaper identified numerous obvious red flags that led it to conclude that Nici was lying:

- Nici claims that she met Beckham after an introduction from a mutual friend, but Nici refused to identify the friend.

- Nici refused to provide the full name of the second prostitute that allegedly joined Nici and Beckham at the Le Parker Meridian hotel in New York; Nici's agent told *News of the World* that no amount of money will convince "Jess" to corroborate Nici's allegations.

- Nici claimed she has phone records revealing that Beckham called her from

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

11

DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE

Le Parker Meridian, but claimed to *News of the* World that she "lost" the password for internet access to her mobile account and admitted that she did not have copies of any such records.  Nici claimed to keep detailed notes on all of her client bookings, but could not provide Beckham's phone number.

- Nici offered to show *News of the World* her passport to prove that she was in New York in August 2007, but claimed that she did not have the passport with her.  Later, she claimed that the passport had been stolen.

- Nici alleged that she has credit card receipts to show she was at Claridges in London with Beckham, but again claimed the receipts were unavailable.

*Id*.  The *Daily Mail*, a newspaper in the United Kingdom, also investigated Nici's allegations and likewise found them completely false, concluding that "Miss Nici does not appear to have a shred of evidence to support her version of events, and her observations of Beckham are nothing new."  Kelly Decl. Ex. 7.

## III.   BAUER'S ANTI-SLAPP MOTION SHOULD BE DENIED

California's anti-SLAPP statute provides, in part, that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  C.C.P. § 425.16(b)(1).  Courts engage in a two-step process when analyzing an anti-SLAPP motion.  First, the court decides whether the defendant has made "a threshold showing that the challenged cause of action is one arising from protected activity" under C.C.P. § 425.16(b)(1).  *Navellier v. Sletten*, 29 Cal. 4th 82, 88 (2002).  A defendant meets this burden by showing that "the act underlying the plaintiff's cause" falls under one of the categories of protected acts under C.C.P § 425.16(e).  *Id*.  If a defendant meets this burden, then the burden shifts to the plaintiff to show that his claims have at least "minimal merit."  *Id*. at 89.  Only a cause of action that involves "protected

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

12

DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE

1  activity" and lacks even "minimal merit" is subject to dismissal under the anti-

2  SLAPP statute. *Id.*; *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App.

3  4th 688, 700 (2007) ("Only a cause of action that lacks 'even minimal merit'

4  constitutes a SLAPP.") (*quoting Navellier*). Bauer cannot satisfy either prong of

5  this test.

**A.    Beckham's Libel And IIED Claims Against Bauer Are Not Subject To A Special Motion To Strike Under C.C.P. § 425.16 Because Beckham's Sex Life Is Not A "Public Issue"**

8  The purpose of California's anti-SLAPP statute is to deter plaintiffs from

9  bringing lawsuits "aimed at preventing citizens from exercising their political rights

10  or punishing those who have done so." *Rezec v. Sony Pictures Entertainment, Inc.*,

11  116 Cal. App. 4th 135, 139-40 (2004) (citations omitted). Courts do not

12  countenance defendants' use of the anti-SLAPP statute to immunize themselves

13  from alleged defamation, as opposed to meritless lawsuits designed to stifle political

14  or public speech. *See Condit v. National Enquirer, Inc.*, 248 F. Supp. 2d 945, 954

15  (E.D. Cal. 2002) ("This lawsuit concerns disputed claims over defamation, not the

16  type of meritless case brought to obtain a financial or political advantage over or to

17  silence opposition from a defendant, which California's anti-SLAPP statute is

18  designed to discourage.") In such situations, it is in fact the defendant, by misusing

19  the anti-SLAPP statute, who is stifling the plaintiff's exercise of his constitutional

20  right to seek justice for a malicious act of defamation.

21  In order to prevent abuse of the anti-SLAPP statute, the California legislature

22  identified the activities that are subject to an anti-SLAPP motion in C.C.P. §

23  425.16(e). Bauer contends that Beckham's libel and IIED claims are subject to a

24  special motion to strike under subsections (e)(3) and (e)(4). These two subsections

25  provide that the following acts fall under the anti-SLAPP statute:

> (3) any written or oral statement or writing made in a place open
> to the public or a public forum in connection with an issue of
> public interest, or (4) any other conduct in furtherance of the
> exercise of the constitutional right of petition or the constitutional

Kendall Brill & Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

13

right of free speech in connection with a public issue or an issue of
public interest.

C.C.P. § 425.16(e).  Beckham's claims do not fall under either subsection because
the sex life of a celebrity is not a "public issue" or "an issue of public interest" under
subsections (e)(3) and (e)(4).[2]

The "issue of public interest" requirement in subsections (e)(3) and (e)(4) was
intended "to have a limiting effect on the types of conduct that come within the third
and fourth categories of the statute."  *Weinberg v. Feisel*, 110 Cal. App. 4th 1122,
1132 (2003).  Indeed, "issues of public interest" are not equivalent to all matters of
interest to the public; "'public interest' does not equate with mere curiosity."  *Id.*;
*Time, Inc. v. Firestone*, 424 U.S. 448, 454, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976)
(while "marital difficulties of extremely wealthy individuals may be of interest to
some portion of the reading public," they do not qualify as "public controversies"
under First Amendment law).  And a defamation defendant cannot turn private
information into a matter of public interest simply by communicating it to large
numbers of people.  *Weinberg*, 110 Cal. App. 4th at 1133.

Beckham's sex life is, as a matter of law, neither a "public issue" nor an
"issue of public interest," despite the fact that he is a public figure.  A celebrity does
not lose all privacy simply because he voluntarily enters the public sphere.  *Hilton v.
Hallmark* Cards, 599 F.3d 894, 907-08 (9th Cir. 2010) ("[A] private controversy,
even between famous people, that interests the public is not enough.  Under
*Weinberg*, for the activities of celebrities to be a public issue, the activities, as well

_____

[2] Additionally, although there appears to be disagreement among courts of
different jurisdictions, courts in this district have generally determined that
newspapers and tabloids are not places "open to the public or [] public for[a]," under
subsection (e)(3).  *Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 985
n.7 (C.D. Cal. 1999) ("A newspaper should not be deemed a 'public forum' for
purposes of § 425.16.");  *Condit*, 248 F. Supp. 2d at 953 (finding that National
Enquirer tabloid not a public forum).  Subsection (e)(3) is therefore inapplicable.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

as the personages involved[,] must be public."); *Rogers*, 57 F Supp. 2d at 985 n.7 ("That a celebrity might be a public figure for purposes of the First Amendment should not mean that all speech about that celebrity is necessarily a public issue or an issue of public interest for purposes of § 425.16(e)."); *Virgil v. Time, Inc.*, 527 F.2d 1122, 1131 (9th Cir. 1975) ("[A]ccepting that it is, as a matter of law, in the public interest to know about some area of activity, it does not necessarily follow that it is in the public interest to know private facts about persons who engage in that activity."); *Condit*, 248 F. Supp. 2d at 954 ("[N]ot all speech concerning [a public figure] necessarily bears on a 'public issue' or an 'issue of public interest' for purposes of § 425.16(e).").

Most notably, celebrities still have a privacy interest in their sex lives. *Michaels v. Internet Entertainment Group*, 5 F. Supp. 2d 823, 840 (C.D. Cal. 1998) ("Sexual relations are among the most personal and intimate of acts. . . . It is also clear that [Bret] Michaels [lead singer of the rock band "Poison"] has a privacy interest in his sex life. While Michaels's voluntary assumption of fame as a rock star throws open his private life to some extent, even people who voluntarily enter the public sphere retain a privacy interest in the most intimate details of their lives."). A celebrity's sex life is not an "issue of public interest" even if he is a sex symbol who has appeared nude in magazines, movies and videotapes. *Id.* (the fact that Pamela Anderson Lee performs roles involving sex "does not, however, make her sex life open to the public."). In fact, the "public exposure of one sexual encounter" does not remove a celebrity's privacy interest in all subsequent and previous sexual encounters. *Id.* ("the visual and aural details of [a couple's] sexual relations" are "facts which are ordinarily considered private even for celebrities.").[3]

_____

[3] The court in *Michaels* explicitly distinguished the details of a couple's sexual relations from the fact that the couple is romantically involved. The former is a private matter, even for celebrities, while the latter is not. *Id.* ("The Court notes that the private matter at issue here is not the fact that Lee and Michaels were

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

As a result, Beckham's sex life is not a "public issue" or an "issue of public interest" under the anti-SLAPP statute. *See id*. at 840 ("Where the publicity is so offensive as to constitute a morbid and sensational prying into private lives for its own sake, it serves no legitimate public interest and is not deserving of protection.") (*quoting Diaz v. Oakland Tribune, Inc.*, 139 Cal. App. 3d 118 (1983). [4]

Because his private sex life is not, as a matter of law, a "public issue" or "issue of public interest" under section 426.15(e), Beckham's libel and intentional infliction claims, therefore, do not relate arise from any "protected activity" subject to an anti-SLAPP motion and Bauer's motion must be denied.

## B.   Beckham's Claims Have Far More Than "Minimal Merit"

Even if Beckham's libel and IIED claims are subject to a special motion to strike under C.C.P. § 425.16(e) – they are not – Bauer's Anti-SLAPP Motion must still be denied if Beckham's claims have at least "minimal merit." *Navellier*, 29 Cal. 4th at 93 ("[T]he [anti-SLAPP] statute poses no obstacle to suits that possess minimal merit."); *Overstock.com, Inc.*, 151 Cal. App. 4th at 699-700 ("Precisely because the statute (1) permits early intervention in lawsuits alleging unmeritorious causes of action that implicate free speech concerns, and (2) limits opportunity to conduct discovery, the plaintiff's burden of establishing a probability of prevailing is not high . . . Only a cause of action that lacks 'even minimal merit' constitutes a SLAPP.").  While the court considers the pleadings and evidence submitted by all parties, it "does not weigh credibility or compare the weight of the evidence." *HMS Capital, Inc. v. Lawyers Title Co.*, 118 Cal. App. 4th 204, 212 (2004).  Rather, the

_____

(footnote continued)
romantically involved.  Because they sought fame, Lee and Michaels must tolerate some public exposure of the fact of their involvement.").

[4] None of the cases cited by Bauer in arguing that the Article is subject to an anti-SLAPP motion involve whether the details of a celebrity's sex life are a "public issue" or an "issue of public interest."  *See* Anti-SLAPP Motion at 8-12.  They are therefore irrelevant.

Kendall Brill
& Klieger LLP

10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

16

DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE

1  court must "accept as true the evidence favorable to the plaintiff, and evaluate the

2  defendant's evidence only to determine if it has defeated that submitted by the

3  plaintiff as a matter of law." *Id*.

4        1.   <u>Beckham's Libel Claim Easily Clears the "Minimal Merit" Bar</u>

5       Libel "is a false and unprivileged publication by writing . . . which exposes

6  any person to hatred, contempt, ridicule, or obloquy, or which causes him to be

7  shunned or avoided, or which has a tendency to injure him in his occupation." Cal.

8  Civ. Code § 45. Libel on its face is "[a] libel which is defamatory of the plaintiff

9  without the necessity of explanatory matter." *Id*. § 45a. Statements that are libelous

10  on their face do not require the plaintiff to show that he has suffered special damage

11  as a result of those statements. *Id*.

12       Under California law, an allegation that the plaintiff is guilty of a crime is

13  libelous on its face. *Fashion 21 v. Coalition for Humane Immigrant Rights of Los*

14  *Angeles*, 117 Cal. App. 4th 1138, 1145 n. 7 (2004); *Barnes-Hind, Inc. v. Superior*

15  *Court*, 181 Cal. App. 3d 377, 385 (1986) ("Perhaps the clearest example of libel per

16  se is an accusation of crime."). In the Article, Bauer alleged that Beckham

17  committed the crimes of solicitation of prostitution and engaging in prostitution.

18  These statements are unquestionably libelous on their face, and thus Beckham need

19  not prove that he has suffered special damages as a result of their publication. *See*

20  *Fashion 21*, 117 Cal. App. 4th at 1145 n.7.[5] Therefore, to demonstrate a probability

21  of prevailing on his libel claim, and to meet his burden in opposing the Anti-SLAPP

22  Motion, Beckham must only demonstrate a prima facie case that Bauer's statements

---

23    [5] While allegations of criminal conduct are libelous on their face, such

24  allegations do not "automatically fall within the public interest" pursuant to C.C.P. §

25  425.16(e). *See Weinberg*, 110 Cal. App. 4th at 1135 ("[T]here are no charges

  pending against plaintiff, and defendant has not taken action intended to result in a

26  criminal investigation or prosecution. The fact that defendant's statements accuse

27  plaintiff of criminal conduct make them defamatory on their face. (Civ.Code, §§ 45,

  45a, 46.) It does not automatically make them a matter of public interest."

28

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

17

are false and that there is at least minimal merit to his allegations that Bauer acted with actual malice in publishing them. *See, e.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964); *Christian Research Institute v. Alnor*, 148 Cal. App. 4th 71, 80-81 (2007).

(a)    *Bauer's Statements About Beckham Are False*

Bauer does not dispute, for purposes of this motion, that the Article is false. As detailed in Section II.B, above, and in the supporting declarations, it is abundantly clear that it *is* false. Beckham and the security agents account for Beckham's whereabouts at all relevant times and demonstrate that Beckham never stepped foot in Le Parker Meridien hotel in Manhattan in August 2007, that he never stepped foot in Claridges hotel in London in September 2007, and that he was not in New York in October 2007. Further, the sworn testimony confirms Beckham did not meet Nici on these trips or at any other time. Taken together, this evidence demonstrates beyond dispute that Nici's allegations, as reported in the Article, are entirely false.

(b)    *Bauer Published The False and Defamatory Statements With Actual Malice*

A defendant publishes statements with actual malice when it has knowledge that those statements are false or "entertained serious doubts as to the truth of his publication." *Reader's Digest Assn. v. Superior Court*, 37 Cal. 3d 244, 256-57 (1984); *Sullivan*, 376 U.S. at 279-80; *Alnor*, 148 Cal. App. 4th at 84. This is a subjective test, "under which the defendant's actual belief concerning truthfulness of the publication is the crucial issue." *Reader's Digest*, 37 Cal. 3d at 256.

The 9th Circuit has recognized that it has "yet to see a defendant who admits to entertaining serious subjective doubts about the authenticity of an article it published." *Eastwood v. National Enquirer, Inc.*, 123 F.3d 1249, 1253 (9th Cir. 1997). As a result, courts "must be guided by circumstantial evidence. By examining the editors' actions we try to understand their motives." *Id.*; *see also*

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

18

DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE

1  *Alnor*, 148 Cal. App. 4th at 84 ("A defamation plaintiff may rely on inferences

2  drawn from circumstantial evidence to prove actual malice."). Moreover, a plaintiff

3  can demonstrate a defendant's actual malice through the accumulation of various

4  isolated facts and appropriate inferences; he does not have to show that any specific

5  fact conclusively demonstrates actual malice. *See Goldwater v. Ginzburg*, 414 F.2d

6  324, 342 (2d Cir. 1969) ("There is no doubt that evidence of . . . motive and of

7  intent may be adduced for the purpose of establishing, by cumulation and by

8  appropriate inferences, the fact of a defendant's recklessness or of his knowledge of

9  falsity."); *Reader's Digest*, 37 Cal. 3d at 258 ("A failure to investigate, anger and

10 hostility toward the plaintiff, reliance upon sources known to be unreliable, or

11 known to be biased against the plaintiff – such factors may, in an appropriate case,

12 indicate that the publisher himself had serious doubts regarding the truth of the

13 publication." (citations omitted)); *St. Amant v. Thompson*, 390 U.S. 727, 732, 88

14 S.Ct. 1323, 20 L.Ed.2d 262 (1968) (malice can be inferred "when the publisher's

15 allegations are so inherently improbable that only a reckless man would have put

16 them in circulation. Likewise, recklessness may be found where there are obvious

17 reasons to doubt the veracity of the informant or the accuracy of his reports.");

18 *Suzuki Motor Corp. v. Consumers Union of the U.S., Inc.*, 330 F.3d 1110, 1136 (9th

19 Cir. 2003) (While "financial motive cannot, by itself, prove actual malice, it

20 nonetheless is a relevant factor bearing on the actual malice inquiry."). As detailed

21 below, Beckham has marshaled more than sufficient evidence that demonstrates by

22 clear and convincing evidence that Bauer published the Article with actual malice.

23          (i)    *Bauer Recklessly Disregarded The Truth That Nici's Story Was False, Or Was Aware That Nici's Story Was False*

25      Circumstantial evidence demonstrates by clear and convincing evidence that

26 Bauer published the Article with actual malice:

27  •    Nici provided Bauer with absolutely no physical proof to corroborate her

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

19

DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE

story. For example, Nici failed to provide any of the following documents that would support her allegations: phone records of calls between Beckham and Nici, phone records of calls between Nici and Davis asking for another prostitute, phone records of calls between Nici and the mysterious stylist who allegedly gave Nici's number to Beckham, text messages or emails regarding the alleged trysts, Nici's electronic journal or her diary that allegedly contains information about the meetings, passport information showing that she was in New York and London during the relevant time periods, banking records that show Nici depositing the money she allegedly received from Beckham, or any receipts showing that Nici was at the hotels in question or even in New York or London during the relevant time periods.

- Bauer failed to ask Nici for any physical proof of her affair, despite the fact that physical proof should have been readily available.

- Bauer paid a huge sum to its only on-the-record sources. These sources are an admitted prostitute and an admitted and convicted madam who was not even involved in setting up Nici's alleged rendezvous with Beckham. These sources would have been unreliable even if they were not paid to tell Bauer what it wanted to hear.

- Bauer also relies on an unidentified woman who refuses to go on record but who Bauer claims to have been a prostitute that joined Nici and Beckham. Bauer has never met this woman or even learned her name. Indeed, it appears that Davis simply put Baer on the phone with some unidentified woman purportedly to confirm the tale that Davis and Nici has already spun.

- Bauer did not check with Nici's friends, Beckham's friends, or with Nici's and Beckham's alleged mutual friend, the stylist. Indeed, it does not appear that Bauer even asked for the name of the alleged stylist – the one person who could confirm whether the initial aspect of Nici's fabrication was truthful.

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

20

DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE

- Bauer justifies its decision to publish the Article by relying on false rumors that Bauer itself deemed unfit to print in *In Touch Weekly*. Even if rumor-mongering passed for journalism, none of the rumors suggest that Beckham has or would pay a prostitute, or anyone else, for sex.

- Bauer conducted just a couple of hours of internet research into prior allegations of Beckham's infidelity, which included locating a December 2007 Wikipedia entry about Beckham, and ignoring the then-current Wikipedia entry for David Beckham which explicitly stated that "[t]here has never been any proof of any of the allegations of Beckham's claimed infidelity" as well as other articles and evidence that confirms this fact. Kelly Decl. ¶ 5.

- Bauer never attempted to confirm that Beckham was in New York in October 2007, a fact whose obvious falsity could have easily been verified through multiple resources.

- Bauer failed to check with Le Parker Meridien Hotel to confirm whether Beckham was there in August 2007 or with Claridges hotel to confirm whether Beckham was there in September 2007.

- Other publications that interviewed Nici about her story easily recognized that her story was completely false.

- Originally Nici and Baer signed the exclusive source agreement, but later it was decided that Davis would be paid by Bauer, instead of Nici, and Davis signed the source agreement as well. The fact that Bauer had to pay Davis for Nici's story suggests that Nici was put up to telling the lies by Davis.

- The circumstances surrounding Davis' coordination, participation, and involvement in this story are particularly suspect considering the fact that in 2010 Davis was running for governor of New York. Kelly Decl. Exs. 2 & 3. With the election just months away, Davis may have coordinated Nici's telling of a fabricated story in order to generate publicity, and she achieved

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

21

1  her goal; not only is Davis quoted in the Article, but her picture appears on its

2  last page.

3  •  Despite having learned of the allegations a week prior, Bauer presented Nici's

4  allegations to Beckham's publicist on a Saturday morning, and required that

5  Beckham provide a response by 6 a.m. Pacific time the upcoming Monday,

6  thus preventing Beckham from having any reasonable opportunity to refute

7  Nici's story.  Bauer did this in order to avoid receiving a detailed refutation

8  from Beckham that would have killed the story then and there.

9  (ii)  *Bauer Purposefully Avoided The Truth That Nici's Story Was False*

10  It is apparent from the foregoing facts that Bauer purposefully avoided

11  investigating or taking any steps that would reveal what everyone knew: that the

12  allegations made by Nici and Davis, and therefore the Article, were wholly

13  fabricated.  The Supreme Court has held that "purposeful avoidance of the truth"

14  supports a finding of actual malice.  *Harte-Hanks Commc'ns., Inc. v. Connaughton*,

15  491 U.S. 657, 692, 109 S.Ct. 2678, 105 L.Ed.2d 562 (1989) (holding that

16  newspaper's "deliberate decision not to acquire knowledge of facts that might

17  confirm the probable falsity" of a story is sufficient to support a finding of actual

18  malice); *Masson v. New Yorker Magazine, Inc.*, 960 F.2d 896, 900 (9th Cir. 1992)

19  (where direct proof of actual malice is missing, "the jury may nevertheless infer that

20  the publisher was aware of the falsity if it finds that there were 'obvious reasons to

21  doubt' the accuracy of the story, and that the defendant did not act reasonably in

22  dispelling those doubts . . . that failure is  . . . a link in the chain of inferences that

23  could . . . lead a jury to conclude that the publisher failed to conduct an investigation

24  because it was already pretty much aware of the falsity." (quoting *Harte-Hanks*)).

25  (iii)  *Bauer's Self-Serving Declarations Are Insufficient To Avoid A Finding Of Actual Malice*

26  In an effort to explain away these obvious red flags, Bauer claims that actual

27  malice cannot exist because Bauer's witnesses have submitted declarations claiming

28

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd. Suite 1725 Los Angeles, CA 90067

1  they believed the Article at the time it was published. Bauer cannot defeat

2  Beckham's claims of actual malice by simply asserting that it and its employees

3  believed in the truth of the Article. *St. Amant*, 390 U.S. at 732 ("The defendant in a

4  defamation action brought by a public official cannot, however, automatically insure

5  a favorable verdict by testifying that he published with a belief that the statements

6  were true. The finder of fact must determine whether the publication was indeed

7  made in good faith."); *Widener v. Pacific Gas & Electric Co.*, 75 Cal. App. 3d 415,

8  435 (1977), *overruled on other grounds by McCoy v. Hearst Corp.*, 42 Cal. 3d 835

9  (1986) ("The mere profession of a defendant that he believed in good faith that his

10 statements were true does not automatically entitle him to a verdict in his favor.");

11 *Suzuki Motor Corp.*, 330 F.3d at 1134-35 (quoting *St. Amant*). Instead, the issue is

12 whether there is adequate evidence that supports the contrary view – that Bauer

13 published the article with knowledge, or reckless disregard of, its falsity. *See Suzuki*

14 *Motor Corp.*, 330 F.3d at 1135. As noted above, in deciding an anti-SLAPP motion,

15 the court does not weigh the evidence and must credit the evidence offered by

16 Beckham. In *Suzuki Motor Corp.*, for instance, the court found that plaintiff's

17 claims that defendant rigged tests to produce a desired result, combined with

18 evidence of profit motive, was sufficient to preclude summary judgment because it

19 created a genuine issue of fact as to whether defendant was aware of the probable

20 falsity of its statements. Here, Bauer knew the result it wanted, and rigged its

21 research and investigation of Nici's claims in order to publish the story under the

22 veneer that it acted without actual malice. This court should not countenance such

23 tactics.[6]

24

25      [6] Bauer publishing the Article with ill intent or contempt towards Beckham is
   further evidence of actual malice. *See Reader's Digest*, 37 Cal. 3d at 258; *Ginzburg*,

26 414 F.2d at 342. As detailed above, Bauer had long been targeting Beckham in an
   attempt to destroy his reputation, and the author of the Article has admitted her job

27 is to "destroy [celebrities'] lives." Further, Bauer failed to give Beckham any

28

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

2.   <u>Beckham's Intentional Infliction of Emotional Distress Claim Against Bauer Has Sufficient Merit</u>

As Bauer has noted, Beckham cannot avoid the actual malice burden of a libel claim by restyling that claim as a different tort.  *See, e.g.*, *Reader's Digest*, 37 Cal. 3d at 265.  As demonstrated above, however, the Article is not a constitutionally protected publication, because the statements within it are false and Bauer published those statements with actual malice.  As a result, this issue is irrelevant. Additionally, Beckham can demonstrate a probability of prevailing on his intentional infliction of emotional distress ("IIED") claim against Bauer because he can demonstrate a prima facie case of the tort.  The elements of a prima facie case of intentional infliction of emotional distress are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct."  *Davidson v. City of Westminster*, 32 Cal. 3d 197, 209 (1982).

To meet the first element, a plaintiff must show that the alleged conduct is "so extreme as to exceed all bounds of that usually tolerated in the civilized community."  *Cochran v. Cochran*, 65 Cal. App. 4th 488, 494 (1998) (citations and quotations omitted).  This is a case-by-case appraisal.  *Id.*  Additionally, the conduct "must be directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware."  *Ess v. Eskaton Properties, Inc.*, 97 Cal. App. 4th 120, 130 (2002).  Bauer's false statements that Beckham repeatedly solicited and engaged in prostitution, especially when it published those statements with actual malice, are

(footnote continued)

reasonable opportunity to disprove the allegations.  Had Bauer truly been interested in the truth of the Article, it would have alerted Beckham immediately and given him a real opportunity to deny and disprove the allegations.

Kendall Brill & Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2
24
DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE

unquestionably extreme and outrageous. *See Parnell v. Booth Newspapers, Inc.*, 572 F. Supp. 909, 919-20 (W.D. Mich. 1983) (denying defendant's motion for summary judgment because there was a genuine issue of material fact regarding whether newspaper's publication of photograph of plaintiff in connection with two articles on the subject of prostitution was extreme and outrageous conduct). Bauer targeted Beckham and intended to injure his reputation.

Beckham also easily satisfies the second and third elements of his IIED claim. Beckham has declared that he has suffered extreme emotional distress for many months as a result of the Article's publication. Beckham Decl. ¶ 4. The types of emotional distress required for an IIED claim include "all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea." *Golden v. Dungan*, 20 Cal. App. 3d 295, 311 (1971), *quoting* Restatement 2d Torts § 46. Beckham has suffered a number of these harms. Beckham Decl. ¶ 4. Finally, there is no question that the publishing of the Article was the actual and proximate cause of Beckham's emotional distress. Accordingly, Beckham's evidence establishes a probability of prevailing on his IIED claim.

## IV. CONCLUSION

For all of the foregoing reasons, Beckham respectfully requests that the Court deny Bauer's Anti-SLAPP Motion in its entirety.

Dated: January 14, 2011              KENDALL BRILL & KLIEGER LLP


                                     By:     /s/ Richard B. Kendall
                                             Richard B. Kendall
                                             Attorneys for Plaintiff and Cross-
                                             Defendant

Kendall Brill
& Klieger LLP
10100 Santa Monica Blvd.
Suite 1725
Los Angeles, CA 90067

63633.2

25

DAVID BECKHAM'S OPPOSITION TO THE BAUER DEFENDANTS' SPECIAL MOTION TO STRIKE